IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
~~NORTHERN~~ DIVISION
SOUTHERN

RECEIVED
2006 MAR 15 P 1:59

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA.

| | |
|---|---|
| SAMUEL HOUSTON | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) CASE NUMBER ~~2:04-cv-~~ 1:06cv243-MEF |
| | ) |
| ARMY FLEET SERVICES, L.L.C., | ) (JURY DEMAND) |
| | ) |
| Defendant | ) |

## COMPLAINT

### NATURE OF THE ACTION

This is an action under the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101, *et seq.*; and violation of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, et. seq, to redress unlawful treatment of the plaintiff while he was employed by Army Fleet Services, L.L.C. ("Fleet Services" or "AFS").

### JURISDICTION AND VENUE

1)   Jurisdiction of this court is invoked over this action pursuant to 28 U.S.C. §§ 1331, 1343(a) (4), 1367(a); 42 U.S.C. §§ 12117(a); 29 U.S.C. § 2617; and 2000e-5(f).   All actions alleged herein occurred while the plaintiff was employed by the defendant in Coffee County, Alabama.

### PARTIES

2)   The Plaintiff, Samuel Houston, is above the age of nineteen years and a resident of Walton County, Florida, at all times pertinent to this suit.

1

3)    The Defendant, Army Fleet Services, L.L.C., is an entity doing business in the state of Alabama.

FACTS

4)    Samuel Houston was initially hired to work as an aircraft mechanic at the Army Aviation Technical Test Center (ATTC) located at Cairns Army Air Field in February 2002 by Dyncorp Technical Services, LLC. Houston continued this employment with the defendant Army Fleet Services, L.L.C., when the defendant won the aircraft maintenance contract from the U. S. Army.

5)    Houston was ordered by his physician to stay out of work after he suffered an injury to his back while doing chores at his home in August of 2004. Houston notified his supervisor that his doctor had imposed physical restrictions that prevented him from returning to work and he began a short-term disability leave in accordance with company policy on or about September 7, 2004. Houston subsequently had surgery on his back in November 2004

6)    Following a lengthy period of recuperation, Houston returned to the human resources office of AFS on March 7, 2005 with an authorization to return to work signed by Dr. Thomas Manski. The physician's return to work form stated that Houston was permanently restricted from lifting more than 25 pounds; climbing; standing more than one hour and 30 minutes; prolonged sitting (more than one hour and 30 minutes); and from bending at the waist to lift, pull, twist, or push to prevent reinjury to his lower back. The AFS human resources representative refused to accept Houston's return to work form because the

2

physician did not list a specific date for him to return to work, but did inform Houston that he would not be able to return to his job as an aircraft mechanic with the physical restrictions imposed by Dr. Manski. Houston discussed with the human resources representative the possibility of transferring to a position as an aircraft scheduler as an accommodation for his physical restrictions. He was informed that he would have to be able to type thirty words a minute to qualify for that position; to brush up on his typing skills; and, that he could apply to reclassify to the scheduler's position when he returned to human resources with his dated return to work slip.

6)   Houston returned home to seek an appointment with his physician to obtain a dated return-to-work authorization. He also enrolled at the Jobs Plus center in Crestview, Florida to practice his typing skills in order to qualify for the controller's position and was able to successfully achieve the desired thirty words per minute typing rate.

7)   Houston obtained a return-to-work authorization dated for March 3rd from Dr. Manski on March 10th and returned to the AFS human resources office on March 14, 2005. Houston had been informed on a visit to the human resources office on March 11, 2005 that he would be fired due to physical restrictions which had been listed on his initial return to work form. Houston reported to the AFS human resources office on March 14th to in-process from his short-term disability leave and was officially informed that he would be involuntarily terminated. When Houston asked about reclassifying to another position as an accommodation

3

of his physical disabilities, he was informed that he could not reclassify for another position until he was able to return to work in his job as an aircraft mechanic. This was impossible since his physical limitations permanently prevented him from returning to his job as an aircraft mechanic, Houston asked for the forms to request reclassification as an aircraft scheduler. He was refused the appropriate paperwork to request this accommodation.

8) Houston did receive forms that day from AFS to out-process from his employment at the Army Aviation Training Command work center which stated that he had been involuntarily terminated. Houston began the formal process of his separation from employment with the defendant.

9) Houston returned to AFS on March 15, 2005 to complete his out-processing and was given new paperwork which indicated that he was being administratively terminated from his job. He was told that he would have "call back" rights under the union bargaining agreement for his job as an aircraft mechanic. He was also informed that he could receive unemployment benefits due to his termination.

10) Houston unsuccessfully sought assistance from the EEO office at Eglin AFB, Florida, and the EEO and Inspector General's office at Fort Rucker, Alabama in an effort to redress the issue of his termination due to his physical disability.

11) Houston was eventually denied unemployment benefits when AFS claimed that he was not really terminated from his job as an aircraft mechanic, but

4

instead that he was laid off and subject to being called back to work in that position.

