IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SAMUEL HOUSTON       ) | |
|     **Plaintiff**                     ) | |
|                                         ) | |
| v.                                        ) | CASE NUMBER 1:06-cv-243-MEF |
|                                         ) | |
| ARMY FLEET SERVICES, L.L.C.,   ) | (JURY DEMAND) |
|     **Defendant**                  ) | |

**MOTION TO STRIKE PORTIONS OF THE AFFIDAVIT OF ROBERT WHITNEY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

COMES NOW THE PLAINTIFF, by and through undersigned counsel, and submits his Motion to Strike Portions of the Affidavit of Robert Whitney offered in support of the Defendant's motion for summary judgment in this action. As the plaintiff shows below, Whitney's affidavit is replete with contradictions to prior deposition testimony, inadmissible hearsay, conclusory arguments and speculation.

**STATEMENT OF FACTS**

1. The defendant Army Fleet Services, L.L.C. (AFS) tendered affiant Robert Whitney to testify as its representative subject to the plaintiff's 30(b)(5) & (6) deposition on February 21, 2007 in Enterprise, Alabama. Mr. Whitney verified that he was qualified to testify as the representative of the company (Ex. 1: AFS Dep. P. 5:05-10) and that he would testify to matters within his own knowledge regarding the plaintiff's complaint. (Ex. 1: AFS Dep. P. 13:04-8)

2. Mr. Whitney testified under oath that he did not personally interact with the plaintiff in the human resources department of AFS relative to his medical leave. (Ex. 1: AFS Dep. P. 8:16 – 9:14)

3. Mr. Whitney testified that his position with AFS during the time of the plaintiff's was as "HR compliance director" and that his duties included oversight of "the training and administration of the general rules and regulations such as FMLA, ADA, ADEA, the Warrant Act, wage and hour issues, FLSA, responses to federal agencies, internal investigations of internal -- or internal complaints as well external responses. (Ex. 1: AFS Dep. at P. 8:06-22)

4. Mr. Whitney testified that AFS had no record that Mr. Houston ever requested to reclassify as an aircraft scheduler. (Ex. 1: AFS Dep. at P. 46:13-18; P. 48: 13-16; P. 74:14-21) Mr. Whitney also testified that when Mr. Houston returned to the AFS human resources office with his Return to Work slip form from Dr. Manski, an hourly employee discussed the option of reclassifying into a position as an aircraft scheduler with him. (Ex. 1: AFS Dep. P. 75:11-15)

6. Mr. Whitney testified that AFS had determined that two AFS human resources employees, Jo Ann Camarata and Cathy Jeffers, would be the persons who met with Houston and discussed reclassification as an aircraft scheduler with him after he brought a Return to Work slip in from his doctor which listed his physical restrictions. (Ex. 1: AFS Dep. P. 76:22 – 77:13)

7. Mr. Whitney testified that Mr. Houston could not be reclassified or reassigned to another job with AFS because he was not an active employee. (Ex. 1: AFS Dep. P. 80:06-20)

8. Mr. Whitney testified that Mr. Houston was an "inactive" employee of AFS beginning 30 days after his medical leave began until he was terminated on March 15, 2005. (Ex. 1: AFS Dep. P. 90:06 – 91:05) He further testified that Mr. Houston was

not an active employee after his termination on March 15, 2005, and that he could not make a request for reclassification because he was not an active employee. (Ex. 1: AFS Dep. P. 46:02-23)

9.   Mr. Whitney testified that Mr. Houston had "recall rights" to return to his job classification as an aircraft mechanic after he was "administratively terminated" on March 14, 2005 – if his permanent physical restrictions would ever permit him to perform the job – and that Mr. Houston would have to be return to "active" status in order to apply for reclassification to another job within AFS. ((Ex. 1: AFS Dep. P. 38:01-21; P. 62:07-13; P. 80:07-11)

10.  Mr. Whitney testified that AFS took no further action to determine if any accommodation was available to return Mr. Houston to work after the field mangers stated his restrictions could not be accommodated in the mechanic position. (Ex. 1: AFS Dep. P. 54:06- 55:08)

## STANDARD OF REVIEW

"An affidavit that does not measure up to the standards of Rule 56(e) is subject to a timely motion to strike." *Auto Drive-Away Co. of Hialeah, Inc., v. Interstate Commerce Commission*, 360 F.2d 446, 448-49 (5th Cir. 1966);[1] *Thomas v. Alabama Council on Human Relations, Inc.,* 248 F. Supp. 2d 1105, 1112 (M.D. Ala. 2003)("Affidavits which fail to meet the standards set forth in Rule 56(e) may be subject to a motion to strike."); see also C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure: Civil 3d § 2738* (West 2005)(" A party must move to strike an affidavit that violates Rule 56(e)). In

