IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SAMUEL HOUSTON, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. |
| v. | ) CV 06-243-MEF |
| | ) |
| ARMY FLEET SERVICES, LLC., | ) |
| | ) |
| Defendants. | ) |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTIONS TO STRIKE AFFIDAVITS**

Defendant Army Fleet Support, LLC submits this opposition to Plaintiff Samuel P. Houston's Motion to Strike Portions of Affidavit of Darlene Whelan and Motion to Strike Portions of Affidavit of Robert Whitney. Plaintiff's motions should be denied on the following grounds:

**I.    WHELAN'S AFFIDAVIT IS NOT DEFICIENT**

    **A.    Whelan's Affidavit Does Not Contain Inadmissible Hearsay**

Plaintiff objects and moves to strike Paragraphs 7, 8, and 12 of Whelan's affidavit on hearsay grounds. These grounds are unavailing. In the Eleventh Circuit, the district court may consider a hearsay statement if the statement could be reduced to admissible form at trial for some purpose. See Macuba v. Deboer, 193 F.3d 1316, 1323-24 (11th Cir. 1999). The contents of Paragraphs 7, 8, and 12 could readily be reduced to admissible form at trial, as they would be admissible as non-hearsay (*i.e.*, statements offered for reasons other than the truth of the matter asserted) or as hearsay statements excepted from exclusion under the Federal Rules of Evidence (*i.e.*, admission by party opponent). See, e.g., Federal Rules of Evidence, 801(c) & (d)(2); 803(1), (5) & (6).

903637.1

### 1.     Paragraph 7 Does Not Contain Inadmissible Hearsay

In Paragraph 7, Whelan sets out facts about AFS's decision to change its terminology for extended medical leave from "administrative termination" to "inactive-medical." Plaintiff argues that this testimony is improper because there is "no evidence to support the statement that Houston expressed confusion about the meaning of administrative termination." Whelan's statement about Plaintiff's "confusion" is not inadmissible hearsay because this testimony is not offered to prove the truth of the matter asserted, *i.e.*, that Houston was actually confused about his employment status. Rather, these facts are offered to show the reason AFS changed its terminology from "administrate termination" to "inactive-medical." Moreover, Plaintiff's statement that there is "no evidence to support" Whelan's claim that he was confused is incredible in light of the fact that in his complaint he alleges he was terminated and in his deposition he acknowledged his initial confusion about his employment status and Whelan's letter of clarification. See Ex. B to Def.'s Evid. Submission in Support of Mot for Summ. J., Pl.'s dep. at 102:19-103:23.

Plaintiff's attempt to strike the remainder of this paragraph because there is "no basis for the purported reason for the change in terminology" also fails. Whelan, the Director of Human Resources, is competent to testify about AFS's change in its terminology for extended medical leave. Moreover, the basis for the change is plainly explained in Paragraph 7: the desire to ensure employees placed on extended medical leave are not confused about their employment status. Out of an abundance of caution, AFS moves for leave to supplement the record with the attached Amended Affidavit of Darlene Whelan (Exhibit A, hereto), which includes additional testimony regarding Whelan's personal knowledge of the change in the terminology for extended medical leave. See Am. Whelan Aff. at ¶ 7.

### 2. Paragraph 8 Does Not Contain Inadmissible Hearsay

In Paragraph 8, Plaintiff's claim of "hearsay within hearsay" fails. To be hearsay, the details regarding the telephone conversations would have to be offered to prove the truth of the matters asserted, *i.e.*, that Manne received a complaint letter from Houston or that Grosvenor received a request for information about Houston from Manne. Rather, the facts of these conversations are offered to establish the small number of people involved in the early attempt to respond to Houston's concerns about his return-to-work issues. Importantly, this testimony establishes that Ed Brown was not involved in and did not have knowledge of this early investigation. In this case, Brown was the decision maker regarding AFS's response to Houston's application for unemployment compensation. AFS is accused of retaliating against Houston by opposing his unemployment compensation benefits. Therefore, Whelan's testimony is not submitted to prove the substance of the out-of-court statements by Manne, Grosvenor and Whelan. Rather, this testimony is offered to establish that Manne, Grosvenor, Whelan and Whitney were the only individuals aware of and involved in that early investigation. In other words, this testimony establishes that Brown was not aware of this first complaint at the time he initiated AFS's response to Plaintiff's unemployment compensation benefits application.

