# EXHIBIT B

STATE OF ALABAMA        )
                        )
COUNTY OF DALE          )

### AMENDED AFFIDAVIT OF ROBERT WHITNEY

1. My name is Robert A. Whitney. I am over nineteen (19) years of age. I currently serve as Manager for Security and Investigations for AFS's operations at Fort Rucker. I have held my current position since February 2006. Prior to holding my current position, I was the Human Resources Compliance officer. The facts in this affidavit are based upon my own personal knowledge and/or review of documents kept in the normal course of business by AFS.

2. AFS-Fort Rucker is a unionized workforce. Bargaining unit positions are governed by a collective bargaining agreement. At all relevant times my job duties have involved interpretation and implementation of the CBA. I also have personal knowledge of all of AFS's human resources policies and procedures, including policies and procedures.

3. The collective bargaining agreement sets out certain procedures regarding employees that wish to reclassify to another position. Specifically, section 35.1 of the CBA provides that in order to reclassify an employee must be qualified for the position requested, must be an active employee, must be the most senior of the employees bidding for the position and must have a status change request form on file. Attached hereto as Exhibit 3 is a true and accurate copy of Section 35.1 of the CBA.

5. An employee seeking reclassification must be qualified for the position being sought. See Exhibit 1. An employee's qualifications for the position are determined by a review of the employee's personnel file at they time the employee request's reclassification. See Exhibit 1. Therefore, it is the responsibility of the employee wishing to reclassify to ensure his personnel file reflects his qualifications in terms of requisite skill, education and experience.

898875.3

6. Pursuant to Sections 25.10, and 4.6(d), inactive employees retain certain rights under the CBA, including the absolute right to reinstatement of the last classification held, the continued accrual of seniority and the opportunity to participate in employer-sponsored benefits programs. Pursuant to Section 4.6 of the CBA, these rights continue through the lesser of the employee's length of seniority at the time leave commences or five years. Attached hereto as Exhibit 4 are true and accurate copies of Sections 4.6 and 25.10 of the CBA.

7. At the time Mr. Houston attempted to return to work in March 2005, I interpreted the CBA to provide that an employee remains active for purposes of reclassification through the duration of paid short-term disability leave. In other words, an employee's active employment status ends at the expiration of short-term disability leave. I believe this interpretation was fairly widespread among the Human Resources staff, including bargaining unit members serving as Personnel Specialists. Subsequent to this litigation, it came to light that an alternative interpretation provides that active employment ceases after thirty days of continuous leave. The Company has expressed that it interprets the CBA in this way. This interpretation is reflected in the company's long standing personnel procedure regarding medical leave. A true and accurate copy of that procedure is attached hereto as Exhibit 1.

8. Mr. Houston applied for FMLA leave on September 10, 2004. I directed the approval of his request. It is customary for me to return the FMLA application, noting approval or disapproval, to the employee by mail or in person. Although I do not recall with certainty, I believe I returned Mr. Houston's application, with my approval noted, to him in person. Attached hereto as Exhibit 5 is a true and accurate copy of Houston's FMLA application. My name appears on the approval line of that document. The initials "CJ" indicate that Cathy Jeffers, a personnel specialist, signed this form on my behalf. It was customary for me to direct

Ms. Jeffers to sign my name to indicate approval of FMLA applications. Mr. Houston did not attempt to return to work when his FMLA leave expired in December 2004. It is my understanding that his doctor had no released him to return work at this point. Even after his FMLA leave expired, Mr. Houston's paid short-term disability leave continued for an additional fourteen weeks.

9. I recall Jo Ann Camarata, the HR Specialist responsible for reclassifications, asking me to intervene in a conversation she was having with Mr. Houston regarding his return to work in March 2005. Mr. Houston was upset that he would not be returned to his Aircraft Mechanic position and that his pay would decrease if he reclassified to an Aircraft Scheduler position. I reiterated the CBA requirements for reclassification and, recognizing that Houston's active employment with the Company was ending that day, the day his short-term disability leave expired, I offered to allow Mr. Houston an additional week to submit a status change request form and supplement his personnel file with verification of his ability to type thirty words per minute, if he was interested. Houston did not express interest in an alternative position and demanded that he be returned to the Aircraft Mechanic position. He was upset at the suggestion by HR staff that he consider returning into a lower classification for lower pay. I told Houston to take some time to think about his reclassification options. Mr. Houston left the personnel office at this time.

