PLAINTIFF'S EXHIBIT 27

Samuel Houston

Chris Williams
Compliance Officer
Office of Federal Contract Compliance Programs
100 West Capitol St.
Suite 721 – McCoy Federal Building
Jackson, MS. 39269

June 21, 2005

Dear Mr. Williams,

In response to the complaint from Mr. Samuel P. Houston, Army Fleet Support (AFS) categorically denies that any actions were taken based on his Veteran's status and/or his disability resulting from an off-duty, non-work related injury.

Mr. Houston alleges that he was terminated by AFS due to the injuries he suffered while he was on vacation. On the contrary, Mr. Houston was treated exactly the same as all other similarly situated employees and in strict compliance with the governing Collective Bargaining Agreement (CBA). All details of how a case such as Mr. Houston's is to be handled is spelled out in that CBA.

While Mr. Houston was convalescing, AFS ensured that he received the same 6 months of paid disability leave afforded all eligible employees[1]. Per our short-term disability plan, once this benefit is exhausted, the employee must either return to work (with or without accommodations) or be placed on an administrative leave. Per the CBA, this administrative leave cannot exceed 5 years or the length of seniority, whichever is less[2].

Mr. Houston was briefed on this program and his eligibility for continued employment up to March 14, 2007. (The March 14, 2007 date is based on Mr. Houston's seniority under the CBA.) In addition to receiving this explanation in person, Mr. Houston was also sent a full explanation of this program via certified mail on February 8, 2005[3]. Mr. Houston even participated in the "benefits continuation" aspect of this program -- which is only afforded to employees. This, in and of itself, demonstrates that he knew that he was still an employee and that he should have understood the fact that he was not terminated[4].

Secondly, Mr. Houston alleges that the company failed to provide accommodation to his "disabilities". On March 14, 2005, Mr. Houston came to Human Resources with a letter from his treating physician and a statement of his restrictions[5]. Mr. Houston's treating physician, Dr. Thomas J. Manski, M.D., recommended that Mr. Houston no longer

---

[1] CBA extract; section 25.8 (short term disability program)
[2] CBA extract, section 25.10(d) employee premiums, extended
[3] Certified letter to Mr. Houston explaining benefits for program
[4] Mr. Houston insurance continuation sheet (signed 3/15/05); includes acceptance letter from insurance vendor, and Mr. Houston's continued updated for family coverage
[5] Return to Work Slip dated 3/14/05; Mr. Sam Houston

Sam Houston v. L3
Communications
017

participate in active strenuous work and be considered for a more sedentary position[6]. The restrictions that applied to Mr. Houston included:

1. "No lifting of more than 25 pounds.
2. "No climbing.
3. "No standing more than 1 ½ hours
4. "No prolonged sitting more than 1 ½ hours
5. "No bending at the waist to lift, pull, twist, or push to prevent re-injury to lower back."[7]

Dr. Manski stated that these restrictions are permanent. Mr. Houston also presented a letter from Dr. Timothy J. Kosmatka, M.D. that also requested an alternate position for Mr. Houston[8].

Mr. Houston's job classification was that of an aircraft mechanic. The duties of an aircraft mechanic are such that Mr. Houston would be unable to perform the primary functions of his classification with these permanent restrictions[9] -- even with considerable accommodation. Therefore, in a good faith effort to assist Mr. Houston, and as stated in his own complaint, he was offered an opportunity to seek an alternate position as an Aircraft Scheduler. An Aircraft Scheduler is a critical position that requires an aircraft maintenance background but is primarily clerical. This would seem an ideal fit to both Mr. Houston's skills and experience and the accommodations necessary to adhere to his permanent medical restrictions. (Note: While one of the requirements of being an Aircraft Scheduler is the ability to keyboard at 30 wpm[10] and, at this point in time Mr. Houston is not able to type at 30 wpm, we were willing to accommodate this technical deficiency and work with him to get his typing speed up to that required by the job.)

Rather than cooperatively work with the Company's efforts to find Mr. Houston an acceptable position that accommodates his permanent medical restrictions, Mr. Houston became extremely upset at the HR Manager for suggesting that he could not remain an aircraft mechanic. AFS took progressive efforts to work with Mr. Houston in trying to find a position that would allow him to continue working. Though there were no guarantees that Mr. Houston's extensive restrictions could be fully accommodated and we would be able to find him a suitable position within our maintenance organization, we were proactively trying to work with him when he ceased being cooperative.

AFS takes pride in being one of the largest and most progressive employers of Veterans in the State of Alabama, and constantly seeks those with the unique experiences needed for our unique maintenance environment. By way of example, our work force consists of 1506 veterans – fully 46% of our work force. If we were a company that discriminated against qualifying veterans, the numbers would look quite different.

---

[6] Statement of medical condition from Dr. Thomas J. Manski, M.D.
[7] Statement of medical restrictions from Dr. Thomas J. Manski, M.D.
[8] Statement of medical condition from Dr. Timothy J. Kosmatka, M.D.
[9] AFS job description; aircraft mechanic
[10] AFS job description; aircraft scheduler

In summary, Mr. Houston was treated in full compliance of the all state and federal statutes -- and in strict accordance with the Collective Bargaining Agreement governing how the AFS work force is managed. We have made every attempt to work with Mr. Houston and find him a suitable position within our work force that accommodates his multiple, permanent restrictions. Mr. Houston has yet to respond to our good faith efforts to accommodate those restrictions and retain him as a productive member of the AFS maintenance team.

If you have additional questions or would like additional information, please feel free to contact me at 334-503-3222 or by email at wheland@frmaint.com.

*Darlene Whelan*

Darlene Whelan
Director, HR
Army Fleet Support