

PLAINTIFF'S EXHIBIT 32

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| SAMUEL P. HOUSTON | ) |
| Plaintiff | ) |
| v. | ) CASE NO. CV-1:06-cv-243-MEF |
| ARMY FLEET SUPPORT, L.L.C. | ) |
| Defendant. | ) |

### DECLARATION OF BILL VINSON

I, Bill Vinson, do hereby swear and affirm under penalty of perjury as follows:

1. I am over the age of twenty-one years, am competent to make this declaration, and have personal knowledge of the matters stated below.

2. I have conducted a vocational assessment of Samuel P. Houston in connection with a lawsuit he has filed under the Americans with Disabilities Act arising out of his employment with Army Fleet Support, L.L.C.

3. My qualifications to testify as an expert in this matter are set out in the attached curriculum vitae, which accurately summarizes them.

4. In forming my opinions in this case I conducted a diagnostic interview of Mr. Houston; reviewed various records (identified in my report, which is attached); conducted a labor market access analysis; and conducted a vocational assessment of Mr. Houston.

5. Certain of the records reviewed showed that Army Fleet Support, L.L.C. perceived Mr. Houston to have work-related limitations of no prolonged standing, walking, or climbing and no heavy lifting of objects weighing more than twenty-five pounds.

6. Mr. Houston's vocational profile shows he was qualified to perform 45.23% of the jobs in the state and national labor market baled on his education and work experience and not considering the above limitations. Assuming that Mr. Houston is perceived by Army Fleet Support, L.L.C. to have the limitations described above, he would be qualified to perform only 26.23% of the jobs his education and work experience previously gave him access to in the competitive labor market. Thus, as perceived by AFS, he would been able to perform only 42% of the jobs for which he would be qualified based on his education and work experience and would suffer a 92% vocational loss in the eyes of Army Fleet Support, L.L.C..

7. Based on my vocational analysis, Army Fleet Support, L.L.C. perceived Mr.

Houston to be substantially limited in his ability to perform a class of jobs and a broad range of jobs in various classes as compared to the average person with comparable skills and abilities. He is disqualified by the restrictions perceived by Army Fleet Support, L.L.C. from performing any job that involves the above requirements. He is not just restricted from performing the aircraft mechanic job for which he applied, but from 92% of the jobs in the state and national labor markets requiring similar knowledge, skills, abilities, and work experience. In the eyes of Army Fleet Support, L.L.C., Mr. Houston would not have the capacity to perform a substantial number of jobs in a variety of classes in light of his work background and skills. For example, Mr. Houston would no longer have the capacity to perform semi-skilled or skilled jobs such as Electronics Installer/Repairer, Radio and Telecommunications Equipment Installer/Repairer, Office Machine Repairer, Electrical Repairer, Electronic Inspector/Tester, and Electronic Equipment Assembler, to name a few. He would be precluded from other occupations such as: Construction Laborer, Shipping and Receiving Clerk, Material Handler, Sales Counter Clerk, Retail Salesperson, Cashier, Commercial Cleaner, Grounds Maintenance Worker, Warehouse Worker and Insulation Installer, among others. The above jobs exist in large numbers at the unskilled, semi-skilled and skilled levels of work and represent a broad range of jobs in various classes in our regional, state and national economies.

8. My report, which is attached to this declaration, accurately summarizes my opinions and the bases for them.

Pursuant to 28 U.S.C. § 1746, I swear under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on this the 25 day of April 2007.

*Bill Vinson*
BILL VINSON

SWORN to and SUBSCRIBED before me on this the 25 day of April, 2007.

*Shirley H. Reeves*
NOTARY PUBLIC
My commission expires 02/11/2009

{Seal}

NOTARY PUBLIC STATE OF ALABAMA AT LARGE
COMMISSION EXPIRES: Feb 11, 2009
THRU NOTARY PUBLIC UNDERWRITERS

**BILL VINSON, M. Ed.**
Licensed Professional Counselor
Vocational Consultant

6125 Appaloosa Dr.
Mobile, AL 36693

(251) 666-1224

Jimmy Jacobs
Attorney at Law
4137 Carmichael Road, Suite 100
Montgomery, Alabama 36106

March 7, 2007

RE:   Claimant            Samuel P. Houston
      Employer            Army Fleet Support
      Date of Accident    08/11/04

## VOCATIONAL ASSESSMENT

### INTRODUCTION

Mr. Houston is a fifty-two-year-old Aircraft Mechanic. He states that he was later terminated by his employer because his physical limitations prevented him from returning to work at his old job. At that time, he felt that he could perform the work of an Aircraft Scheduler for the same employer. However, Mr. Houston states that he was not allowed to reclassify for that job because he could not do his former job.

