**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **SAMUEL HOUSTON,** | ) | |
| | ) | |
| | ) | |
| **Houston,** | ) | **Civil Action No.** |
| **v.** | ) | **CV 06-243-MEF** |
| | ) | |
| **ARMY FLEET SERVICES, LLC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANT ARMY FLEET SUPPORT, LLC'S REPLY
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant Army Fleet Services, LLC (AFS), submits the following reply to Plaintiff Samuel P. Houston's response to its Motion for Summary Judgment.

**I.    SUMMARY JUDGMENT IS DUE TO BE GRANTED BECAUSE HOUSTON HAS FAILED TO SATISFY THE REQUIREMENTS OF RULE 56.**

Rule 56(e) of the Federal Rules of Civil Procedure provides that an adverse party's response to a motion for summary judgment may not "rest upon mere allegations or denials of the adverse party's pleading" but must be supported by "specific facts showing there is a genuine issue for trial." Nevertheless, throughout his brief Houston makes sweeping statements that he purports to be undisputed facts without any supporting citation and mischaracterizes the few facts he does present. There are no genuine issues of material fact and AFS's motion for summary judgment is due to be granted on all of Houston's claims.

**II.    HOUSTON'S ADA CLAIMS ARE DUE TO BE DISMISSED**

**A.    Houston Has Failed to Come Forward With a Sufficient Explanation of His Conflicting Positions on His Ability to Work**

Houston has failed to satisfy the heightened summary judgment standard under Cleveland that requires an ADA plaintiff to provide a "sufficient explanation" of contradictory statements that have a bearing on his ability to work. See Cleveland v. Policy Management Sys. Corp., 526

U.S. 795, 797-98 (1999).  Houston argues there is no inconsistency between his position in this lawsuit that he could work as of March 14, 2005 and his claims of inability to work in his VA benefits application because the claims of inability to work reflect changed circumstances after March 14, 2005.  See Pl.'s Resp. to Def.'s Mot. for Summ. J. at 30. This explanation unravels when viewed in light of the timing of his benefits application and his statements therein about when he believes he was rendered unable to work.

Despite Houston's argument that it was the change in circumstances after he tried to return to work at AFS that rendered him unable to work, in his March 15, 2005 Veteran's Application for Increased Compensation Based on Individual Unemployability[1] ("IU"), Houston lists the date he "became too disabled to work" as "**Sept. '04**".  See Ex. A to Def.'s Suppl. Evid. Submission, Excerpt Certified Records of Veterans Admin. at 3996.[2]  Therefore, by Houston's own assertion, he was unable to work **six months before** AFS "terminated" him in March 2005, **ten months before** he was denied unemployment compensation benefits in July 2005, approximately **eight months before** he unsuccessfully sought employment with another employer[3], and **one-year before** he had shoulder surgery in September 2005.   Thus, the

---

[1] Houston made a claim for total disability under the Individual Unemployability ("IU") provisions of the VA disability benefits regulations.  The IU regulations allow a claimant to seek a total disability rating for compensation purposes, even if his actual disability rating is less than total, if he is "unable to secure or follow a substantially gainful occupation as a result of a service-connected disabilit[y]."   38 C.F.R. §§ 4.16 & 4.18.  To establish IU, a claimant must establish he has an "impairment of the mind or body which is sufficient to render it **impossible** for the average person to follow a substantially gainful occupation."  Therefore, when Houston filed his IU claim on March 15, 2005, he in essence was claiming that his back condition made it **impossible** for him to work.  This is clearly contrary to his claims in this lawsuit that he could work.

[2] Defendant has filed contemporaneously herewith a supplemental evidentiary submission in support of its motion for summary judgment that includes the VA records cited herein.  These records had not been produced to defense counsel at the time AFS filed its summary judgment submission.  See Def.'s Br. in Support of Mot. for Summ. J. at 13 n. 7.  The VA produced records April 18, 2007.  AFS immediately produced the records to Houston April 25, 2007, before he filed his response to AFS's Motion for Summary Judgment on May 3, 2007.

[3] Houston submitted an application to Crestview Aerospace in the Summer of 2005.  See Ex. B to Def.'s Evid. Submission, Pl.'s dep. at 35:4.  The fact that Houston filed his IU application on the same date he returned to AFS to out-process from STD leave to extended leave shows that Houston's alleged inability to continue active work with AFS or secure alternative employment with another employer will not explain the inconsistency in his positions.  It was not until months after his IU application that Houston unsuccessfully sought employment with

inconsistency in his claims that he was able to work in March 2005 for purposes of his ADA case and unable to work in September 2004 for purposes of his VA IU application cannot be explained in terms of changed circumstances. In fact, none of the four factors he claims led to the change in his ability to work had occurred at the time he swore under oath to the VA that he could not work.

