IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SAMUEL HOUSTON, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. |
| v. | ) CV 06-243-MEF |
| | ) |
| ARMY FLEET SERVICES, LLC., | ) |
| | ) |
| Defendants. | ) |

## MOTION TO STRIKE DECLARATION OF BILL VINSON

Army Fleet Support, L.L.C. ("AFS") files this motion to strike in its entirety the Declaration of Bill Vinson filed in opposition to Defendant's Motion for Summary Judgment. In support thereof, the Defendant states as follows:

**I.   LEGAL STANDARDS GOVERNING EXPERT TESTIMONY**

Rule 56(e) of the Federal Rules of Civil Procedure requires that opposing affidavits "shall be made on personal knowledge, shall set forth facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Regarding expert testimony, Federal Rule of Evidence 702 provides:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

For purposes of opposing summary judgment, mere production of expert testimony is insufficient to create an issue of fact. "Summary judgment is not precluded

simply because a party has produced an expert to support its position. The Court must look beyond an expert's ultimate conclusion and analyze the adequacy of its foundation." Cadarian v. Merrell Doro Pharmaceuticals, 745 F. Supp. 409, 411-412 (E.D. Mich. 1989); American Key Corp. v. Cole National Corp., 762 F.2d 1569, 1580 (11th Cir. 1985) ("An expert opinion that lacks any credible support does not create an issue of fact."). The trial court, as "gate keeper," must "determine whether the testimony is reliable. Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 149 (1999).

## II.  THE DECLARATION AND ATTACHED REPORT

Plaintiff submits the report of his "expert," Bill Vinson, to support his argument that he is disabled under the ADA. Vinson's declaration is inadmissible, however, because it fails to satisfy the legal requirements of admissibility for expert testimony. When ruling on the admissibility of such testimony, a court is required to make three determinations: (1) whether the expert is competent to testify to the matters he addresses; (2) whether the methodology used is reliable; and (3) whether the testimony assists the trier of fact to understand the evidence. See United States v. Frazier, 387 F. 3d 1244, 1260 (11th Cir. 2004). The proponent of the expert bears the burden of establishing the requirements have been met. Id. at 1260. Vinson's declaration is inadmissible because (1) the methodology relied upon by Vinson is flawed, and (2) Vinson's testimony offered will not assist the trier of fact.[1]

---

[1] First, it should be noted that Vinson's CV was not submitted with plaintiff's summary judgment response. Accordingly, there is no way to determine whether Vinson has the basic qualifications to render him competent to testify to the matters addressed. Second, AFS will depose Vinson on May 24, 2007. At this time, it is likely AFS will have additional support for its argument that Vinson's testimony in his affidavit is inadmissible.

### A. Vinson's Methodology Is Flawed

In his Declaration, Vinson reaches various conclusions about, *inter alia*, the number of jobs Houston is qualified to perform, the kinds of jobs he can and cannot perform, and AFS' perceptions about Houston's ability to work. To prepare his report and corresponding declaration, however, Vinson met with Plaintiff <u>only once</u>, performed <u>one</u> written test (the Wide Range Achievement Test–3) to determine "[Houston's] current level of academic performance," reviewed selected medical records[2] provided to him <u>by Plaintiff's counsel</u>, and reviewed the job descriptions for the Aircraft Mechanic position and the Aircraft Scheduler position. In other words, although Vinson purported to conduct a vocational assessment, he did not (1) conduct any independent testing of Plaintiff's abilities; (2) review AFS's work site; (3) review job descriptions for more than two positions; (4) interview anyone other than the Plaintiff; (5) review the transcript of the 30(b)(6) deposition; (6) review the transcript of Plaintiff's deposition; (7) review any other information whatsoever produced by either party during discovery[3]; or (8) review any documents maintained in Plaintiff's personnel or medical files. Accordingly, it is unknown how Vinson can draw any reliable conclusion about Houston's abilities or AFS's perception of Houston's abilities.

Moreover, the methodology is flawed because Vinson offers no factual basis to support his conclusions and no explanation of how he reached those conclusions. Specifically, Vinson does not explain how Houston's restrictions prevent him from performing the jobs listed in the declaration, or other jobs in the job market, or how he

---

[2] Importantly, although Vinson claims the medical records he reviewed from Houston's doctors support the conclusion that Houston was substantially limited from performing and broad class of jobs, Houston's physicians opined that Houston's physical condition impacted only one job – "Aircraft Mechanic" [See Ex. 1] or narrow class of jobs – "heavy mechanical aircraft work" [See Ex. 2].