12) Houston pursued his complaint of disability discrimination through U. S. Department of Labor and the Office of Federal Contract Compliance, and was issued a notice

## COUNT ONE
(Americans with Disabilities Act/Retaliation)

13) Plaintiff incorporates by reference each and every allegation contained in paragraphs one through twelve as if fully rewritten herein and further states:

14) Count One of this Complaint is brought pursuant to 42 U.S.C. § 12101 et seq.

15) The defendant, Army Fleet Services, L.L.C., is an entity in a business affecting commerce as defined in 42 U.S.C. § 12111(5) (A).

16) The Plaintiff is a qualified individual with a disability, or one who is perceived to have a disability, as defined in 42 U.S.C. § 12111(8), and who was an employee of the defendant at all times pertinent to this suit..

17) The Plaintiff was unlawfully discriminated against by the denial of accommodation for said disability, or perception thereof; and by his discharge from employment by the defendant Army Fleet Services, because of his disability, or perception thereof, and in retaliation for seeking said accommodations.

18) Fleet Services unlawfully retaliated against Houston for pursuing his

rights under the Americans with Disabilities Act following his termination from employment by interference with his right to qualify for and receive benefits earned and due him, and otherwise.

19) The actions of the Defendant in this denial of rights secured by law were committed intentionally and in reckless disregard for the law.

WHEREFORE, the plaintiff prays that Army Fleet Services, upon a trial by jury, be adjudicated to have violated the ADA; that he be awarded (i) appropriate damages to compensate him for any and all back pay and other benefits, including but not limited to reinstatement, promotions, transfers, and any other appropriate relief that the plaintiff has lost as a result of defendant's violation of the ADA; (ii) appropriate "compensatory damages" within the meaning of 42 U.S.C. § 1981a or as otherwise allowed by law; (iii) punitive damages in an appropriate amount as determined by the jury; (iv) that the defendant be permanently enjoined from continuing these unlawful practices; (v) reasonable costs and attorney's fees; and (vi) any and all other relief to which he may be entitled in law or in equity.

COUNT TWO
(FMLA Interference)

20) Plaintiff incorporates by reference each and every allegation contained in paragraphs one through eighteen as if fully rewritten herein and further states:

21) Count Two of this Complaint is brought pursuant to 29 U.S.C. § 2611 et seq.

6

22) Houston was employed by AFS and/or its predecessor in interest for longer than 12 months prior to the leave of absence at issue and worked at least 1,250 hours of service for AFS during the 12 months preceding his request for a medical leave of absence. As such, Houston was an "eligible employee" pursuant to 29 U.S.C. § 2611(2).

23) Defendant, AFS, employed 50 or more employees at the location where plaintiff was employed or in combination with other locations within a 75-mile radius of plaintiff's work site for each working day during each of 20 or more calendar work weeks in the previous calendar year and was a covered "employer" pursuant to 29 U.S.C. § 2611(4).

24) Houston injured himself as set forth above and underwent surgery in November 2004. He notified his supervisor at Fleet Services of his injury and medical restrictions on or about September 7, 2004, and was placed on short term medical disability. Houston kept defendant apprised regarding his medical condition during his leave of absence.

25) Houston was not given notice in writing before the leave began that his paid time off leave and short term disability leave would be counted towards his maximum 12 weeks of leave allowed under the FMLA. Houston never received any notice that his short-term medical disability was or was not designated as FMLA-qualifying leave for his own serious health condition.

26) When Houston attempted to return to work with physical restrictions on or about March 7, 2005, he was informed that he would not be returned to his

prior job as an aircraft mechanic, with or without accommodations. Houston requested that he be permitted to qualify for a transfer to another job classification which would accommodate his restrictions, and was informed of the qualifications for that position.

27) Fleet Services denied Houston any opportunity to return to his employment, and terminated his employment without any effort to accommodate his medical restrictions. Houston was informed that he would have to be able to return to his prior position before he could be considered for any equivalent positions which might accommodate his medical restrictions.

28) These actions of the defendant constitute an interference with Houston's rights under the FMLA and his termination of employment is unlawful.

29) Fleet Services retaliated against Houston following his efforts for redress of its discrimination against him by interference with his right to qualify for and receive benefits earned and due him.

WHEREFORE, the plaintiff prays that Army Fleet Services, upon a trial by jury, be adjudicated to have violated the FMLA; that he be awarded: (i) appropriate damages to compensate him for any and all back pay and other benefits, including but not limited to reinstatement, promotions, transfers, and any other appropriate relief that the plaintiff has lost as a result of defendant's violation of the FMLA; (ii) appropriate "compensatory damages" within the meaning of 42 U.S.C. § 1981a or as otherwise allowed by law; (iii) liquidated damages in an appropriate amount as equal to the compensatory damages

determined by the jury; (iv) that he be awarded compensatory and exemplary damages due him for the retaliation against him for asserting his legal rights; that the defendant be permanently enjoined from continuing these unlawful practices; (v) reasonable costs and attorney's fees; and (vi) any and all other relief to which he may be entitled in law or in equity.

THE PLAINTIFF REQUESTS A TRIAL BY JURY.

_____
JIMMY JACOBS (JAC051)
Attorney for Plaintiff
143 Eastern Boulevard
Montgomery, Alabama 36117
(334) 215-1788

9