---

[1] The Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. See *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

the absence of this motion or other objection, formal defects in the affidavit ordinarily are waived. See *Auto Drive-Away Co. of Hialeah, Inc.,* 360 F.2d at 449. In addition, affidavits which are clearly inconsistent with prior deposition testimony are due to be stricken. See *Tippens v. Celotex Corp.,* 805 F.2d 949, 954 (11th Cir. 1986). Before disregarding an affidavit, a court must find an "inherent inconsistency" between the affidavit and the deposition. See *Rollins v. TechSouth, Inc*., 833 F.2d 1525, 1530 (11th Cir. 1987). Accordingly, "[i]f an affidavit contains some improper material, the court need not strike the entire affidavit, rather it may strike or disregard the improper portions and consider the remainder of the affidavit." Id. at 1112; see also *Givhan v. Electronic Eng'rs, Inc.,* 4 F. Supp. 2d 1331, 1334 (M. D. Ala. 1998).

A district court's determination of a motion to strike an affidavit will not be overturned absent an abuse of discretion. *Galactic Towing Inc., v. City of Miami Beach*, 341 F.3d 1249, 1253 (11th Cir. 2003).

Whitney's affidavit offered in support of the defendant's motion for summary judgment is deficient in several respects as set forth below and is due to be stricken in substantial part.

**ARGUMENT**

**A.  Portions of Whitney's affidavit are inconsistent with his prior sworn deposition testimony and should be stricken.**

"When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact [for summary judgment], that party cannot thereafter create such an issue of material fact with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Van T. Junkins &*

4

*Assoc., Inc., v. U.S. Industs. Inc.,* 736 F.2d 656, 657 (11th Cir. 1984). To hold otherwise "would mean that plaintiffs could 'thwart the purposes of Rule 56 by creating 'sham' issues of fact with affidavits that contradict their prior depositions.'" *Keel v. United States Dept. of Air Force,* 256 F. Supp. 2d 1269, 1278 n. 25 (M.D. Ala. 2003)(quoting *Bank of Ill. v. Allied Signal Safety Restraint Sys.,* 75 F.3d 1162, 1168 (7th Cir. 1996)); see also *Thomas,* 248 F. Supp. 2d at 1113.

  1. Mr. Whitney states in his affidavit, at paragraph 8, that he approved Mr. Houston's FMLA leave request and personally returned it to him. In addition to other deficiencies with the allegations of this paragraph, Mr. Whitney contradicts his sworn deposition testimony that he did not personally interact with Mr. Houston in the human resources department of AFS relative to his medical leave. (Ex. 1: AFS Dep. P. 8:16 – 9:14) This statement is due to be stricken.

  2. Mr. Whitney also states in his affidavit, at paragraph 9, that he personally advised Mr. Houston of AFS's requirements for reclassification upon the request of Ms. Camarata, and that he personally extended an additional week for him to submit a request for reclassification. Mr. Whitney testified extensively in deposition, beginning at page 75 below of Mr. Houston's visits to the AFS human resources office with his return to work form and the purported conversations regarding his "opportunity" to reclassify:

```
12   To my knowledge, when Mr. Houston returned and an
13   hourly employee talked to him and asked him
14   if he would consider an alternative position
15   such as a clerical scheduler position,
16   Mr. Houston rejected that offer, although the
17   hourly employee could not make a contractual
18   offer the company or the union would have
19   to -- have to live by.
20 Q. Who was that hourly employee that made an
21   offer to him of some alternative assignment?
```

```
22       MS. GRAVELINE:  Object to form.
23  Q.  Is there a record of that offer having been
                76
 1   made?
 2  A.  By, say, a summation of the facts, yes.
 3  Q.  And where is that summation of facts?
 4  A.  In Mr. Houston's complaint to the OFCCP where
 5     he states that he returned, an HR person
 6     suggested to him that he consider a position
 7     such as aircraft scheduler but that he would
 8     have to be able to type 30 words a minute.
 9     In speaking with the hourly employees who
10     would have received him, they recall having
11     conversations with Mr. Houston and that when
12     Mr. Houston was told to consider or consider
13     a -- a clerical position such as, he became
14     upset, demanded to go back as an aircraft
15     mechanic, and he left.
16  Q.  Is there a record of that conversation
17     anywhere?
18  A.  Not my knowledge sir.
19  Q.  And you don't know who the individual was
20     that reports that that conversation took
21     place?
22  A.  In discussing with our hourly employees, the
23     two primary persons who received him and
                77
 1     advised him on his options were the shop
 2     steward, Ms. Jo Ann Camarata, and the other
 3     hourly employee Ms. Cathy Jeffers.
 4  Q.  So are those the two HR representatives that
 5     he dealt with when he brought his first
 6     return-to-work form and his second return-to-
 7     work form to AFS?
 8  A.  Those are the hourly employees from HR he
 9     would have seen.
10  Q.  And did either one of those make a written
11     record of their contact with Mr. Houston on
12     those dates?
13  A.  Not to my knowledge, sir.
14  Q.  Subsequent to those dates, have they made any
15     written record of their encounters with
16     Mr. Houston on those dates?
17  A.  Mr. Houston has come in to apply for
18     benefits, for his continued benefits, and
19     they've received him and processed his
```

```
20    paperwork.
21 Q. That would have been after the incidence
22    where he came and brought his return to work
23    form?
                    78
 1 A. That would be subsequent, yes, sir.
 2 Q. Have these two individuals that you named,
 3    Ms. Jeffers and who was the other?
 4 A. Camarata.
 5 Q. Camarata. Have either one of those made any
 6    written record of their encounter with
 7    Mr. Houston on those two occasions subsequent
 8    to those dates?
 9 A. Are you asking if they have produced after
10    the fact documents of their previous
11    encounters or --
12 Q. Yes.
13 A. -- documentation as to encounters after the
14    fact?
15 Q. I'm asking you if on those two dates, one of
16    which we believe was March the 10th or March
17    the 7th -- and I will admit there is some
18    confusion as to that date. I think it's
19    March the 7th -- and March the 14th when
20    Mr. Houston came to the HR office in
21    Daleville and presented a return-to-work
22    form, he interacted with two HR
23    professionals. Those individuals, according
                    79
 1    to what you told me were Ms. Camarata and
 2    Ms. Jeffers. Subsequent to those dates, have
 3    either of those individuals made any record,
 4    any documentation of their interaction and/or
 5    conversation with Mr. Houston on those
 6    dates?
 7 A. About the previous encounters when he came
 8    back for --
 9 Q. Right, about the previous encounters.
10 A. Thank you, sir. Thank you. Not to my
11    knowledge.
12 Q. And your knowledge today is the company's
13    knowledge.
14 A. Yes, sir.
```