### 3. Paragraph 12 Does Not Contain Inadmissible Hearsay

Plaintiff argues Paragraph 12 should also be stricken because the VA request and Whelan's response are not attached to the affidavit and, therefore, her statements about the documents are inadmissible hearsay. AFS acknowledges that according to the technical requirements of Rule 56(e) it should have attached or served therewith the referenced documents. These documents were inadvertently omitted from AFS's evidentiary submission. To that end, AFS requests leave to supplement the record with the attached Amended Affidavit of Darlene

Whelan, which includes the omitted exhibits.[1] See Fed. R. Civ. P. 56(e) ("The Court may permit affidavits to be supplemented . . .")  Second, Whelan's testimony about the contents of the documents is not hearsay because it is not offered to prove the truth of the matter asserted, *i.e.*, that the VA needed information regarding Houston or that Houston was an inactive employee on medical leave.  This testimony is offered to show AFS personnel were cooperative in Houston's efforts to obtain VA benefits.  This testimony is offered as a contrast to Houston's allegations that AFS retaliated against him by interfering with his receipt of unemployment compensation benefits.  As noted in AFS's summary judgment brief, it defies logic that AFS would oppose his unemployment compensation benefits in retaliation for his complaints, yet assist with his application for VA benefits.

**B.    Whelan's Affidavit is Not Improperly Conclusory or Speculative**

   **1.    Paragraph 4 is Not Conclusory or Speculative**

Plaintiff's attack on Paragraph 4 as conclusory fails.  Although Plaintiff may disagree with Whelan's statements, it does not render the statements about AFS's commitment to equal opportunity employment principles and its past conduct regarding accommodation of disabilities conclusory.  To the extent Plaintiff is claiming Whelan is not competent to offer this testimony, this argument fails.  Whelan, as Director of Human Resources, logically has personal knowledge of AFS's employment philosophy (EEO), hiring practices, policies and accommodation of disabled employees.  See Lindsey v. Burlington Northern Santa Fe Railway Co., 266 F. Supp. 2d 1338, 1342-1343 (N.D. Ala. 2003)(Denying motion to strike and holding personal knowledge of

---

[1] In addition to the attachment of omitted exhibits, the amended affidavit contains testimony to further explain Whelan's personal knowledge of various matters stated therein. Further, since the execution of her first affidavit, Whelan has changed her testimony regarding whether she received the letter Plaintiff sent to Ken Manne. Specifically, whereas she originally stated she did not receive a copy of the letter Plaintiff sent to Manne, she now cannot recall one way or the other if she received a copy of that letter. Therefore, this innocuous change in her testimony is reflected in the amended affidavit. See Am. Whelan Aff. at ¶ 8.

Manager of Manpower planning regarding CBA and personnel policies established by virtue of the position held.)

### 2. Paragraph 6 is Not conclusory or Speculative

Plaintiff seems to claim the testimony in Paragraph 6 cannot stand because no foundation has been laid to establish Whelan has personal knowledge of AFS's decisions regarding Houston's return to work and AFS's terminology for designating an employee on inactive leave. To the contrary, in the opening paragraph of the affidavit, Whelan states ""the facts of this affidavit are based upon my own personal knowledge and or a review of business records kept in the normal course of business by AFS." This statement adequately attests to Whelan's personal knowledge of the facts in the affidavit, including the facts set out in Paragraph 6. Moreover, it can be inferred from her position as Director of Human Resources that she has personal knowledge of terminology used by AFS's HR department. See Lindsey, 266 F. Supp. 2d at 1342-1343; Williams v. Asplundh Tree Expert Co., 2006 WL 1793551 at *2 (S.D. Fla. 2006) (Personal knowledge can be inferred from affiant's position with company). Out of an abundance of caution, AFS moves for leave to file the attached Amended Affidavit of Darlene Whelan, which contains additional testimony regarding her personal knowledge of AFS's personnel policies and procedures. See Am. Whelan Aff. at ¶ 4.