10. Mr. Houston returned the following day with his wife to process out of his short-term disability leave into extended administrative leave and to enroll in benefits continuation. Accordingly, I concluded that Mr. Houston had decided to take extended leave rather than seek reclassification. At no time did Mr. Houston submit a reclassification form or typing verification.

11. I do not recall having any involvement in the company's response to Mr. Houston's application for unemployment compensation until the hearing before the Board of Appeals in July 2005. I did not have primary responsibility for responding to unemployment compensation applications at that time.

11. On September 6, 2005, I received an email from Mr. Houston advising me that the Veterans Administration had denied his claim for disability benefits because AFS had told the VA that he was still employed, albeit inactive. Attached hereto as Exhibit 6 is a true and accurate copy of that email. Houston asked me to send a statement to the VA clarifying his employment status. I passed this request on to my supervisor, Darlene Whelan. Ms. Whelan complied with Mr. Houston's request and sent a clarification to the VA. Attached hereto as Exhibit 7 is a true and accurate copy of the letter Ms. Whelan sent to the VA. Mr. Houston emailed me a few months later to tell me he had been deemed 100% disabled by the VA. Attached hereto as Exhibit 2 is a true and accurate copy of Mr. Houston's email.

_____
Robert A. Whitney
Date: 4/24/07

898875.3                                    4

STATE OF ALABAMA            )
~~DALE~~ Houston COUNTY      )
                            )

    Before me the undersigned Notary for the said County and State did appear Robert A. Whitney, who being known to me did swear and affirm that the foregoing is true and complete, on this the 24th day of April, 2007.

                                                            _Jeanne B. Sanders_
                                                            NOTARY PUBLIC

                                         My Commission Expires: 11/20/2007

## CHAPTER 46

## MEDICAL LEAVE

I. **PURPOSE:** To provide guidelines for administering the policy regarding medical leave of absence.

II. **OBJECTIVES:** To ensure proper administration and monitoring of the Medial Leave programs provided by the Company and to ensure strict adherence to applicable Federal Laws covering medical leave programs including the Family Medical Leave Act (FMLA).

III. **CONTROLS:** Supervisors approve disability leave of absence upon established proof of disability and indicate absence code on PAL Card. The Manager, Personnel Services and the Benefits Manager both monitor the FMLA program

IV. **DEFINITIONS:** None.

V. **PROCEDURES:**

A. Disabled employees notify their supervisor of the disability and request leave of absence. The employee submits proof of disability through the Doctor's Certification.

B. Extended Medical Leave

1. If disabled longer than 30 days, employees are transferred from their assigned work area to an inactive status under the jurisdiction of the Human Resources Department as follows:

    | | |
    |---|---|
    | Personal Disability | - Direct Labor - Department 40 |
    | Personal Disability | - Indirect Labor - Department 41 |
    | Industrial Accident | - Direct Labor - Department 42 |
    | Industrial Accident | - Indirect Labor - Department 43 |
    | Family and Medical Leave | - Direct Labor - Department 44 |
    | Family and Medical leave | - Indirect Labor - Department 45 |

2. The Personnel Section processes a Personnel Status Change Request, form 01-229, transferring the employee to an inactive status and clearing the employee through the department level.

3. PAL cards indicating absence code are no longer required when transferred to the Inactive Department.

C. Employees must present to Manager, Personnel Services with a release to return to work signed by their physician. Personnel Section coordinates with the appropriate director to determine location assignment.

1. Personnel Section prepares Personnel Action transferring the employee to active status and coordinates with the department head to where he will be assigned.

2. The returning employee may be examined by the company doctor at the discretion of the company. This examination is at the company's expense.