Mr. Houston was referred by his attorney for a vocational assessment. I have interviewed the claimant, administered academic testing, reviewed records provided by the claimant's attorney and performed vocational research and analysis in order to arrive at the conclusions and opinions expressed in this report.

The documents reviewed prior to rendering this report included:

- Medical records from Dr. Thomas J. Manski
- Medical statement provided by Timothy J. Kosmatka, M. D. – Major, USAF, MC
- Job descriptions for the positions of Aircraft Mechanic and Aircraft Scheduler from Army Fleet Support LLC – Fort Rucker, Alabama

Vocational research was performed using the <u>Dictionary of Occupational Titles</u>, the <u>Classification of Jobs 2000</u>, the <u>Vocational Expert Handbook, The Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles</u> and labor market data from the United States Department of Labor and the Census Bureau for the state of Alabama.

## SOCIAL HISTORY

Mr. Houston was born on 02/28/55 in Hamilton, Bermuda. He stated that his dad was in the military service and he lived in various places including the Philippines, and the east and west coasts of the United States while growing up.

Mr. Houston is married. His wife is a Medical Coder/Office Manager in a doctor's office in Crestview, Florida. The couple has two grown children who are no longer living in the residence with them.

Mr. Houston is a licensed Florida driver. His pre-injury hobbies included deep sea fishing and target shooting. He reported that he has not participated in either activity in over a year. He now spends a lot of his spare time reading for pleasure. Mr. Houston has not had any prior legal difficulties.

## EDUCATION AND TRAINING

Mr. Houston is a high school graduate. He later attended Okaloosa-Walton Community College and states that he has earned approximately sixty-three credits but does not have an Associates of Arts Degree. His special training has been in the area of Aircraft Maintenance, which he learned while a member of the United States Air Force.

## GENERAL EDUCATIONAL DEVELOPMENT

At the time of our interview, the *Wide Range Achievement Test-3* was administered to Mr. Houston in order to help determine his current level of academic performance. His test scores were as follows:

|            | RAW SCORE | STANDARD SCORE | PERCENTILE | GRADE SCORE |
|------------|-----------|----------------|------------|-------------|
| READING    | 45        | 92             | 30         | 10          |
| SPELLING   | 35        | 83             | 13         | 7           |
| ARITHMETIC | 32        | 75             | 5          | 5           |

As can be seen from these score results, Mr. Houston did not achieve the level of academic performance one would expect from someone with his stated level of education. I did not see any indication during testing that this claimant did not do his best. However, these scores would not be predictive of success in any future anticipated technical or vocational training without remediation.

## MEDICAL SUMMARY

The claimant reported a height of 6'5½" and a current weight of approximately 265 pounds. He is right hand dominant. Mr. Houston was observed to walk with an obvious limp and favored his right lower extremity. He also was noted to stand up several times during our interview in order to change positions to get more comfortable.

When asked about his past medical history, Mr. Houston replied that he has had a surgical procedure due to having a rather serious acid reflux problem. He also indicated that he had had a previous back surgery while on active duty in the Air Force at Keesler Air Force Base around January of 2000. This surgery is believed to have been an L4-5 discectomy for right-sided sciatica and a foot-drop.

A review of Dr. Manski's records indicates that Mr. Houston had a past medical history that was significant for a long history of low back and right leg pain dating back to approximately 1977.

Mr. Houston reported that he has had three prior left rotator cuff surgeries and has sleep apnea and Type II diabetes.

Following his injury in August of 2004 Mr. Houston had a new onset of left low back pain with left lower extremity paresthesias and weakness. The records reflect that an MRI of the lumbosacral spine from September 7, 2004 showed a disc bulge/protrusion and disc osteophyte complexes from L2-3 down through L5-S1. At level L4-5 there was a broad-based disc bulge/protrusion with bone spurs and facet hypertrophy, resulting in significant spinal stenosis and significant lateral recess stenosis. The patient also had scar tissue and adhesions from previous surgery at L4-5.

Under Dr. Manski's treatment, Mr. Houston underwent microscopic decompressive laminectomies, medial facetectomies, and foraminotomies at L3, L4, L5 and S1 to decompress the nerve roots and thecal sac, along with a re-do left L4-5 microdiscectomy to decompress the left L4 and L5 nerve roots with neurolysis of scar tissue and adhesions from previous spinal surgery on November 10, 2004.

In his correspondence dated January 13, 2005 Dr. Manski noted that Mr. Houston still continues to have muscle spasms and aching in his lower back particularly when he has been up on his feet for any significant period of time. He also continues to have intermittent paresthesias radiating into his right upper extremity and also some intermittent shock-like sensations radiating from his neck down into his spine.

In his letter Dr. Manski recommended that Mr. Houston not return to doing heavy mechanical aircraft work as his surgeries and medical condition would cause him to be at increased risk for

recurrent disc herniations if he were to perform strenuous, heavy physical activities that might strain or injure his lower back.