Houston's reliance on his rotator cuff surgery also is unfounded. In fact, Houston never sought IU benefits based on his shoulder. Houston's March 2005 claim for IU benefits was based solely on his back condition. <u>See</u> Ex. A to Def.'s Suppl. Evid. Submission, Excerpt Certified Records of Veterans Admin. at 3996-3998. During the relevant time period, Houston limited his request for benefits for his shoulder to a "**temporary** 100% rating for period of convalescence from Left Rotator Cuff surgery that was done **09/15/2005**, physical therapy will continue for at least three months . . . " Ex. A to Def.'s Suppl. Evid. Submission, Excerpt Certified Records of Veterans Admin. at 4124 [November 22, 2005 Statement of Support of Claim]. In fact, Houston did not seek a permanent disability rating based on his shoulder until February 21, 2006, months after he had already been deemed eligible for IU benefits for his back. <u>Id.</u> at 4153. Therefore, Houston's shoulder surgery was not the basis for his statements to the VA that he could not work, and it certainly cannot explain his contradictory ADA claims in this case.

Moreover, on September 21, 2005, one of Houston's doctors, Juan Cruz, represented to the VA that the restrictions **imposed on March 14, 2005 based on his back condition** would "prevent Mr. Houston from ever returning to the work force." Ex. A to Def.'s Suppl. Evid.

---

Crestview Aerospace. Even then, Houston acknowledged that he was not hired because he submitted his application one week after Crestview filled the position. <u>Id.</u> at 33:4-5. Therefore, Crestview Aerospace did not pass on hiring Houston because of his work restrictions. This was the only attempt Houston made to seek employment after March 2005.

Submission, Excerpt Certified Records of Veterans Admin. at 4075.  Houston submitted this

letter in an attempt to appeal the VA's July 26, 2005 decision that he was not eligible for IU.  Id.

at 4076.  In submitting Dr. Cruz's letter, he stated "I am not working at Army Fleet Support and

have not since Sept. 2004 ."  Id.  Once again, the date he pinpoints for the VA as the date he

became too disabled to work was one year before his shoulder surgery.

Houston has offered no plausible explanation for why he advised the VA that as of

September 2004 he could not work and yet claims in this lawsuit that in March 2005 he could.

Ultimately, the VA relied on Houston's representations about his inability to work to deem him

eligible for IU benefits effective **October 2004**.  See Ex. A to Def.'s Suppl. Evid. Submission,

Excerpt Certified VA Records at 4137-4139.  Therefore, because Houston has not explained how

he could be unable to work in one context and able to work in another during the same time

frame based on the same impairment, his ADA claim must be dismissed as a matter of law.  See

e.g. Slomcenski v. Citibank, N.A., 432 F.3d 1271 (11th Cir. 2005) (summary judgment granted

because explanation of conflicting statements insufficient); Musarra v. Vineyards Dev. Corp.,

343 F. Supp. 2d 1116, 1123 (M.D. Fla. 2004) (conflicting statements about ability to work

**covering the same time period** cannot be sufficiently reconciled to avoid summary judgment).

     **B.**     **Houston's ADA Claims Fail on the Merits**

          **1.**     **Houston is Not A Qualified Individual With a Disability**

               **a.**     **Houston is not disabled**

                    **1.)**     **Houston is not substantially limited in a major life activity**

Despite admitting that he is not substantially limited in any of the major life activities

identified in the ADA regulations, Houston attempts to avoid dismissal of his claim with a

blanket, conclusory statement that his work restrictions substantially limited "his ability to

perform in a normal manner in these respective areas of major life activities in the same manner

as an average person in the general population."[4]  See Pl.'s Resp. to Def.'s Mot. for Summ. J. at

16.  However, he does not identify which activities, how he is limited, how substantial the

limitations are, or what an average person can do.  This is not evidence of a substantial limitation

of any major life activity.

The only purported evidence he attempts to produce is the Declaration of Bill Vinson, a

vocational consultant, apparently for the purpose of demonstrating that he is substantially limited

in the major life activity of working.  Vinson opines that Houston is able to perform "only

26.23%" of the jobs his education and work experience previously gave him access to in the

labor market. Pl.'s Ex. 32, Vinson Aff. at ¶ 6.  Houston's vocational impairment rating, however,

is not evidence that he is "substantially limited" in working.[5]  It is Houston's burden to show that