[3] To date, AFS has produced over 4,000 documents.

reached that conclusion. For instance, Vinson offers no explanation or rationale for concluding that Houston's restrictions prevent him from performing the position of cashier, a position Houston has held before and a position Social Security Administration specifically concluded that Houston can currently perform. See Exhibit 3.

Finally, Vinson's statements about the percentage of jobs Houston can perform within the "competitive labor market" and his overall vocational loss are not supported by an explanation of the methodology Vinson used to make his computations. Vinson's conclusions and methodology are particularly suspect (therefore, unreliable) because the math is not easily understood. It is unexplained how Houston's alleged reduction in the number of jobs he could perform before his back injury (45.26%) compared to after his back injury (26.23%) establishes a vocational loss of 92%.[4] Ultimately, Vinson's conclusions lack any probative value because the underlying analysis is fatally flawed by its reliance on incomplete and independently unverified information and baseless assumptions.

### B. Vinson's Opinions Will Not Assist the Trier of Fact

Furthermore, the declaration is due to be stricken because it does not aid the trier of fact in determining Plaintiff's claims. Specifically, Vinson's testimony (1) is speculative and conclusory, and (2) usurps the trier of fact by opining as to the ultimate issues in the case. The declaration is therefore due to be stricken.

#### 1. **Vinson's Opinions are Speculative and Conclusory**

Expert testimony also is not admissible when it is based merely on subjective belief or unsupported speculation. See, e.g., McCavey v. Baxter Healthcare Corp., 298

---

[4] Moreover, there is no comparison of Houston to the average person in the job market, as required by the ADA to establish substantial limitation. See Maynard v. Pneumatic Products Corp., 223 F.2d 1344, 1348 (11th Cir. Nov. 22, 2000), vacated on other grounds, 256 F.3d 1259 (11th Cir. 2001).

F.3d 1253, 1256 (11th Cir. 2002) (speculative, unreliable expert testimony inadmissible); McLean v. 988011 Ontario Ltd., 224 F 3d 797, 800-01 (6th Cir. 2000) ("An expert's opinion, where based on assumed facts; must find some support for those assumptions in the record" or be stricken). Vinson's declaration, however, is fraught with unsupported speculative and conclusory statements. For instance, he "assumes," without evidentiary support, the following:

> 1. AFS **perceived** Mr. Houston to suffer a 92% vocational loss "in the eyes of AFS." Vinson Decl. ¶ 6.
>
> 2. AFS "**perceived** Mr. Houston to be substantially limited in his ability to perform a broad class of jobs and a broad range of jobs in various classes as compared to the average person with comparable skills and abilities." Vinson Decl. ¶ 7.
>
> 3. "He is disqualified by the restrictions **perceived** by Army Fleet Support, L.L.C. from performing any job that involves the above restrictions." Vinson Decl. ¶ 7.
>
> 4. "**In the eyes** of Army Fleet Support, L.L.C., Mr. Houston would not have the capacity to perform a substantial number of jobs in a variety of classes in light of his work background and skills." Vinson Decl. ¶ 7.
>
> 5. "**Assuming** that Mr. Houston is perceived by Army Fleet Support to have the job limitations described above, he would be qualified to perform only 23% of the jobs his education and work experience previously gave him access to in the competitive labor market." Vinson Decl. ¶ 6.

Courts have routinely rejected such speculative, unfounded opinion testimony about a plaintiff's vocational limitations, real or perceived. See Carr v. Publix Supermarkets, 2005 WL 1073253 (M.D. Ga. 2005), aff'd 178 Fed. Appx. 57 (11th Cir. 2006) (striking expert testimony relied on by plaintiff in opposing summary judgment because experts' opinions on vocational aptitude were speculative, conclusory, unreliable); Greene v. United Parcel Serv., Inc., 125 F. Supp. 2d 571, 521 (M.D. Ga.