Mr. Whitney testifies that Ms. Camarata and Ms. Jeffers had the discussion with

Mr. Houston regarding his return to work and opportunity to reclassify, and that he and AFS only have knowledge of this purported conversation because of Mr. Houston's complaint to the Office of Federal Contract Compliance. (See p. 76-7 above.)  He did not claim to have any personal knowledge or involvement in any conversation regarding reclassification at any point in this extended questioning in the 30(b)(6) deposition.

He further testified, despite these now-recalled discussions and actions, that Mr. Houston could not submit a request for reclassification because he was not an "active" employee. (Ex. 1: AFS Dep. P. 80:06-20)    Mr. Whitney's affidavit statement that he "offered to allow Mr. Houston an additional week to submit a status change request form and supplement his personnel file with verification of his ability to type thirty words per minute, if he was interested.", clearly contradicts his prior sworn testimony.

Mr. Whitney's statements regarding his personal conversations and actions with and for Mr. Houston on these occasions are clearly contradictory of this prior sworn testimony, and are due to be stricken.

**B. Those portions of Mr. Whitney's affidavit which are based upon hearsay are due to be stricken.**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, supporting and opposing affidavits "shall be made on personal knowledge, shall set forth facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." See *Fed. R. Civ. P. 56(e)*. Accordingly, inadmissible hearsay is insufficient to support a motion for summary judgment. See *McMillan v. Johnson*, 88 F.3d 1573, 1584 (11th Cir. 1996)(holding that inadmissible hearsay may not be used to defeat summary judgment); see also *Geer v. Marco Warehousing, Inc.,* 179 F. Supp. 2d 1332, 1338 n.1 (M.D. Ala. 2001)(refusing to consider hearsay evidence offered

in support of motion); *Pritchard v. Southern Co. Servs.,* 92 F.3d 1130, 1135 (11th Cir. 1996). In addition to hearsay, testimony premised on a reading of documents constitutes "a conclusion and an opinion drawn from [an] examination of documents" and "not a statement of fact based on personal knowledge as would be admissible in evidence." See *Henry v. City of Tallahassee,* 216 F. Supp. 2d 1299, 1309 n. 13 (N.D. Fla. 2002)(striking portion of employee's affidavit premised upon a reading of personnel documents).

Whitney does not provide any foundation for personal knowledge of the allegations he sets out in paragraphs 3, 5 and 6 of his affidavit regarding the procedures utilized and rights established by the union's collective bargaining agreement (CBA). Although the CBA is proffered as an exhibit within an exhibit by the defendant with its motion, Mr. Whitney does not attach any relevant portion to his affidavit, nor does he reference any portion of the document, other than § 35.1, for the basis of his allegation regarding its meaning or intent. Mr. Whitney's statement of "facts" in paragraphs 3, 5, and 6 are due to be stricken.