### C. AFS Served Documents Referenced in Paragraph 5 Along with Affidavit

Plaintiff argues Paragraph 5 should be stricken because the referenced portion of the CBA is not attached to the affidavit. Rule 56(e) provides that all documents referenced in an affidavit "shall be attached thereto or **served therewith**." The entire CBA was served simultaneously with Whelan's affidavit as a part of AFS's evidentiary submission. See Ex. B to Def.'s Evid. Submission in Supp. of Summ. J., Pl's dep. at Ex. 17. Because the evidentiary submission was so voluminous, AFS chose not to attach to any affidavit certain documents

903637.1                                5

referenced therein that were otherwise a part of AFS's evidentiary submission. Nonetheless, to the extent the Court agrees that AFS should have attached the referenced portion of the CBA, AFS requests leave to supplement the record with the attached Amended Affidavit of Darlene Whelan, which includes the omitted exhibit. See Fed. R. Civ. P. 56(e) ("The Court may permit affidavits to be supplemented . . .")

Although not clear, Plaintiff also seems to argue that Whelan is not competent to testify about the meaning of the CBA and AFS's procedures regarding medical leave. Again, Whelan's personal knowledge of the facts in her affidavit was declared in the opening paragraph of her affidavit and her position as Director of Human Resources logically places her in a position to have personal knowledge of the CBA and personnel procedures. Out of an abundance of caution, AFS moves for leave to file the attached Amended Affidavit of Darlene Whelan, which contains additional testimony regarding Whelan's personal knowledge of the CBA and AFS's personnel polices and procedures. See Am. Whelan Aff. at ¶¶ 3 & 4.

## II.     WHITNEY'S AFFIDAVIT IS NOT DEFICIENT

### A.     Whitney's Affidavit Does Not Conflict With 30(b)(6) Deposition Testimony

Contrary to Plaintiff's assertion, Paragraphs 8 and 9 of Whitney's affidavit do not contradict his deposition testimony as AFS's 30(b)(6) representative. As a preliminary matter, it should be noted that Whitney was testifying in two different capacities in his deposition and his affidavit. Whitney's answers in his deposition were as the designated company representative and, accordingly, he was not testifying in a personal capacity. Thus, when asked in his deposition about the company's position on when an employee is deemed inactive, he stated thirty days after continuous leave. This was the company's answer. Is it not subsequently contrary that Whitney's personal interpretation of the CBA in March 2005 provided a different time frame for active employment. Moreover, when placed in the context of the remainder of his

affidavit, this seeming conflict is explained. See Paragraph 7 of Whitney aff. [explaining that his erroneous interpretation of the CBA's definition of active employment was discovered and corrected during the course of this litigation.] A seeming contradiction between deposition testimony and an affidavit cannot serve as a basis for a motion to strike if the contradiction is explained. See Van T. Junkins & Assocs., Inc. v. U.S. Indust., Inc., 736 F.2d 656, 657 (11th Cir. 1984)( An inherent inconsistency exits when "an affidavit . . . merely contradicts, **without explanation**, previously given clear testimony.")(emphasis added).

### 1. Paragraph 8 Is Not Inherently Inconsistent with Whitney's Deposition

Paragraph 8 of Whitney's affidavit does not contradict the cited deposition testimony. In paragraph 8, Whitney states that he *directed* the approval of Plaintiff's FMLA leave and states "although I do not recall with certainty, I believe I returned Mr. Houston's application, with my approval noted, to him in person." Plaintiff claims this statement is inherently inconsistent with Whitney's testimony on deposition that he did not personally interact with employees regarding the processing of paperwork related to "medical leave." First, Whitney acknowledges in his affidavit that he cannot recall "with certainty" if he returned the FMLA approval form to Plaintiff. Therefore, his testimony amounts to an acceptable variation of Whitney's memory of the events, not an inherent inconsistency that requires exclusion. The Eleventh Circuit has expressly rejected such an exacting standard of consistency:

> [T]o allow every failure of memory or variation in a witness' testimony to be disregarded as a sham would require far too much from lay witnesses and would deprive the trier of fact of the traditional opportunity to determine which point in time and with which words the . . . affiant . . . was stating the truth.