3. The employee is allowed to return to work at light duty or with restrictions if he can be reasonably accommodated for a given period of time. The Manager, Personnel Services and the department head maintain coordination during the period of restriction.

4. Employees will not be allowed to work while taking narcotics and/or mind-altering medications.

Sam Houston v. L3
Communications
2016

## Whitney, Robert A.

**From:** Sam Houston
**Sent:** Friday, December 23, 2005 11:10 AM
**To:** Whitney, Robert A.
**Subject:** The VA


EXHIBIT 2

Hi Bob,

I got some good news from the VA I was granted my 100% total and permanent disability from the VA, after 2 years of fighting.

Thanks for your help I will never forget you

Merry Christmas just 2 more days until Jesus Birthday
Sam



## ARTICLE 35        RECLASSIFICATIONS AND REASSIGNMENTS

**35.1        RECLASSIFICATIONS**

When a vacancy occurs within a bargaining unit classification, other than as a result of layoff, it will be assigned to employees on the active payroll (i.e., not on indefinite layoff or a leave of absence other than medical leave, of more than 30 calendar days) by seniority who have the qualifications to perform the work involved and who have valid status change request forms on file in the Personnel section. If the vacancy involves adding a person on the payroll, employees on indefinite layoff compete for the vacancy, provided they have a valid reclassification request on file. An employee's personnel file as it exists at the time the vacancy occurs, including on-the-job experience as shown in the personnel file, and the job description shall be the determining factors in filling vacancies. An employee entering a classification which he has not held before may be temporarily assigned to a shift, location, or workweek for familiarization, where he would not work alone before he has completed 60 days in the new classification.

**35.1(a)** An employee returning from a vacation of any length or from a leave of absence of 30 calendar days or less, or medical leave, whether paid or unpaid, who would have been promoted during such vacation, leave of absence, or medical leave of any length, shall be offered promotion according to seniority and qualifications, upon his return to work. The employee may decline such promotion/reclassification without penalty.

**35.1(b)** If the vacancy is not filled under Sections 35.1 or 35.1(a) it will be offered to employees on layoff by seniority who have the qualifications to perform the work involved and who have a valid status change request form on file in the Personnel section.

**35.1(c)** If the vacancy is not filled under Sections 35.1, 35.1(a), or 35.1(b) it will be filled by new hires or from any other source available.

**35.1(d)** An employee on layoff shall not be entitled to displace another employee from employment.

**35.1(e)** The rights of veterans and any persons returning from any type of military leave of absence of more than 30 calendar days will be governed by applicable federal or state law.

**35.2        STATUS CHANGES**

Status change request forms shall be available in the Personnel section and in each work area. The right of classification change, shift change, or location change may be exercised no earlier than six (6) months from the date of honoring an employee's last request of the same type. However, reclassified employees can compete for bonus pay job assignments and higher classifications during this six (6) months period. Such employee can be displaced by another employee exercising his full seniority rights. This provision shall not prevent the employee from exercising his rights during personnel realignment.

### 4.4 REHIRE OF PROBATIONARY EMPLOYEE

In the event that a probationary employee is rehired to the same classification within three months after being terminated as part of a layoff process during his probationary period, he shall receive credit for his previous service as a probationary employee, if he worked at least one month prior to termination.

### 4.5 PROBATIONARY EMPLOYEE ABSENCE

If a probationary employee is granted a leave of absence or is absent in excess of five workdays (40 hours) during his probationary period, the effective date of acquiring seniority shall be postponed by the period of time the employee has been absent or on leave.