Dr. Manski recommended that Mr. Houston be retrained for a Sedentary job so as to avoid any additional stresses and strains that might re-injure his lower back or cause further injury to other degraded disc levels.

On 03/10/05 Dr. Manski released Mr. Houston to return to work as of March 14, 2005 with the following permanent restrictions:

- No lifting more than twenty-five pounds.
- No climbing.
- No standing or sitting for more than one and a half hours at a time.
- No bending at the waist to lift, pull, twist or push.

In his correspondence dated 12/17/04 Dr. Timothy J. Kosmatka noted that Mr. Houston was being followed at their clinic for chronic back problems. He stated that Mr. Houston should have a change of position at work to something other than Aircraft Mechanic due to his condition, which seemed to exacerbate the pain.

It is clear from Dr. Manski's release of this patient to return to work within restrictions that, as of the date of that release, he did feel he was capable of performing lighter work.

Mr. Houston has a list of some thirteen medications that he takes daily as well as three pain medications that he takes as needed and five other medications for various problems. His narcotic pain medications are prescribed by his primary care physician, Captain Kris Kensley, M.D. These include Lortab 7.5 mg, Vicodin 500 mg, and Oxycontin. He takes other medications for high blood pressure, scalp infection, diabetes, high cholesterol and to help with his insomnia caused by discomfort. His psychologist has also prescribed medication for his anxiety and depression.

## WORK HISTORY AND ANALYSIS

Mr. Houston joined the United States Air Force on 03/13/77 and served until 06/01/01. He was an Aircraft Maintenance Crew Chief and Mechanic and underwent continuing training the entire time he was in the Air Force. He obtained the level of Master Sergeant or E-7.

Upon leaving the military service he worked as a Counterman/Cashier for a short period of time at Discount Auto Parts in Fort Walton Beach earning $8.40 an hour. He left that job to accept one with Army Fleet Support as an Aircraft Mechanic. He started that position on 02/25/02. He

Page 5
Samuel P. Houston

left that job on 03/10/05 as he was medically unable to perform the work. The claimant reports that he was earning $19.48 an hour in that position. He was a member of International Aerospace Machinists Union Local 2003.

Mr. Houston reported that his job at Army Fleet Support required prolonged standing and walking, lifting over one hundred pounds on an occasional basis and generally performing all of the physical demands required in very heavy work. In that position he was a civilian working for a military contractor.

Mr. Houston's training and work experience has been as an Aircraft Mechanic. The <u>Dictionary of Occupational Titles</u> assigns code number 621.281-014 to this job. The specific vocational preparation time or the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in this job is rated as over two years up to and including four years. That would be classified as a Skilled occupation by the United States Department of Labor.

The <u>Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles</u> assigns code number 05.05.09 to the occupation of Aircraft Mechanic. This occupation is in the Craft Technology Group, Mechanical Work. Occupations in this group are concerned with performing highly skilled hand and/or machine operations, utilizing special techniques, training, and experience. Skills and abilities required include: knowledge of tools, machines, materials, and methods used in trade or craft specialty; reading scale drawings or blueprints to visualize objects; using shop math to calculate object dimensions, material amounts needed, and material costs; coordinating eyes, hands, and fingers to use hand tools or machines in constructing, making, or repairing objects; and adhering to object specifications or standards.

The Aircraft Scheduler position that was available at Army Fleet Support at the time Mr. Houston wanted to reclassify to try to obtain that job, is classified by the <u>Dictionary of Occupational Titles</u> as requiring Sedentary Physical Demands. It is classified as a Semi-Skilled job by specific vocational preparation time requiring over three months up to and including six months as the time required for the average worker to gain an ability to do average performance in this specific job.

## ANALYSIS AND CONCLUSIONS

Mr. Houston has a high school diploma and some community college work, which has not yet led to any type of Associate of Arts Degree. The career for which he was trained and which he engaged in for all of his working life was that of Aircraft Mechanic. Following his back injury of August 11, 2004 Mr. Houston underwent surgery and was given permanent physical restrictions by a board certified neurosurgeon which would not allow the performance of his former occupation of Aircraft Mechanic. However, at that time, he would have been able to

perform the work of Aircraft Scheduler, based on his residual functional capacities and his past work experience. Physically, that job is classified as requiring Sedentary Physical Demands.

If we compare Mr. Houston's pre-injury demonstrated physical capacities to perform a job requiring Heavy Work for an individual with a high school diploma, with his post-injury residual capacity to perform only Sedentary Work with a high school diploma, we see that his occupational loss or loss of labor market access is 92%.

Thank you very much for the opportunity to provide a vocational assessment of your client. If you have any questions or comments regarding my report, please feel free to contact me.

Sincerely yours,

*Bill Vinson*

Bill Vinson, M.Ed. LPC
Vocational Consultant

BV/sb