---

[4] Assuming, *arguendo*, that sitting, standing, bending, lifting and climbing are major life activities, Houston has failed to demonstrate that he is substantially limited in these activities as compared to the average person.  It is not enough to have some limitation.  The limitation must be **substantial**.  Courts have routinely rejected such a finding for restrictions similar to Houston's in these areas.  See Dutcher v. Ingalls Shipbuilding, 53 F.3d 723, 726 (5th Cir. 1995)(affirming summary judgment against a welder with a "heavy lifting" restriction); Lamb v. Bell County Coal Corp., 1999 WL 717976, *4 (6th Cir. 1999)(affirming summary judgment against worker with 25 pound lifting restriction); Blouin v. Kaiser Aluminum and Chemical Corp., 1996 WL 19138, 5 A.D. Cases 546 (E.D.La. 1996)(summary judgment for employer, finding that Plaintiff's back condition, which resulted in 30 pound lifting restriction, with "no continuous stooping, crouch, or bending," was not a "disability" under the ADA); Volk v. Pribonic, 1996 WL 230103, 5 A.D. Cases 535 (W.D. Pa. 1996)(summary judgment for employer, finding that employee's back condition, which resulted in inability to lift heavy objects, bend and walk, did not constitute ADA-covered "disability"); Lamury v. Boeing Co., 1995 WL 643835, *5 (D.Kan. 1995)(finding injured worker with a 30 pound lifting restriction and restricted use of power tools, repetitive arm activity, and small hand tools, not "disabled" under the ADA, because otherwise "virtually any impairment could be considered an impairment under the ADA"); Williams v. Avnet, Inc., 910 F.Supp. 1124 (E.D.N.C. 1995)(finding that manual punch press operator with 25 pound lifting restriction, and limited ability to push and pull, not "disabled" under the ADA); O'Dell v. Altec Industries, 1995 WL 611341 (W.D.Mo. 1995)(summary judgment for employer, finding that Houston with frequent lifting restriction of 35 pounds, and occasional lifting restriction of 50 pounds, not "disabled" under the ADA); Lowe v. Angelo's Italian Foods, Inc., 1994 WL 675027 (D.Kan. 1994), rev'd on other grounds, 149 F.3d 1191 (10th Cir. 1998)(finding that Houston who could not carry anything greater than 14 pounds, could not stoop or bend, and who was required to sit periodically, not "disabled" under the ADA); Reese v. Owens-Corning Fiberglass Corp., 31 F.Supp. 2d 908, 917-18 (D.Kan. 1998)(granting summary judgment and collecting cases).

[5] Houston's own doctors considered his back condition to have a limited impact on his ability to work, as demonstrated by one doctor's recommendation that he "have a change of position to something other than aircraft mechanic" [Ex. 12 to Pl.'s dep.] and the other's recommendation that he "not return to doing heavy mechanical aircraft work" [Ex. 13 to Pl.'s dep.].  Therefore, Houston's own doctors did not consider his condition to have a wide-spread impact on his ability to work.  At most, heavy mechanical aircraft work is a narrow range of jobs and, therefore, insufficient to show a substantial limitation in the major life activity of working.  See Pritchard v. Southern Co. Servs., 92 F.3d 1130, 1133 (11th Cir. 1996) ("An impairment does not substantially limit the ability to work merely because it prevents a person from performing either a particular specialized job or a narrow range of jobs.")

he is "significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1). Houston has presented no evidence on how his vocational impairment compares to the average person in the general population. This is his burden. In Maynard v. Pneumatic Products Corporation, the Eleventh Circuit explained the plaintiff's burden as follows:

> Maynard claims his back significantly restricts his ability to walk because he cannot walk more than 40-50 yards. But Maynard offers no proof of how far the average person can walk. Maynard ignores a crucial element of the disability-prong of the prima facie case: he must demonstrate that he is significantly restricted in the performance of a major life activity "as compared to ... the average person." ....
>
> Maynard suggests that a trier of fact should determine whether his walking restriction amounts to a substantial limitation.
>
> ... However, the claimant must present sufficient evidence of the significant restriction before the court may turn the issue over to the trier of fact. **This evidence must include information regarding the abilities of the average person in the general population.** Maynard proffered no evidence on this point, and thus failed to make out a prima facie case.
>
> ...We... endorse the proposition that, "To establish that an impairment substantially limits a major life activity such as sitting, standing, or walking, an ADA plaintiff must not merely provide evidence of her own limitations.... The first key is to develop comparative evidence. Who, then is the relevant comparator? The EEOC regulations provide that it is `the average person in the general population.'"

Maynard v. Pneumatic Products Corp., 223 F.2d 1344, 1348 (11th Cir. Nov. 22, 2000), vacated on other grounds, 256 F.3d 1259 (11th Cir. 2001).

Accordingly, Houston's argument that his vocational impairment somehow automatically translates into a "substantial limitation" in the major life activity of working is not the law. Like

Maynard, Houston has failed to come forward with evidence of what he cannot do compared to the average person. Thus, as a matter of law, Houston's back condition does not rise to the level of being substantially limiting.

### 2.) No record of impairment

#### a.) The claim was not pled in his complaint

Houston did not plead his claim that he has a record of impairment in his complaint. Contrary to his assertions in his brief, his complaint clearly alleges, "he is a qualified individual with a disability, or one who is perceived to have a disability . . . ." See Compl. ¶ 16. Therefore, Houston's allegations are limited to the actual and/or perceived prongs of the ADA's definition of disability. See Coffey v. County of Hennepin, 23 F. Supp. 2d 1081, 1088 (D. Minn. 1998) (In requiring specific allegations of each definitional prong relied upon, Court held that where the plaintiff plead an "actual" disability but did not plead a "regarded as" disability, such claim could not be maintained where defendants would be prejudiced for lack of notice of such claim).

#### b.) Houston did not have a record of impairment

Houston claims he has a record of impairment because (1) he identified himself as a disabled veteran, (2) he was placed on short-term disability leave by AFS once in the past, and (3) his doctors recommended that he be retrained for sedentary work. His claim is without merit.