2000) (expert testimony on plaintiff's access to jobs in the labor market not sufficient to show substantial limitation in major life activity of working because the data was unsupported and incomplete). Notably, the "certain records" that Vinson claims show that AFS had certain perceptions about Houston's abilities are not identified, or attached, and therefore cannot serve as an adequate foundation for the alleged conclusions drawn therefrom, particularly when no records from AFS, other than two job descriptions, are disclosed in the attached report as having been reviewed. See Fed. R. Evid. 56(c)(requires all documents referenced in an affidavit must be "attached thereto or served therewith.") Without any factual support, or without any reference to an individual through whom AFS acted, these assertions about what AFS allegedly perceived about Houston's physical abilities and vocational aptitude are mere speculation and, therefore, inadmissible.

### 2. Vinson Offers Inadmissible Legal Conclusions

Moreover, Rule 702 requires that the evidence or testimony "assist the trier of fact to understand the evidence of determine a fact in issue." Fed. R. Evid. 702. Thus, expert testimony is inadmissible if it concerns matters that are within the average lay person's realm of understanding. See Collier v. Bradley Univ., 113 F. Supp. 2d 1235, 1249 (C.D. Ill. 2000) (expert testimony in Title VII case inadmissible because jury did not need expert's aid to understand subject at issue). Here, Vinson's opinions that Houston is substantially limited as to the major life activity of working, and that AFS perceived him as such, are broad legal conclusions that usurp the province of the jury. Testimony that consists of legal conclusions will not assist the trier of fact. See Cook v. Sheriff of Monroe County, Fla., 402 F.3d 1092, 1112 n.8 (11th Cir. 2005) (noting that "testifying

experts may not offer legal conclusions"); Brooks v. J.C. Penney Life Insurance, Co., 231 F. Sup. 2d 1136, 1141 (N.D. Ala. 2002) (conclusory affidavit consisting primarily of legal conclusions will not assist the court). Accordingly, Vinson's testimony should be stricken.

## CONCLUSION

Based on the foregoing, Vinson's declaration is due to be stricken.

                                                                  s/ Monica Graveline
                                                                   One of the Attorneys for Defendant
                                                                   Army Fleet Support, LLC

**OF COUNSEL:**
M. Jefferson Starling (STA062)
Monica G. Graveline (GRA100)
Brent T. Cobb (COB020)
BALCH & BINGHAM LLP
Post Office Box 306
Birmingham, AL 35201-0306

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of May, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Jimmy Jacobs(JAC051)
4137 Carmichael Road, Suite 100
Montgomery, Alabama 36106


/s/ Monica Graveline
Of Counsel

**DEPARTMENT OF THE AIR FORCE**
**HEADQUARTERS 96TH AIR BASE WING (AFMC)**
**EGLIN AIR FORCE BASE FLORIDA**

Date: 12/17/04



To Whom It May Concern:

HOUSTON, SAMUEL P. is being followed by our clinic for chronic back problems. He should have a change of position at work to something other than aircraft mechanic due to this condition, as this position seems to exacerbate the pain.

Thank You,

Timothy J Kosmatka, M.D.
Major, USAF, MC
Flight Commander, Family Health
Eglin AFB, FL
Comm. (850) 883-9198
DSN 875-9198
Fax (850) 883-8869

# Thomas J. Manski, M.D., P.A.
## Board Certified Neurosurgeon
## Spine and Brain Surgery

January 13, 2005

REDACTED

EXHIBIT 2

**RE: HOUSTON, Samuel**
**DOB:** ▮▮▮▮▮

To whom it may concern,

I am writing this letter to outline my assessment and treatment of low back pain and lower extremity pain that my patient, Mr. Samuel Houston, has experienced.

I initially saw Mr. Houston on October 13, 2004 when he presented with severe left low back pain, left buttock pain, left posterior thigh pain, and distal left lower extremity pain and paresthesias. Prior to this, Mr. Houston had a past medical history that was significant for a very long history of low back pain and right leg pain, dating back to approximately 1977 with the patient having had a 22-year history of back pain and right leg pain.

While the patient was still on active duty in the Air Force, he finally underwent surgery for his low back at Kessler Air Force Base around January of 2000. At that time, the patient, by report, underwent an L4-5 discectomy for right-sided sciatica and a foot-drop.

The patient did have improvement in his low back pain and right lower extremity symptoms following that operation.

The patient then had the more recent new onset of left low back pain and left lower pain, paresthesias and weakness in August of 2004. An MRI of the lumbosacral spine from September 7, 2004 showed disc bulge/protrusions and disc/osteophyte complexes from L2-3 down through L5-S1. At L4-5, there was a broad-based disc bulge/protrusion with posteromarginal osteophytes and facet hypertrophy, resulting in significant spinal stenosis and significant lateral recess stenosis. The patient also had scar tissue and adhesions from previous surgery at L4-5.