**C. Portions of Mr. Whitney's affidavit consist of conclusory allegations and assertions not based upon facts in evidence.**

The Eleventh Circuit has held that "conclusory allegations and assertions" offered by a nonmoving party in opposition to a motion for summary judgment will not create an issue of fact for trial. See *Earley v. Champion Intern'l Corp.,* 907 F.2d 1077, 1081 (11th Cir. 1990); see also *Rand v. CF Industries*, 42 F.3d 1139, 1146 (7th Cir. 1994)(holding "inferences and opinions must be grounded on more than flights of fancy, speculations, hunches intuitions, or rumors….discrimination law would be unmanageable if disgruntled employees …could defeat summary judgment by affidavits speculating about the defendant's motives"); see also *Smith v. Alabama*, 252 F. Supp. 1317, 1335 (M.D.

Ala. 2003)("The requirements of Rule 56 make it plain that affidavits which set forth conclusory arguments rather than statements of fact based on personal knowledge are improper."); see also *Hawthorne v. Sears Termite & Pest Control, Inc.,* 309 F. Supp. 2d 1318, 1335 (N.D. Ala. 2003)(striking portions of witness's affidavit containing "improper[] conclusory assertions rather than statements of fact based on personal knowledge"). The same rule is true for defendants: mere conclusory allegations and assertions are not acceptable means of showing a plaintiff's claims are incapable of proof at trial. In *Hawthorne*, the court noted the affiant did not have access to the employer's thought process and struck those portions containing conclusory speculation. See *id*. Similar to the affiant in Hawthorne, Mr. Whitney offers conclusory arguments, speculation, and opinions in his affidavit.

      1.      In paragraph 3, Mr. Whitney argues that section 35.1 of the collective bargaining agreement sets out "procedures" for employees who wish to reclassify. No basis is established for this interpretation of the section and, in fact, a cursory reading reveals that its does not set out any procedural process at all. Mr. Whitney's statement is due to be stricken as both hearsay and conclusory allegation.

      2.      In paragraph 7, Mr. Whitney provides his "interpretation" of the CBA and offers that other AFS personnel interpreted the document in the same manner. He also alleges that there is an "alternative" interpretation of the agreement held by the "Company" and attaches an unverified or non-certified document to support that contention. There is no independent basis for either allegation that would be admissible in evidence and the paragraph is due to be stricken.

      3.      In paragraph 9, Mr. Whitney relates his impressions of conversations that

he claims other personnel had with Mr. Houston. Specifically, he alleges that Mr. Houston was "upset" because of his conversation with Ms. Camarata and/or other human resources staff. Any report by Mr. Whitney of statements made by others is rank hearsay and due to be stricken. Similarly, Mr. Whitney does not offer any documentation or other evidence to support his allegations of his statements to Mr. Houston, or of his allegation regarding Mr. Houston's mental processes. Paragraph 9 should be stricken in its entirety.

    4.    In paragraph 10, Mr. Whitney alleges that "Mr. Houston returned the following day…to process out of his short-term disability leave into extended administrative leave and to enroll in benefits continuation." There is no evidentiary basis to establish the purpose for which Mr. Houston may have returned to AFS, or even that he did, in fact, return "the following day". These are mere conclusory allegations by Whitney and should be stricken. Additionally, in paragraph 10, Mr. Whitney forthrightly states that he "**concluded** Mr. Houston had decided to take extended leave rather than seek reclassification." (*emphasis added*)  Again, there is no evidence to support this allegation and it is due to be stricken.

### III.    CONCLUSION

Substantially all of Robert Whitney's affidavit fails to comply with the requirements of Rule *56(e)* of the Federal Rules of Civil Procedure. Specifically, the affidavit is replete with contradictions to prior deposition testimony, inadmissible hearsay, conclusory arguments, and speculation. Accordingly, the affidavit should be stricken in its entirety, or alternatively those noncompliant parts noted above should be stricken and not considered by the Court when ruling on Army Fleet Support, L.L.C.'s Motion for Summary Judgment.

Respectfully submitted this 10th day of April 2007.

/S/ **JIMMY JACOBS**
JIMMY JACOBS (JAC051)
Attorney for Plaintiff
4137 Carmichael Rd, Ste 100
Montgomery, Alabama 36106
(334) 215-1788

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using CM/ECF system and service will be perfected upon counsel of record following this the 10th day of April, 2007.

/s/JIMMY JACOBS
Jimmy Jacobs (JAC051)

COUNSEL OF RECORD:

M. Jefferson Starling (STA062)
Brent T. Cobb (COB020)
Monica G. Graveline (GRA100)
BALCH & BINGHAM LLP
Post Office Box 306
Birmingham, AL 35201-0306