See Tippens v. Celotex, 805 F.2d 949, 953-54 (11th Cir. 1986); See also Pashoian v. GTE Directories, 208 F. Supp. 2d 1293, 1299 (M.D. Fla. 2002)(Refusing to strike "inconsistencies

between Plaintiff's deposition testimony and his affidavit" that are "only a failure of memory" and noting "any discrepancies can be brought out at trail and considered by the trier of fact.")

Moreover, the deposition testimony cited by Plaintiff is seeking general information about whether Whitney's job duties as HR Compliance Officer put him in a position to regularly interact with employees, including Plaintiff, who were submitting forms to obtain and maintain "medical leave." To this general inquiry, Whitney responds "No, sir." See Ex. E to Def.'s Evid. Submission in Supp. of Mot. for Summ. J., Whitney dep. ay 9:14. The questioning goes on to explore Whitney's supervisory relationship, if any, with the individuals that would have been responsible for processing medical leave forms. See Id. at 9:15-10:16. At one point Whitney seeks clarification of the questions by asking: "I want to make sure we're clear by your stating that the persons he interacted with." Id. at 9:23-10:1. And ultimately ends with Whitney stating that he had authority to intervene in the processing of leave and that he does not recall the extent of his involvement in Plaintiff's case, either directly or indirectly. Id. at 10:2-16. At no point was Whitney asked about his role, if any, in processing Plaintiff's FMLA application. Therefore, this ambiguous, generalized deposition questioning about medical leave and Whitney's response cannot unequivocally be seen as a contradiction to Whitney's specific testimony in his affidavit about FMLA-leave. In order to be the kind of unequivocal contradiction that renders his affidavit a sham, the deposition testimony would have to clearly (*i.e.* without interpretation) establish that Whitney had no direct interaction with Plaintiff regarding FMLA-leave. This is not the case.

### 2. Paragraph 9 Does Not Contradict Whitney's Deposition

Next, Plaintiff attacks the veracity of Whitney's statements in Paragraph 9 of his affidavit regarding his conversation with Plaintiff about reclassification by excerpting a portion of his

903637.1                                    8

deposition testimony about the hourly HR employees that had primary contact with Plaintiff. At no point in this excerpt (or any other portion of the deposition) did Plaintiff's lawyer ask Whitney if these were the only two HR representatives that spoke with Plaintiff about reclassification, nor did he ever ask Whitney if he spoke with Plaintiff about reclassification. Whitney is asked, "so are those the two HR representatives that he dealt with when he brought his first return-to-work form and second return-to-work form to AFS?" Id. 76:4-7. Whitney answered: "Those are the two hourly employees from HR he would have seen." Id. 76:8-9. This response begs the question: were there non-hourly employees Plaintiff saw? This follow-up question was not pursued by Plaintiff's counsel. The fact that Plaintiff's counsel failed to seek additional information about any interaction Plaintiff may have had with non-hourly employees does not render the 30(b)(6) deposition testimony in conflict with Whitney's affidavit statements regarding his own interaction with Plaintiff. The remainder of the deposition excerpt is primarily a series of questions about whether the hourly employees mentioned have any documentation of their interactions with Plaintiff. Whitney answered these questions truthfully without volunteering information not asked for, *i.e.*, whether anyone else interacted with Plaintiff regarding reclassification. Thus, Whitney's affidavit is not contrary to the 30(b)(6) deposition testimony. Instead, it provides supplemental information regarding the company's efforts to reclassify Plaintiff, information that was not explored by Plaintiff's counsel in the 30(b)(6) deposition. This cannot serve as a basis to strike Paragraph 9 of Whitney's affidavit. . See Inter-Tel, Inc. v. West Coast Aircraft, 2006 U.S. Dist LEXIS 79895 * 8 (M.D. Fla. Nov. 1, 2006) (Denying motion to strike because "the affidavits do not contradict or repudiate in any significant way the depositions, as the plaintiffs claim. Instead, each affidavit amplifies the contents of the corresponding deposition.").