### 4.6 BREAKING SENIORITY

An employee's seniority shall be considered broken and all rights under this Agreement forfeited (except as otherwise specifically provided herein) when an employee:

> **4.6(a)** Resigns or is discharged or accepts employment with the Company outside the bargaining units covered by this Agreement.
>
> **4.6(b)** Fails or refuses to return to work within five calendar days after being recalled, unless a satisfactory reason and documentation, if such documentation exists or can be acquired, is given to warrant leniency.
>
> Notification of recall for the purpose of this shall be made by certified mail, telegram or other documentable and verifiable means addressed to the employee's last known address as shown on the Company's records. Failure of the employee to keep the Company informed of his current address shall relieve the Company of any obligations for recall of said employee. Failure to receive notice of recall shall be considered a satisfactory reason for not returning to work within five calendar days, so as to retain seniority, but shall not obligate the Company to hold the position open. An employee who fails to receive the notice, and is not otherwise aware of his recall, and therefore does not report to work within five (5) calendar days shall continue to accrue seniority, but there shall be no further duty to recall the employee until the employee notifies the Personnel section.
>
> **4.6(c)** Is absent for three consecutive workdays without reporting to the Company during the absence a reason which is sufficient to justify such absence, unless notification to the Company is beyond the employee's control; otherwise, such absence shall be cause for termination. Compliance with this is not to be construed to mean that excessive absenteeism shall be tolerated.
>
> **4.6(d)** Is absent due to layoff or disability leave of absence, or both, for a period equal to his length of seniority at the time of such layoff or leave of absence, but in no event in excess of five years.
>
> **4.6(e)** Has retired under the Retirement Plan for Bargaining Unit employees. This does not include an employee on disability leave of absence who draws pension/retirement benefits while on such leave.

**25.9      PRE-TAX RULES**
Employees will share in the cost of group health insurance by paying a portion of the premium for coverage. Insurance premium deduction will be made bi-weekly under the DynCorp Welfare Pre-Tax Plan.

**25.10     EMPLOYEE PREMIUMS**

**25.10(a)** Employees will pay $25 per month for employee only health care, or $60 per month for the cost of employee plus one dependent health care, or $112 per month for the cost of two or more dependents health care.

**25.10(b)** An employee who is currently insured and is absent due to sickness or accident, and is receiving short term disability benefits while on such absence, shall have his insurance maintained in full force and effect in accordance with the provisions of Section 25.10. However, such employee will be required to pay the full cost of optional insurance.

**25.10(c)** An employee who is currently insured and is absent due to a compensable injury as defined by the Worker's Compensation Act of Alabama shall have his insurance maintained in full force and effect in accordance with the provisions of Section 25.10 for his length of seniority or up to five (5) years, whichever is the lesser. However, such employee will be required to pay the full cost of optional insurance.

**25.10(d)** Employees on layoff or medical leave of absence may continue insurance in force up to 104 weeks by paying full cost of premium less cost of sick and accident for which they are not eligible.

**25.10(e)** The Company will pay the cost of the basic life insurance, accidental death and dismemberment insurance, drug purchase program, expanded psychiatric services and short term disability insurance.

**25.10(f)** In order to maintain continuous insurance coverage, an inactive employee's portion of the premiums must be submitted to the Company finance and accounting office by the 25th of the preceding month or in the event of layoff within ten (10) days from the effective date of layoff.

**25.11     PERSONAL ACCIDENT INSURANCE**
The Company will make available at employee cost personal accident insurance to full time employees.

**25.12     EMPLOYEE ASSISTANCE PROGRAM**
The Company will provide a locally administered Employee Assistance Program (EAP) to employees and covered dependents.

**25.13     RETIREE INSURANCE**
The Company will provide to employees age 65 or older who retire after May 6, 2002 a Medicare Supplement, which will be completely employee paid. This plan provides that Medicare is primary and Blue Cross and Blue Shield is secondary.

**APPLICATION FOR FAMILY OR MEDICAL LEAVE**

Fax 334-598-0476

Last Name: HOUSTON
First Name: SAMUEL
MI: P
Employee Number: 014332

Seniority Date: 2/25/02
Classification: AIRCRAFT MECHANIC
Location: ATTC
Shift: 2 MD

ADDRESS:
Street: [redacted]
City: [redacted]
State: FL
Zip Code: [redacted]
Home Phone: [redacted]

Start Date of Anticipated Leave: 9/07/04
Expected Date of Return to Work: _____

EXHIBIT 5

Reason For Leave (Explain in Detail):
Lower Back Pain — see attached MRT Report

Note: A leave request based on an employee's serious health condition or the serious health condition of an employee's spouse, child or parent must be accompanied by a verifying medical certification from a physician.