##### i. Disabled veteran status is not a record of disability

First, there is no evidence that Houston's 70 % VA disability rating during his time of active employment was based on an impairment that substantially limited any of his major life activities. To satisfy the ADA's "record of impairment" standard, it is well settled that the condition of which Houston has a history must itself be one that would qualify as a physical or

mental impairment substantially limiting a major life activity.  See e.g. Blundell v. Healthcare Authority of the City of Huntsville, 140 Fed. Appx. 154, 156 (11th Cir. 2005) (record relied on must show a history of an impairment that substantially limits a major life activity); Burton v. Potter, 339 F. Supp. 2d 706, 713 (M.D. N.C. 2004)(rejecting "record of" claim because record simply showed Houston had suffered from a stress-related condition in the past and did not establish whether that condition substantially limited any major life activity).  Because Houston has not even identified the condition or conditions that supported his 70% VA rating, he certainly has not presented any evidence establishing that the unknown impairment or impairments substantially limited any of his major life activities.  His failure to do so is fatal to his "record of" impairment argument based on his disabled veteran status.

**ii.     Prior short-term disability leave does not establish a record of disability**

Houston's prior stint on short-term disability leave also does not establish a record of impairment.  Again, Houston does not even state what the impairment was that necessitated STD leave, nor does he establish it was an impairment that substantially limited a major life activity.  Second, Houston obviously returned to full duty after the previous STD leave.  Therefore, the impairment was temporary.  It is well established that temporary impairments do not constitute protected disabilities under the ADA.  See Rinehimer v. Cemcolift, Inc., 2002 U.S. App. LEXIS 10300 (3d Cir. May 30, 2002); McDonald v. Pennsylvania Dept. of Pub. Welfare, 62 F.3d 92, 96 (3d Cir. 1995).

**iii.     Physicians' recommendations do not establish record of disability**

Contrary to Houston's assertion, AFS's knowledge of Houston's physicians' restrictions and recommendations that he refrain from heavy mechanical aircraft work does not establish a record of disability. An employer is not deemed to have regarded an employee as disabled or

considered an employee to have a record of disability simply by relying on the employee's own physician's communications regarding the employee's work restrictions.  See Wooten v. Farmland Foods, 58 F.3d 382, 385 (8th Cir. 1995) (employer did not regard plaintiff as being disabled where employer's perceptions were based on doctor's written restrictions, not "speculation, stereotype, or myth"); Minor v. Stanford Univ., 1999 U.S. Dist LEXIS 9135 (N. D. Cal. June 14, 1999) ("Stanford's decision to terminate Minor based on restrictions imposed by her doctor does not indicate that the University regarded her as having a substantially limiting impairment.. . .").  The purpose of the "regarded as" and "record of" provisions is to cover individuals who are "rejected from a job because of myths, fears and stereotypes associated with disabilities."  29 CFR 1630, App. § 1630.2(l).  There are no myths or stereotypes when it is the employee's physician who establishes the restrictions.

### 3.)  AFS Did Not Regard Houston as Disabled

Houston's efforts to demonstrate he was regarded as disabled are disingenuous and meritless.  First, Houston has failed to cite a single case to contradict the controlling law that an employer's belief that an employee cannot perform his own job based on medical restrictions does not mean the employer regards the employee as "disabled" under the ADA.  See, e.g. Murphy v. United Parcel Service, Inc., 119 S. Ct. 2133, 2138 (1999) ("to be regarded as substantially limited in a major life activity of working, one must be regarded as precluded from more than a particular job."); Witter v. Delta Air Lines, Inc., 138 F.3d 1366 (11th Cir. 1998) (for an employee to be regarded as disabled, the employer must believe that the employee is unable to perform a class of jobs, not just a single job).  Second, Houston has presented absolutely no evidence to dispute the fact that he was not reclassified to the Aircraft Scheduler position because he failed to submit a status change request form or verification of his typing skills - not because he was perceived as disabled.  The fact that AFS offered him an opportunity to

reclassify defeats any claim that he was regarded as disabled. Third, as set forth above, the fact that he was classified as a disabled veteran, received short-term disability, and was restricted by a doctor do not demonstrate that AFS regarded him as having a disability that substantially limited a major life activity.

Fourth, his attempt to somehow prove that AFS regarded him as disabled because a vocational specialist, Bill Vinson, "assumes" AFS did is preposterous. As argued more fully in AFS's contemporaneously filed Motion to Strike Affidavit of Bill Vinson, Vinson's unqualified opinion as to what AFS believed is purely speculative and has absolutely no basis in fact or personal knowledge. Such rank speculation does not create a genuine issue of material fact. See, e.g., Rogers v. CH2M Hill, Inc., 18 F. Supp. 2d 1328, 1331 (M.D. Ala. 1998) (If a non-movant's response fails to address an issue and "consists of nothing more than conclusory allegations, the court must enter summary judgment for the movant."); Plaisance v. Travelers Ins. Co., 880 F. Supp. 798, 804 (N.D. Ga. 1994)("[I]t is well established that an [ADA] Plaintiff opposing summary judgment must present significantly probative evidence on the issue of discrimination to avoid summary judgment . . . Reliance solely upon speculation and unsubstantiated hearsay constitutes a failure to meet this burden.").