Mr. Houston underwent microscopic decompressive laminectomies, medial facetectomies, and foraminotomies at L3, L4, L5 and S1 to decompress the nerve roots and thecal sac, along with a re-do left L4-5 microdiscectomy to decompress the left L4 and L5 nerve roots with neurolysis of scar tissue and adhesions from previous spinal surgery on November 10, 2004.

He has had improvement in his left lower extremity since this most recent surgery.

Mr. Houston still continues to have muscle spasms and aching in his lower back, particularly when he has been up on his feet for any significant period of time. Mr. Houston has been on a

Houston v. L3 Communications
PL Initial Disc & RFP
026

350 Racetrack Road • Ft. Walton Beach, FL 32547 • Phone: (850) 863-2300 • Fax: (850) 863-2369

Page 2
HOUSTON, Samuel
01/13/2005

long course of narcotic analgesics including fentanyl patches and he is on a tapering dose of these narcotic fentanyl patches.

Mr. Houston also gets intermittent paresthesias radiating into his right upper extremity involving the second, third, fourth and fifth digits and also some intermittent shock-like sensations radiating from his neck down into his spine.

I would recommend Mr. Houston not return to doing heavy mechanical aircraft work as he has had two disc herniations at L4-5 requiring surgery and he would be at increased risk for recurrent disc herniations if he were to perform strenuous, heavy physical activities that might strain or injure the lower back.

Furthermore, Mr. Houston does have MRI evidence of disc/osteophyte complexes from L2-3 down through L5-S1, and additional stresses and strains on the lower back might cause progression and disease of some of those disc levels, as well.

I would recommend Mr. Houston be retrained for a position that would allow him a more sedentary job so as to avoid any additional stresses and strains that might re-injure his lower back or cause further injury to other degenerated disc levels.

I appreciate your kind consideration of my patient.

Sincerely,

Thomas J. Manski, M.D.

TJM/mlw

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

EXHIBIT 3

| | |
|---|---|
| SAMUEL HOUSTON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No.: 1:06-CV-243-MEF ) |
| ARMY FLEET SERVICES, LLC. | ) ) |
| Defendant. | ) ) |

### CERTIFICATE

I hereby certify and affirm in writing that I am the **Claims Rep** of the offices of the Social Security Administration Office, an organization operated pursuant to or under the laws of Florida, located at 429 Mary Esther Cutoff, Ste. 1, Ft. Walton Beach, Florida 32548, that I am the custodian of the records of said offices and that the attached or within copy of said records is an exact, full, true and correct copy of said records requested by the subpoena/and or request in the above styled action.

Additionally, I certify that said records were made at or near the time of the occurrence of the matters set forth therein or from information transmitted by, a person with knowledge of those matters; made and kept in the course of the regularly conducted business activities of said office; and that the records were made in the regularly conducted business activities of said office, as a regular practice.

All of which I hereby certify and affirm on this **28** day of **March**, 2007.

_____
Custodian of Records

SOCIAL SECURITY ADMINISTRATION
111-B RACETRACK ROAD, NW
FT WALTON BEACH, FL 32547-1644

Sam Houston v. /L3
Communications
1728

SOCIAL SECURITY ADMINISTRATION

# DISABILITY DETERMINATION AND TRANSMITTAL

**REDACTED**

| 1. DESTINATION | 2. DDS CODE | 3. FILING DATE | 4. SSN | BIC (if CDB or DWB CLAIM) |
|---|---|---|---|---|
| DDS ☒  ODO ☐  DRS ☐  DQB ☐  INTPSC ☐ | V34 | 10/18/2005 | | 00 |