Finally, Plaintiff suggests Whitney's affidavit testimony that he "offered the plaintiff an additional week to submit a status change request form and supplement his personnel file with verification of his ability to type thirty minutes, if he was interested." contradicts his deposition testimony that Houston was ineligible to submit a status change request form because he was not an "active" employee. Again, as discussed above, Whitney's deposition testimony was as the Company. As is explained in Paragraph 7 of Whitney's affidavit, the Company's position on reclassification rights is different from how Whitney and other HR personnel interpreted the CBA in March 2005. When Whitney was asked in the 30(b)(6) deposition about active employment in general, he was not asked about and did not respond in the context of his personal interpretation in March 2005. His answers as the Company, admittedly in conflict with his personal understanding at the relevant time, do not create a contradiction that renders his personal affidavit unreliable and therefore, due to be stricken. In other words, comparing his deposition testimony as the Company and his personal affidavit is as preposterous as comparing the deposition testimony and affidavit of two different people.

### B. Whitney's Affidavit Does Not Contain Inadmissible Hearsay

Although Section B of Plaintiff's brief purports to establish Paragraphs 3, 5, and 6 are defective because they contain inadmissible hearsay, Plaintiff fails to explain specifically which statements he is referencing or, more importantly, how the statements in these paragraphs are hearsay. Rather, Plaintiff's arguments seem to focus on (1) Whitney's alleged lack of personal knowledge of the CBA and (2) AFS's failure to attach the portions of the CBA references. These arguments fail.

    **1.    Whitney is competent to testify about the CBA and AFS's personnel policies**

Plaintiff seeks to strike Paragraphs 3, 5 and 6 for failure to lay predicate for Whitney's personal knowledge of the CBA. However, Whitney states in Paragraph 1 of his affidavit that he is, and has been at all relevant times, in management within the human resources department and he has personal knowledge of the facts set out in the entire affidavit. Whitney's personal knowledge of the CBA can be inferred from his position as a manager in human resources. "[C]ommon sense dictates that if an affiant is an employee of a company, []he has personal knowledge of the events and circumstances that occurred at the company within his sphere of observation." See Williams, 2006 WL 1793551 * 2; see also Lindsey, 266 F. Supp. 2d at 1343 (same). Thus, the proper predicate has been laid based on Whitney's general assertion of personal knowledge and by virtue of his positions in HR. Out of an abundance of caution, AFS moves for leave to file the attached Amended Affidavit of Bob Whitney (Exhibit B, hereto), which contains additional testimony regarding Whitney's personal knowledge of the CBA and AFS's personnel policies and procedures. See Am. Whitney Aff. at ¶ 2.

### 2. The CBA Was Served Along With the Affidavit

Again, as fully set out in section IC1, *supra*, it is AFS's position that it complied with Rule 56(e) by serving a copy of the CBA simultaneously with Whitney's affidavit as part of its evidentiary submission in support of summary judgment. Nonetheless, to the extent the Court agrees that AFS should have attached the referenced portion of the CBA to the affidavit, AFS requests leave to supplement the record with the attached Amended Affidavit of Robert Whitney, which contains the omitted exhibit. See Fed. R. Civ. P. 56(e) ("The Court may permit affidavits to be supplemented . . .")

### C. Whitney's Affidavit is Nor Improperly Conclusory

Contrary to Plaintiff's argument, Paragraphs 3, 7, 9 and 10 of Whitney's affidavit do not contain improper legal conclusions.

### 1.  Paragraph 3 is Not Conclusory

Plaintiff does not explain how Paragraph 3 is conclusory. Rather, he argues that Whitney's statement that Section 35.1 of the CBA contains "procedures" for reclassification is somehow improper. First, there is nothing conclusory about this factual statement. Moreover, a motion to strike is not the proper vehicle to attack the veracity of an affiant's testimony when that testimony is otherwise within the personal knowledge of the affiant and admissible. If Plaintiff does not agree with Whitney's statement about the CBA, Rule 56(e) charges him with the obligation to submit competing evidence. Second, contrary to Plaintiff's argument, Section 35.1 of the CBA plainly sets out the procedure for reclassification, including direction on the form required and how qualifications are verified.