I hereby authorize Army Fleet Support to contact my physician to verify the reason for my requested leave or for any other information concerning my requested family and medical leave.

I understand that a failure to return to work at the end of my leave period may be treated as a resignation unless an extension has been agreed upon and approved in writing by Army Fleet Support prior to the ending date of my family and medical leave.

EMPLOYEE SIGNATURE: [signature]    DATE: 9/10/04

____ APPROVED    ____ DISAPPROVED        ____ APPROVED    ____ DISAPPROVED
SUPERVISOR                                DIRECTOR

✓ APPROVED    ____ DISAPPROVED
Comments: STD

[signature] Robert Whitney/cly
BENEFITS ADMINISTRATOR

DISTRIBUTION:
Original: Human Resources
Copies: Department Director
        Employee

Form 01-247
Revised 02/06/04

Sam Houston v. L3
Communications
101

**Certification of Health Care Provider**
(Family and Medical Leave Act of 1993)

**U.S. Department of Labor**
Employment Standards Administration
Wage and Hour Division

(When completed, this form goes to the employee, not the Department of Labor.)

OMB No: 1216-0181
Expires: 06/30/02

1. Employee's Name

   SAMUEL P. HOUSTON

2. Patient's Name (if different from employee)

3. Page 4 describes what is meant by a "serious health condition" under the Family and Medical Leave Act. Does the patient's condition (1) qualify under any of the categories described? If so, please check the applicable category.

   (1)____ (2)____ (3)____ (4)____ (5)____ (6) ✓ , or None of the above ____

4. Describe the medical facts which support your certification, including a brief statement as to how the medical facts meet the criteria of one of these categories:

   SEE ATTACHED MRI Report - Lower Back Pain

5. a. State the approximate date the condition commenced and the probable duration of the condition (and also the probable duration of the patient's present incapacity (2) if different

   8/11/04 - uncertain regarding duration pending neurosurgical eval and likely surgery

   b. Will it be necessary for the employee to take work only intermittently or to work on a less than full schedule as a result of the condition (including for treatment described in item 6 below)?

   Yes

   If yes, give the probable duration: Uncertain

   c. If the condition is a chronic condition (condition #4) or pregnancy, state whether the patient is presently incapacitated (2) and the likely duration and frequency of episodes of incapacity (2).

   N/A

(1) Here and elsewhere on this form, the information sought relates only to the condition for which the employee is taking FMLA leave.

(2) "Incapacity" for purposes of FMLA, is defined to mean inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefrom.

Page 1 of 4

Form WH-380
Revised December 1999

Sam Houston v. L3
Communications
102

6. a. If additional treatments will be required for the condition, provide an estimate of the probable number of such treatments:

PT will need to undergo surgery at later date to be determined

If the patient will be absent from work or other daily activities because of treatment on an intermittent or part-time basis, also provide an estimate of the probable number of and interval between such treatments, actual or estimated dates of treatment if known, and period required for recovery if any:

Uncertain - at this time patient completely unable to do his job

b. If any of these treatments will be provided by another provider of health services (e.g., physical therapist), please state the nature of the treatments?

N/A

c. If a regimen of continuing treatment by the patient is required under your supervision, provide a general description of such regimen (e.g., prescription drugs, physical therapy requiring special equipment):

PT currently receiving NSAIDs, muscle relaxants, daily narcotic medication.

7. a. If medical leave is required for the employee's absence from work because of the employee's own condition (including absences due to pregnancy or a chronic condition), is the employee unable to perform work of any kind?

PT could do admin type work but this is not required/available at his current pt

b. If able to perform some work, is the employee unable to perform any one or more of the essential functions of the employee's job (the employee or the employer should supply you with information about the essential job functions)? If yes, please list the essential functions the employee is unable to perform:

No - see above

c. If neither a. nor b. applies, is it necessary for the employee to be absent from work for treatment?