Vinson's opinion also is flawed because it assumes AFS had knowledge of the jobs a person cannot perform in the general labor market based on work restrictions similar to Houston's restrictions. **There is absolutely no evidence of this.** Moreover, Vinson's assumption that AFS must have regarded Houston as disabled because it relied on and honored his physician's restrictions fails. As discussed above, an employer's reliance on physician-imposed restrictions in making a decision does not prove a "perception of" a disability.

       **b.**       **Houston concedes he was not qualified for the Aircraft Mechanic position**

Assuming, *arguendo*, Houston can establish he was disabled, had a record of disability, or was regarded as disabled, his *prima facie* case fails because he was not qualified for the position at issue. As Houston did not address this prong of his *prima facie* case or confront AFS's proof that he was not qualified for the position, he concedes this point and his *prima facie* case of ADA discrimination fails. <u>See</u>, <u>e.g.</u>, <u>Rogers v. CH2M Hill, Inc.</u>, 18 F. Supp. 2d 1328, 1331 (M.D. Ala. 1998) (If a non-movant's response fails to address an issue and "consists of nothing more than conclusory allegations, the court must enter summary judgment for the movant."); <u>accord</u> <u>National Labor Relations Bd. v. McClain of Georgia, Inc.</u>, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation of authorities are generally deemed to be waived.").

### 2.    Houston's Purported Discriminatory Termination Claim Fails

AFS has articulated a good reason for not reinstating Houston to his position as an Aircraft Mechanic—he could not perform the essential functions of the job. As Houston has conceded this point, AFS's reason is not a pretext for disability discrimination.[6] Houston's argument that pretext is shown through alleged preferential treatment to comparator also fails.

As a preliminary matter, it should be noted that any legally cognizable comparator must be outside the protected class, *i.e.*, not disabled. In fact, to the extent Houston points to disabled individuals who were treated better than him, this disproves his claim of discrimination.

---

[6] Houston attempts to impugn AFS's legitimate, non-discriminatory reason for removing him from the Aircraft Mechanic position by arguing AFS is being untruthful by stating he was placed on extended leave rather than terminated. This is a red herring. First, Plaintiff has repeatedly acknowledged he has not been terminated. <u>See</u> Ex. B to Def.'s Evid. Submission, Pl.'s dep. at 103:1-5; 103:22. Second, even if he has been terminated, AFS's legitimate, non-discriminatory reason for its decision would be the same and would not be pretext for discrimination.

The only individual specifically identified by Houston, P.D.,[7] is not a proper comparator. First, she did not have restrictions of similar severity or duration.  See Ex. B to Def.'s Suppl. Evid. Submission, Westrick Aff. at Exs. 1, 2 & 3.   Specifically, P.D. differs from Houston because she was allowed to return to the Aircraft Mechanic position three times while placed under **temporary** restrictions by her physician.  See Ex. B to Def.'s Suppl. Evid. Submission, Westrick Aff. at ¶ 3, 4 & 5.  Unlike P.D., Houston presented AFS with **permanent** restrictions. P.D.'s situation is not comparable to Houston's because P.D. could be assigned light-duty tasks on a short-term basis while remaining in the same position.  Houston could not.  Importantly, when P.D. subsequently was unable to return to work as an Aircraft Mechanic at the expiration of a short-term disability leave, AFS treated her exactly the same as Houston by removing her from the Aircraft Mechanic position and placing her on extended medical leave (administrative termination status).  Id. at 6 and Ex. 7 thereto.

Further, P.D. is not comparable because the supervisors who allowed her to return to the Aircraft Mechanic position, albeit temporarily, were not involved in any decisions about Houston's return to work.  Compare Exs. 1, 2 & 3 to Westrick Aff.  It is well established in this Circuit that no comparison can be made between decisions by different decision-makers.  See generally Silvera v. Orange County School Board, 244 F.3d 1253, 1261 n.5 (11th Cir. 2001) ("[D]ifferences in treatment by different supervisors or decision makers can seldom be the basis for a viable claim of discrimination.").

Plaintiff has conceded the legitimacy of the reason AFS did not reinstate him to the Aircraft Mechanic position.  Therefore, Houston's discriminatory "termination" claim fails.  In

---

[7] Houston does not submit any evidence that P.D. or the 179 Aircraft Mechanics identified in AFS's discovery response are outside the protected class, *i.e.* not disabled, therefore, his comparison should fail on this basic point.

the end, Houston's real claim seems to rest entirely on his argument that he should have been reclassified to the Aircraft Scheduler position.  This claim is discussed below.

### 3.    Houston Cannot Establish His Failure to Accommodate Claim

#### a.    Houston could not perform the essential functions of the Aircraft Mechanic position, with or without an accommodation

Frankly, it is baffling that Houston now argues he could have been accommodated in the Aircraft Mechanic position.  He has repeatedly conceded that his restrictions rendered him unable to perform the Aircraft Mechanic position and that no accommodation would change this. See Ex. B to Def.'s Evid. Submission, Pl.'s dep. at 76:14-15; 77:2.  In fact, to date, he still has not identified an accommodation that would have allowed him to perform the Aircraft Mechanic job.  It was Houston's burden to suggest an accommodation and his assertion that AFS should have done more than ask four field managers—the individuals most familiar with the job duties of the Aircraft mechanic position—to evaluate his permanent medical restrictions against the day-to-day duties of the position is preposterous.