**5. NAME AND ADDRESS OF CLAIMANT** (include ZIP Code)
SAMUEL PETER HOUSTON

CRESTVIEW, FL

**6. WE'S NAME** (if CDB or DWB CLAIM)

**7. TYPE CLAIM (Title II)**
DIB ☒  FZ ☐  DWB ☐  CDB-R ☐  CDB-D ☐  RD-R ☐  RD-D ☐  RD ☐  P-R ☐  P-D ☐  MQFE ☐

**8. TYPE CLAIM (Title XVI)**
DI ☐  DS ☐  DC ☐  BI ☐  BS ☐  BC ☐

**9. DATE OF BIRTH**

**10. PRIOR ACTION**   PD ☐  PT ☐

**11. REMARKS**
Clmt Phone: 850-682-6482
Concurrent Title II/XVI claim
DDS Received 10/19/2006

**12. DISTRICT-BRANCH OFFICE ADDRESS** (include ZIP Code)
SOCIAL SECURITY ADMINISTRATION
429 MARY ESTHER CUTOFF STE;101
FORT WALTON BCH, FL 32548-9986

**DO-BO CODE** A20

**13. DO-BO REPRESENTATIVE**

**14. DATE**

**11A.** ☐ Presumptive Disability

**11B.** ☐ Impairment

## DETERMINATION PURSUANT TO THE SOCIAL SECURITY ACT, AS AMENDED

**15. CLAIMANT DISABLED**
A. ☐ Disability Began
B. ☐ Disability Ceased

**16A. PRIMARY DIAGNOSIS**
BACK DISORDER (DISC/DEGENERATIVE)

**BODY SYS.** 01   **CODE NO.** 7240

**16B. SECONDARY DIAGNOSIS**
AFFECTIVE/MOOD DISORDER

**CODE NO.** 2960

**17. DIARY TYPE**   MO./YR.   REASON

**18. CASE OF BLINDNESS AS DEFINED IN SEC. 1614(a)(2)/(216)(i)**
A. ☐ Not Disab. for Cash Bene. Purp.
B. ☐ Disab for Cash Benefit Purp. Beg.

**19. CLAIMANT NOT DISABLED**
A. ☒ Through Date of Current Determination
B. ☐ Through _____
C. ☐ Before Age 22 (CDB only)

**20. VOCATIONAL BACKGROUND**
OCC YRS.   ED YRS. 14  COLL 2

**21. VR ACTION**
A. ☐ SCIN   B. ☒ SCOUT   C. ☐ Prev Ref

**22. REG-BASIS CODE** H1
**23. MED LIST NO.**
**24. MOB CODE**
**25. REVISED DET** ☐
Initial A. ☒   Recon B. ☐   DHU C. ☐   ALJ Hearing D. ☐   Appeals Council E. ☐   U.S. District Court F. ☐

**26. LIST NO.**  A.   B.   C.   D.   E.   F.

**27. RATIONALE**
☒ See Attached SSA-4268-U4/C4
☐ Check if Vocational Rule Met. Cite Rule ▶

**28.**
A. ☐ Period of Disability   B. ☐ Disability Period   C. ☐ Estab Beg _____ AND   D. ☐ Continues   E. ☐ Term _____

**29. LTR/PAR NO.**

**30. DISABILITY EXAMINER-DDS**
TA ZHARVED   Dana Harvey

**31. DATE** 02/22/2007

**32. PHYSICIAN OR MEDICAL SPEC. SIGNATURE**
See RFC dated 02/22/2020

**33. DATE**

**32A. PHYSICIAN OR MEDICAL SPEC. NAME** (Stamp, Print or Type)
SDM ASSESSMENT 47

**32B. SPEC. CODE** 47

**34. REMARKS**
CHARLES E BINDER
ATT FOR SAMUEL HOUSTON 4511 N HOMES AVE
SUITE 160 TAMPA FL 33614
SDM Study List Code - K
Reviewed by Psychologist/Psychiatrist.

**MULTIPLE IMPAIRMENTS CONSIDERED**

**34A. COMBINED MULTIPLE** NONSEVERE-SEVERE

**34B. COMBINED MULTIPLE** NONSEVERE-NONSEVERE

**35. BASIS CODE**   **36. REV. DET. CODES**   **37. SSA REPRESENTATIVE**   **SSA CODE**   **38. DATE**

Form SSA-831-C3 (5/89)   Oper ZHARVED   Date 02/22/2007   Case # 4363765   Dec DE   ☐ DECISION   ☐ CASE CONTROL