### 2.  Paragraph 7 is Not Conclusory

Again, Plaintiff does not explain how the testimony in Paragraph 7 is conclusory. In this paragraph Whitney sets out facts about two competing interpretations of the CBA. He does not go on to state any opinion or conclusion about how, if at all, these two interpretations legally impact this case. Plaintiff's real problem with this paragraph seems to be that Whitney has not explained the conflicting interpretations in the level of detail he desires ("there is no independent basis . . ."). This cannot serve as a basis to strike an affidavit. See Schindler Architects, Inc. v. Fidelity and Guaranty Insurance Underwriters, Inc., 2007 U.S Dist. LEXIS 17504 *9-10 (S.D. Fla. March 13, 2007) ("There is no requirement that the affiant provide all information he possesses about the matter, as Plaintiff seems to suggest, in order to prove his competence to testify at all."). Accordingly, Whitney's factual statements the two interpretations should not be stricken as conclusory.

### 3. Paragraph 9 is Not Conclusory

Rather than attack Paragraph 9 as conclusory, Plaintiff actually argues Whitney's statement that Houston was "upset because of his conversation with Ms. Camarata and/or other human resources staff" is hearsay. First, Plaintiff mischaracterizes Whitney's testimony. Whitney's statements about Plaintiff's demeanor is based on Whitney's personal observations and his own interaction with Plaintiff, not based on statements by Camarata or others. Moreover, any statements made by Plaintiff, as set out in Paragraph 9, are within the hearsay exception for admissions by a party-opponent. See Fed. R. Evid. 801(d)(2). Finally, the fact that Whitney does not have contemporaneous written documentation of his conversation with Plaintiff does not serve as a basis to strike the testimony.

### 4. Paragraph 10 is Not Conclusory

Again, Plaintiff's attack on Whitney's testimony does not tie to any Rule 56(e) deficiency. Rather, it ties to a quarrel with Whitney's recollection of the facts and the extent to which Whitney collaborates his allegations. To the extent Houston has competing evidence, the proper mode of attack is to submit this evidence in response to AFS's summary judgment submission. A motion to strike is not proper. Moreover, AFS is not obligated to submit any and all facts and evidence in an affidavit that may relate to a certain matter. See Schindler Architects, 2007 U.S Dist. LEXIS at *9-10 ("There is no requirement that the affiant provide all information he possesses about the matter, as Plaintiff seems to suggest, in order to prove his competence to testify at all."). Therefore, the fact that Whitney did not reference documents to collaborate that Plaintiff returned to HR on March 15, 2005 to process out of his STD leave and enroll in benefits continuation does not render Whitney's assertion of these facts subject to being stricken. Moreover, contrary to Plaintiff's argument, such documented evidentiary support does

exist and has been submitted as part of AFS's evidentiary submission. See Ex. B to Def.'s Evid. Submission in Supp. of Summ. J., Pl.'s dep. at Ex. 21 [benefits enrollment form dated March 15, 2005].

## CONCLUSION

Based on the foregoing, Plaintiff's motions to strike portions of the affidavits of Darlene Whelan and Robert Whitney are due to be denied.

Respectfully submitted this 26th day of April, 2007.

s/ Monica G. Graveline
One of the Attorneys for Defendant
Army Fleet Support, LLC

**OF COUNSEL:**
M. Jefferson Starling (STA062)
Monica G. Graveline (GRA100)
Brent T. Cobb (COB020)
BALCH & BINGHAM LLP
Post Office Box 306
Birmingham, AL 35201-0306

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 26th day of April, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Jimmy Jacobs(JAC051)
4137 Carmichael Road, Suite 100
Montgomery, Alabama 36106

s/ Monica G. Graveline
OF COUNSEL