8. a. If leave is required to care for a family memner of the employee with a serious health condition, does the patient require assistance for basic medical or personal needs or safety or for transportation?

N/A

b. If no, would the employee's presence to provide psychological comfort be beneficial to the patient or assist in the patient's recovery?

N/A

c. If the patient will need care only intermittently or on a part-time basis, please indicate the probable duration of this need:

N/A

Signature of Health Care Provider: *Timothy J. Kosmatka*

TIMOTHY J. KOSMATKA, Maj, USAF, MC
44F3 BK5125687 Family Health Clinic
96th MDG/SGOP (AFMC) Eglin AFB, FL

Address

Type of Practice: Family Physician

Telephone Number: 850-883-9198

Date: 20 Sep 04

To be completed by the employee needing family leave to care for a family member:

State the care you will provide and an estimate of the period during which care will be provided, including a schedule if leave is to be taken intermittently or if it will be necessary for you to work less than a full schedule:

Employees Signature

Date: 9/20/04

Page 3 of 4

Sam Houston v. L3
Communications
104

**Whitney, Robert A.**

| | |
|---|---|
| From: | Sam Houston |
| Sent: | Tuesday, September 06, 2005 2:22 PM |
| To: | Whitney, Robert A. |
| Cc: | Wilmer Tharpe |
| Subject: | Letter of Support for the VA |



EXHIBIT 6

Bob,

A couple of days ago, I received a letter from the VA explaining their denied on my claim for individual unemployability (IU).
The employment information supplied by Army Fleet Support dated June 10, 2005 stated that I was still employed by Army Fleet Support.
I know I have recall rights to my old job as an aircraft mechanic and we both know that I can't perform those duties anymore.

My Family Doctor and I have discuss my medical conditions and my increasing disabilities he has agreed that my medical condition and disabilities warrant my removal from the workforce. My Doctor is currently witting a letter to the VA on my behalf for my future claim of IU. But your letter concerning my employment information to the VA has created a huge obstruction to my future claim of IU.

I'm asking you for a letter that would clear up this misunderstanding. A detailed letter stating that I have not physically worked for AFS since September 2004 but
instead was " involuntary terminated / administratively terminated "or you could use your new terminology "put on medical leave" for the next 18 months due to my disabilities and my permanent physical restrictions.

I'm going to FAX you the portion from the VA decision letter concerning my claim for UI so you can see I'm telling the truth

Your letter will have a powerful impact on the VA for my IU

I have signed and return the removal letter to the NLRB you should have already received notification from the NLRB concerning this matter

If you have any questions please call me on my cell phone (850) 902-1925

Sincerely
Sam Houston



P.O. Box 620309  Fort Rucker, AL  36362-0309

**DEFENDANT'S EXHIBIT 1**

B.C. Gibbard
Service Center Manager
Veteran's Administration Regional Office
PO Box 1437
St. Petersburg, FL. 33731-1437

September 6, 2005

Dear Service Center Manager

Mr. Samuel Houston has requested a clarification of his current employment status with Army Fleet Support (AFS) for your office. As a current employee, Mr. Houston is eligible for employment reinstatement under Article 4.6(d) of our Collective Bargaining Agreement until March 14, 2007. Until that time Mr. Houston's employment status remains as inactive on extended leave of absence and is eligible for employee benefits at full cost. Based on Mr. Houston's medical condition as reported to us by his treating physician, Mr. Houston is unable to perform the primary functions required of an aircraft mechanic, and due to specific sections of the Collective Bargaining Agreement, must be able to do so in which to vie for an alternate position.

We fully intend to respect the limitations placed on Mr. Houston by his treating physician, which are intended to protect his health, however we are also bound to comply with the specific language in our Collective Bargaining Agreement, which only allows active employees to be able to compete for alternate positions.

Please feel free to contact my office should you require any additional information concerning Mr. Houston's employment status.

Respectfully,

Darlene Whelan
Director, Human Resources
Army Fleet Support
334-503-2757

Sam Houston v. L3
Communications
249