#### b.    Reclassification was not a reasonable accommodation

##### 1.)    Houston concedes he did not submit a status change form or verification of his typing skills

Houston cannot establish his failure to accommodate claim with respect to reclassification to the Aircraft Scheduler position because (1) he has not shown he was qualified for that position and (2) his request for a transfer in violation of the CBA is unreasonable.[8]  As set out in its principal brief, an AFS employee seeking reclassification must satisfy four CBA requirements:  (1) active employment status; (2) submission of a status change request form; (3)

---

[8] When the issue is whether an employer failed to make reasonable accommodations, plaintiff " 'must establish that (a) he is [disabled] but (b) with reasonable accommodation (which he must describe), he is able to perform the 'essential functions' of the position he holds or seeks."  Willis v. Conopco. Inc., 108 F.3d 282 (11th Cir. 1997) (quoting with approval Barth v. Gelb, 2 F.3d 1180, 1186 (D.C.Cir.1993)).  Once a plaintiff satisfies his burden, defendant must refute plaintiff's evidence. Id. However, plaintiff always bears the burden of proving his case by a preponderance of the evidence. Id.

verification in the personnel file of qualifications for the position sought; and (4) seniority.  See Ex. B to Def.'s Evid. Submission, Pl.'s dep. at Ex. 17: § 35.1.  Houston does not dispute AFS's evidence that he never submitted a status change request form [requirement two] or verification of his qualifications (*i.e.* certification of his  ability to type 30 wpm), for the Aircraft Scheduler position [requirement three].  It is well established that it would be unreasonable to require AFS to violate the governing CBA to reclassify Houston.  U.S. Airways, Inc. v. Barnett, 122 S. Ct. 1516 (2002).  Thus, his failure to meet these mandatory requirements refutes his accommodation claim.

### b.    Plaintiff cannot impugn AFS's explanation

As discussed in the preceding section and in AFS's principal brief, AFS has shown it would have been unreasonable to transfer Houston to the Aircraft Scheduler position because he did not comply with the reclassification procedures of the CBA.  Houston attempts to discredit this explanation by claiming AFS misinterpreted its own CBA and that the CBA provisions at issue are unfair.   These arguments are red herrings that do not change the fact that reclassification in violation of the CBA was an unreasonable accommodation.

### 1.)    Houston's argument about the varying definitions of active  employment is misplaced

Houston repeatedly tries to shift focus from his failure to comply with the CBA's reclassification provisions by pointing out AFS's differing interpretations of active employment. First, as explained in its principal brief, some of AFS's HR personnel and labor relations personnel had varying understandings of the definition of active employment.  While some believed that active employment ceased after 30 consecutive days of absence (the "30-day" rule), others believed an employee's active employment continued throughout the duration of short-term disability (the "STD" rule).  Subsequent to this litigation, the varying interpretations were

discovered and it was determined that AFS officially interpreted the CBA to provide that active employment ceases after 30 consecutive days.  See Ex. C to Def.'s Suppl. Evid. Submission, DeMarko Aff. at ¶ 3.  This would have meant that Houston became an inactive employee in October 2004 and that he would not have been eligible for reclassification without first returning to his  Aircraft Mechanic position (which he could not have because of his restrictions).  On the other hand, the policy that was applied to Houston—he remained active until the duration of his short-term disability leave—was beneficial to him; that is, he had until March 15, 2005 to request reclassification without first having to return to the Aircraft Mechanic position.  Thus, any confusion in the proper interpretation of the CBA worked to Houston's advantage.

Nevertheless, as set forth below, none of the statements Houston points to demonstrate an inconsistency that creates an inference of pretext:

•     Whitney's testimony during the July 13, 2005 UC appeals hearing that at the time Houston returned to work on March 14, 2005, he did not have to return to his former Aircraft Mechanic position first, "not for one hour, not for one day, not at all" reflects the STD rule that provided Houston was still active and, therefore, eligible to request a reclassification on March 14, 2005, the day of his STD leave period;

•     The 30(b)(6) deposition testimony that Houston could not reclassify unless he was an "active employee" is true and consistent under either interpretation.  The only inconsistency is when active employment expires, e.g. after 30 days of continuous leave or at the expiration of STD leave.

•     Whelan's statement in her July 21, 2005 OFCCP response "that an active employee may apply for an alternative position . . . At the time of Houston's return to the HR office March 14th and through March 19th.[9] Houston had full rights to request an alternate position through the reclassification process as prescribed in Article 35 without having to return to his current classification." This statement accurately reflects the STD rule.

---

[9] Reflects five-day extension of active employment term granted by Whitney.  See Ex. D to Def. Evid. Submission, Whitney Aff. ¶ 9.