Sam Houston v. L3
Communications
1996

SOCIAL SECURITY ADMINISTRATION

**REDACTED**

# DISABILITY DETERMINATION AND TRANSMITTAL

| 1. DESTINATION | 2. DDS CODE | 3. FILING DATE | 4. SSN | BIC (if CDB or DWB CLAIM) |
|---|---|---|---|---|
| DDS ☒  ODO ☐  DRS ☐  DQB ☐  INTPSC ☐ | V34 | 09/29/2006 | | 01 |

| 5. NAME AND ADDRESS OF CLAIMANT (include ZIP Code) | 6. WE'S NAME (if CDB or DWB CLAIM) |
|---|---|
| SAMUEL PETER HOUSTON<br><br>CRESTVIEW, FL | |

7. TYPE CLAIM (Title II)
DIB ☐  FZ ☐  DWB ☐  CDB-R ☐  CDB-D ☐  RD-R ☐  RD-D ☐  RD ☐  P-R ☐  P-D ☐  MQFE ☐

8. TYPE CLAIM (Title XVI)
DI ☒  DS ☐  DC ☐  BI ☐  BS ☐  BC ☐

| 9. DATE OF BIRTH | 10. PRIOR ACTION   PD ☐  PT ☐ | 11. REMARKS |
|---|---|---|
| | | Clmt Phone: 850-682-6482<br>Concurrent Title II/XVI claim<br>DDS Received 10/19/2006 |

| 12. DISTRICT-BRANCH OFFICE ADDRESS (include ZIP Code) | DO-BO CODE |
|---|---|
| SOCIAL SECURITY ADMINISTRATION<br>429 MARY ESTHER CUTOFF STE;101<br>FORT WALTON BCH, FL 32548-9986 | A20 |

| 13. DO-BO REPRESENTATIVE | 14. DATE | 11A. ☐ Presumptive Disability _____ | 11B. ☐ Impairment _____ |
|---|---|---|---|

## DETERMINATION PURSUANT TO THE SOCIAL SECURITY ACT, AS AMENDED

| 15. CLAIMANT DISABLED | 16A. PRIMARY DIAGNOSIS | BODY SYS. 01 | CODE NO. 7240 | 16B. SECONDARY DIAGNOSIS | CODE NO. 2960 |
|---|---|---|---|---|---|
| A. ☐ Disability Began<br>B. ☐ Disability Ceased | BACK DISORDER (DISC/ DEGENERATIVE) | | | AFFECTIVE/MOOD DISORDER | |

| 17. DIARY TYPE | MO./YR. | REASON |
|---|---|---|

| 18. CASE OF BLINDNESS AS DEFINED IN SEC. 1614(a)(2)/(216)(i) | 19. CLAIMANT NOT DISABLED |
|---|---|
| A. ☐ Not Disab. for Cash Bene. Purp.  B. ☐ Disab for Cash Benefit Purp. Beg. | A. ☒ Through Date of Current Determination  B. ☐ Through _____  C. ☐ Before Age 22 (CDB only) |

| 20. VOCATIONAL BACKGROUND | OCC YRS. | ED YRS. 14 COLL 2 | 21. VR ACTION  SC IN A. ☐  SC OUT B. ☒  Prev Ref C. ☐ |
|---|---|---|---|

| 22. REG-BASIS CODE N31 | 23. MED LIST NO. | 24. MOB CODE | 25. REVISED DET ☐ | Initial A. ☒ | Recon B. ☐ | DHU C. ☐ | ALJ Hearing D. ☐ | Appeals Council E. ☐ | U.S. District Court F. ☐ |
|---|---|---|---|---|---|---|---|---|---|

| 26. LIST NO. | A. | B. | C. | D. | E. | F. |
|---|---|---|---|---|---|---|

27. RATIONALE  ☒ See Attached SSA-4268-U4/C4    ☐ Check if Vocational Rule Met. Cite Rule ▶

28.  A. ☐ Period of Disability   B. ☐ Disability Period   C. ☐ Estab Beg _____ AND D. ☐ Continues   E. ☐ Term _____

| 29. LTR/PAR NO. | 30. DISABILITY EXAMINER-DDS TA ZHARVED  Dana Harvey | 31. DATE 02/22/2007 | 32. PHYSICIAN OR MEDICAL SPEC. SIGNATURE See RFC dated 02/22/2020 | 33. DATE |
|---|---|---|---|---|
| | 32A. PHYSICIAN OR MEDICAL SPEC. NAME (Stamp, Print or Type)  SDM ASSESSMENT 47 | | | 32B. SPEC. CODE 47 |