•      Whelan's statement in a letter to the VA dated September 9, 2005, that Houston had to return to active employment (his job as Aircraft Mechanic), before reclassification.  This statement does not contradict any previous statement.  The letter reflects Houston's status and rights **as of that date**.  There is no dispute that under either interpretation of the term active employment, Houston was certainly deemed an inactive employee as of September 9, 2005.  Therefore, it is not disputed that on September 9, 2005, the date of Whelan's letter, he would have had to return to his prior classification as an Aircraft Mechanic in order to be deemed active and, therefore, eligible to seek reclassification.

At the end of the day, it does not matter which interpretation is correct, or whether AFS's definition of active employment has varied, because AFS gave Houston the benefit of the most liberal interpretation in making its summary judgment arguments.  Under the most liberal interpretation, Houston's active employment was set to expire on March 14, 2005 when his STD leave expired.  In fact, Houston's active employment term  was extended to March 19, 2005, in order to give him additional time to submit reclassification paperwork and proof of his typing skills.  The fact that AFS now has concluded that the proper interpretation is the 30-day rule does not matter because that definition has never been applied to Houston.  In any case, Houston never submitted a status change form or proof of his typing skills.  Therefore, he has failed to satisfy his burden to prove reclassification was reasonable.

### 2.)      Houston's claim that AFS failed to apply an alleged exception to the active employment requirement fails

Houston also attempts to attack AFS's explanation that reclassification outside the CBA was unreasonable by arguing AFS failed to apply an alleged "exception" to the active employment requirement of the reclassification procedure for individuals on "medical leave." This is nothing more than a quarrel with AFS's application and interpretation of its own CBA. See Alexander v. Fulton County, Ga., 207 F.3d 1303, 1341 (11th Cir. 2000) ("A Plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his judgment

for that of the employer.  Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason.")

### 3.)    Houston's opinion that the reclassification provision is unfair fails.

Houston's opinion that the CBA's requirement that an inactive employee must return to active employment before seeking reclassification is unfair does not establish pretext, either.  See Damon v. Fleming Supermarkets of Florida, Inc., 196 F.3d 1354, 1361 (11th Cir. 1999), cert. denied, 529 U.S. 1109 (2000)(emphasizing that Courts "are not in the business of adjudicating whether employment decisions are prudent or fair.  Instead, our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision.").  Moreover, contrary to Houston's argument, it is well established that an employer does not have to violate its CBA to transfer an employee as an accommodation.   See e.g., U.S. Airways, Inc. v. Barnett, 122 S. Ct. 1516 (2002).

### 4.)    Houston does not establish comparator evidence

In response to Houston's interrogatory seeking the identity of all employees who have been accommodated, AFS identified 179 Aircraft Mechanics who have had medical restrictions accommodated.  Houston argues these 179 aircraft mechanics are comparators and AFS's accommodation of their medical restrictions discredits AFS's reason for not reclassifying him.  This conclusory, unsupported argument fails.  Moreover, the fact that AFS has accommodated medical restrictions for 179 aircraft mechanics and not accommodated the medical restrictions of 53 aircraft mechanics underscores AFS's commitment to accommodation when reasonable and indicates AFS properly engages in the individualized inquiry required under the ADA.  If AFS

had a discriminatory motive against disabled individuals, it defies logic that it would ever accommodate a disabled employee.

The bottom line is that Houston has failed to point to any similarly situated non-disabled employee who was treated better. The reason is clear: he cannot. Houston conceded in his deposition that he is not aware of any comparator who was treated better. See Ex. 3 to Def.'s Evid. Submission, Pl's dep. at 131:9. Houston's conclusory arguments about the 179 Aircraft Mechanics will not overcome AFS's undisputed evidence that it has not treated any similarly situated comparator better than Houston and, more importantly, that reclassification in this instance was unreasonable.

## III. HOUSTON'S RETALIATION CLAIM IS DUE TO BE DISMISSED AS A MATTER OF LAW.

### A. <u>Houston's Claim is Procedurally Barred</u>

Houston fails to explain how his retaliation claim, a claim that arose *prior* to the time he filed his underlying administrative charge, can survive when it was not alleged in those charges. Instead, Houston's bare argument involves misplaced reliance on Eleventh Circuit law that allows a plaintiff to pursue a retaliation claim that was not pled in the underlying administrative charge if it arose ***after*** the charge was filed. Again, as explained more fully at pages 30 to 31 of AFS's principal brief, those cases do not apply to a case like this one where the alleged retaliatory conduct arose ***before*** the underlying charge was filed and, therefore, was known and could have been included. See <u>Ang v. Proctor and Gamble, Co.</u>, 932 F.2d 540, 548 (6th Cir. 1991) (retaliation that occurs before charge is filed will be outside the scope of the original charge if not included); <u>Williamson v. Int'l Paper Co.</u>, 85 F. Supp 2d. 199 (S.D. Ala. 1999) (if retaliation occurs before charge filed, allegations must be included in original charge); <u>Hull v. Case Corp.</u>, 1993 WL 603554 (S.D. Fla. 1993)(same).