| 34. REMARKS | MULTIPLE IMPAIRMENTS CONSIDERED |
|---|---|
| CHARLES E BINDER<br>ATT FOR SAMUEL HOUSTON 4511 N HOMES AVE<br>SUITE 160 TAMPA FL 33614<br>SDM Study List Code - K<br>Reviewed by Psychologist/Psychiatrist. | 34A. COMBINED MULTIPLE NONSEVERE-SEVERE<br><br>34B. COMBINED MULTIPLE NONSEVERE-NONSEVERE |

| 35. BASIS CODE | 36. REV. DET. CODES | 37. SSA REPRESENTATIVE | SSA CODE | 38. DATE |
|---|---|---|---|---|

Form SSA-831-C3 (5/89)   Oper ZHARVED   Date 02/22/2007   Case # 4363765   Dec DE   ☐ DECISION   ☐ CASE CONTROL

Sam Houston v. L3
Communications
1997

REDACTED

SOCIAL SECURITY ADMINISTRATION

------------------------------------------------------------------------
       E X P L A N A T I O N   O F   D E T E R M I N A T I O N
------------------------------------------------------------------------

Name:                  NH's Name (CDB/DWB):    SSN:         Claim Type:
SAMUEL HOUSTON                                              DIB
------------------------------------------------------------------------

The following evidence was used in evaluating your claim:

EMERALD COAST PAIN PHYSCIANS report received 11/06/2006
DIABETIC FOOT WOUND CARE CTR report received 11/06/2006
FAMILY VISION CENTER report received 11/07/2006
NORTH OKALOOSA MEDICAL CENTER report received 10/31/2006
LEO CHEN MD report received 11/07/2006
THOMAS J MANSKI MD report received 10/30/2006
PETER T OAS PHD report received 02/22/2007
DFS WALK-IN CLINIC report received 02/22/2007

We have determined that your condition is not severe enough to keep you from working. We considered the medical record and other information, your age, education, training, and work experience in determining how your condition affects your ability to work.

You state you are disabled and unable to work because of degenerative disk disease, hypertension, anxiety, diabetic neuropathy, and hypertensive cardiovascular disease. We have reviewed the medical records, and they show that you are being treated for your condition. We realize that you are concerned about your health and feel that you are unable to work. However, the medical evidence shows that you are able to act in your own interest and remember and follow instructions. We also realize that you may not be capable of doing heavy work; however, based on the medical records, we find that you are capable of performing work such as you have performed in the past as a cashier. Accordingly, your claim for disability is denied.

If your condition gets worse and keeps you from working, call or visit any Social Security Office about filing another application.

CC:       CHARLES E BINDER

8684

HOUSTON, SAMUEL PETER

Sam Houston v. L3
Communications
1998

REDACTED

SOCIAL SECURITY ADMINISTRATION
----------------------------------------------------------------------
Retirement, Survivors, and Disability Insurance
Notice of Disapproved Claim
----------------------------------------------------------------------

DATE: March 2, 2007

SAMUEL PETER HOUSTON                        Claim Number:

CRESTVIEW, FL

We are writing about your claim for Social Security disability benefits. Based on a review of your health problems you do not qualify for benefits on this claim. This is because you are not disabled under our rules. We have enclosed information about the disability rules and more details about the decision on your claim.

ABOUT THE DECISION
Trained staff looked at your case and made this decision. They work for your State but used our rules.

Please remember that there are many types of disability programs, both government and private, which use different rules. A person may be receiving benefits under another program and still not be entitled under our rules. This may be true in this case.

IF YOU DISAGREE WITH THE DECISION
If you disagree with this decision, you have the right to appeal. We will review your case and consider any new facts you have. A person who did not make the first decision will decide your case.

- o   You have 60 days to ask for an appeal.

- o   The 60 days start the day after you get this letter. We assume you got this letter 5 days after the date on it unless you show us that you did not get it within the 5-day period.

- o   You must have a good reason for waiting more than 60 days to ask for an appeal.

- o   You have to ask for an appeal in writing. We will ask you to sign a form SSA-561-U2, called "Request for Reconsideration." You may request this form online at http://www.socialsecurity.gov/online/ssa-561.pdf. Contact one of our offices if you want help.

- o   In addition, you have to complete a "Disability Report - Appeal" to tell us about your medical condition since you filed your claim. You may contact one of our offices or call 1-800-772-1213 to request this form. Or, you may complete this report online at http://www.socialsecurity.gov/disability/recon.