Houston describes the retaliation in terms of AFS's initial response to the DIR when, according to Houston, AFS stated a "false" reason for separation  See Pl.'s Resp. to Def.'s Mot for Summ. J. at 26.  AFS's initial response to the DIR was filed on March 22, 2005, well before Houston's May 23, 2005 OFCCP charge and June 16, 2005 EEOC charge.  Accordingly, under Houston's own version of the facts, the alleged retaliation occurred and was known **before** he filed his underlying charges of discrimination and should have been included.  His failure to allege retaliation that had already occurred takes this case outside the holdings in Gupta and Baker and dictates dismissal because the retaliation claim is outside the scope of the underlying administrative charges.

**B.    Houston's Retaliation Claim Fails on the Merits**

Houston tries to discredit AFS's argument that Leguiza and Brown had no knowledge of any protected activity when the decision to respond to his UC claim was made by pointing to a May 7, 2005 conversation he allegedly had with Brown about his personnel documents.  Even under Houston's own summary of this conversation, however, there is no allegation that he did anything other than request his personnel documents.  Houston does not allege he voiced any opposition to any practice made unlawful by the ADA with Brown on this date.  Therefore, this conversation does not constitute protected activity and does not impart knowledge of protected activity to Brown.  See Hill v. IGA Food Depot, 2006 U.S. Dist. LEXIS 80455 * 17 (M.D. Ala. Nov. 2, 2006)(finding no evidence of protected conduct because Houston's complaints and discussions with employer expressing generalized concerns did not put employer on notice that he was opposing an unlawful employment practice); Webb v. R&B Holding Co., Inc., 992 F. Supp. 1382, 1389 (S.D. Fla. 1998)( "[T]he employee must, at the very least, communicate her belief that discrimination is occurring to the employer. It is not enough for the employee merely

to complain about a certain policy or certain behavior of co-workers and rely on the employer to infer that discrimination has occurred.")

Furthermore, Brown's alleged statement that Houston "did not deserve unemployment compensation because he quit" is not evidence of retaliation. To the contrary, if Brown made the statement, it proves he had a good faith belief that Houston's unemployment compensation application should be opposed for a reason other than any alleged protected activity, *i.e.,* for quitting his job.

Houston also points to a conversation Brown had on May 23, 2007 with a representative of the VA as alleged proof that AFS's response to his UC benefits application was retaliatory. Houston's argument ignores the fact that the undisputed evidence establishes Brown had already decided to file a second-level appeal before he received a call from the VA. Ex. J to Def.'s Evid. Submission, Brown Aff. ¶ 7. Therefore, at the very least, Brown made the decision to file the second-level appeal before he had any knowledge of Houston's complaint to the VA.[10] Therefore, the fact that the appeal may have been executed after the conversation with the VA matters not. See Cotton v. Cracker Barrel Old Country Store, Inc., 434 F.3d 1227, 1233 (11th Cir. 2006) (Noting that "proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality.") (citing Clark Co. Sch. Dist. v. Breeden, 532 U.S. 268, 272 (2001)). Houston may believe that this explanation is "suspect" or "pretextual," but he has offered absolutely no evidence to contradict it.

Finally, Houston attempts to show requisite knowledge by setting out generalized facts about various complaints he made to AFS personnel regarding his termination. These facts may

---

[10] Moreover, the VA representative did not advise Brown that Houston's complaint with that agency tied to disability. Rather, Brown understood Houston's claims to tie to his veteran's status. Therefore, even if, *arguendo*, Brown was motivated to file the second-level appeal based on his conversation with the VA, he was not acting based on knowledge of any protest or opposition by Houston of any rights protected by the statue he now sues under, the ADA. This renders his ADA retaliation claim fundamentally flawed.

show that someone at AFS had knowledge of his protected activity before the UC response, but does not constitute evidence that Legieza or Brown had knowledge of these complaints before the decision to oppose his UC benefits application was made.  Therefore, it remains undisputed that the relevant decision-makers had no knowledge that Houston had engaged in protected activity at the time AFS initiated its response or appeals to Houston's application for unemployment compensation benefits. Without proof that Leguiza and Brown had knowledge of Houston's complaint, Houston's retaliation claim must necessarily fail.  See, e.g., Bass v. Board of County Comm'rs, 256 F.3d 1095, 1105 (11th Cir. 2001) ("When evaluating a charge of employment discrimination, we must focus on the actual knowledge and actions of the decision-maker."); Raney v. Vinson Guard Serv., Inc., 120 F.3d 1192, 1197 (11th Cir. 1997) (in order to establish prima facie case of retaliation, Houston has the burden of establishing the corporate agent who took the adverse action was actually aware of the protected expression).

## IV.    CONCLUSION

For the foregoing reasons, and the reasons set out in AFS's principal brief, AFS is entitled to summary judgment as to all of Houston's claims.

Respectfully submitted this 11th day of May, 2007,

s/ Monica G. Graveline
One of the Attorneys for Defendant
Army Fleet Support, LLC

**OF COUNSEL:**
M. Jefferson Starling (STA062)
Monica G. Graveline (GRA100)
Brent T. Cobb (COB020)

BALCH & BINGHAM LLP
Post Office Box 306
Birmingham, AL 35201-0306


## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of May, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Jimmy Jacobs(JAC051)
4137 Carmichael Road, Suite 100
Montgomery, Alabama 36106


s/ Monica G. Graveline
Of Counsel