Please read the enclosed pamphlet, "Your Right to Question the Decision Made on Your Social Security Claim" for a full explanation of your right to appeal.

HOUSTON, SAMUEL PETER                                   Sam Houston v. L3
                                                        Communications
                                                        1999

**NEW APPLICATION**
You have the right to file a new application at any time, but filing a new application is not the same as appealing this decision. If you disagree with this decision and you file a new application instead of appealing:

- o    you might lose some benefits, or not qualify for any benefits, and

- o    we could deny the new application using this decision, if the facts and issues are the same.

So, if you disagree with this decision, you should ask for an appeal within 60 days.

**IF YOU WANT HELP WITH YOUR APPEAL**
You can have a friend, lawyer, or someone else help you. There are groups that can help you find a lawyer or give you free legal services if you qualify. There are also lawyers who do not charge unless you win your appeal. Your local Social Security office has a list of groups that can help you with your appeal.

If you get someone to help you, you should let us know. If you hire someone, we must approve the fee before he or she can collect it. And if you hire a lawyer, we will withhold up to 25 percent of any past due Social Security benefits to pay toward the fee.

**OTHER BENEFITS**
Based on the application you filed, you are not entitled to any other benefits, besides those you may already be getting. In the future, if you think you may be entitled to other benefits you will need to apply again.

**IF YOU HAVE ANY QUESTIONS**
If you have any questions, you may call us toll-free at 1-800-772-1213, or call your local Social Security office at (850) 664-6194. We can answer most questions over the phone. You can also write or visit any Social Security office. The office that serves your area is located at:

429 MARY ESTHER CUTOFF STE;101
FORT WALTON BCH, FL 32548-9986

If you do call or visit an office, please have this letter with you. It will help us answer your questions.

ESTE ES UN AVISO IMPORTANTE RELACIONADO CON BENEFICIOS DE SEGURO SOCIAL. FAVOR DE PEDIR QUE SE LO TRADUZCAN IMMEDIATAMENTE Y DE LLAMAR A SU OFICINA DE SEGURO SOCIAL PARA UNA EXPLICACION.

                                          Paul Barnes
                                          Regional Commissioner

Enclosures:    SSA Pub. No. 05-10058            SSA-L443 (8/06)
               Explanation of Decision
               Disability Rules Factsheet
                                         A20

CC:    CHARLES E BINDER

8684

**HOUSTON, SAMUEL PETER**

Sam Houston v. L3
Communications
2000

# RULES FOR SOCIAL SECURITY DISABILITY

You must meet certain rules to qualify for Social Security Disability benefits:

### For Disabled Worker's Benefits:

You must have the required work credits, and your health problems must:

- keep you from doing any kind of substantial work (described below), and
- last, or be expected to last for at least 12 months in a row, or result in death.

### For Disabled Child's Benefits:

You must be age 18 or older, and your health problems must:

- begin before age 22 or you must become disabled again within 7 years after the month that your earlier period of disability ended, and
- keep you from doing any kind of substantial work (described below), and
- last, or be expected to last for at least 12 months in a row, or result in death

### For Disabled Widow's, Widower's or Surviving Divorced Spouse's Benefits:

You must be at least 50, and your health problems must:

- keep you from doing any kind of substantial work (described below), and
- last, or be expected to last for at least 12 months in a row, or result in death, and
- have started before the end of a special period.

The special period starts with the latest of:

- the month your spouse died, or
- the month your Social Security benefits as a parent ended, or
- the month your earlier period of widow(er)'s disability ended.

The special period ends at the close of the 84th month (7 years) after the month it started.

### Information about Substantial Work

Generally, substantial work is physical or mental work you are paid to do. Work can be substantial even if it is part-time. To decide if your work is substantial, we consider the nature of the job duties, the skills and experience you need to do the job, and how much you actually earn.

Usually, we find that your work is substantial if your gross earnings average over $860 per month after we deduct allowable amounts. This amount is higher for Social Security disability benefits due to blindness.

Your work may be different than before your health problems began. It may not be as hard to do and your pay may be less. However, we may still find that your work is substantial under our rules.

If you are self-employed, we consider the kind and value of your work, including your part in the management of the business, as well as your income, to decide if your work is substantial.

SSA-L443   Title II Factsheet   (01/06)

HOUSTON, SAMUEL PETER

Sam Houston v. L3
Communications
2001