IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SAMUEL HOUSTON ) | |
|     Plaintiff ) | |
| ) | |
| v. ) | CASE NUMBER 1:06-cv-243-MEF |
| ) | |
| ARMY FLEET SERVICES, L.L.C., ) | (JURY DEMAND) |
|     Defendant ) | |

## RESPONSE TO DEFENDANT'S MOTION TO STRIKE DECLARATION OF BILL VINSON

The defendant asks the Court to strike the Declaration of Bill Vinson, the plaintiff's vocational expert, on the grounds that his testimony does not meet standards required in federal court for admissibility and claims the testimony "will not assist the trier of fact." (Motion at p. 2, ¶ 2) The defendant's assertions are mistaken statements of the law concerning the use of vocational evaluations in ADA and rehabilitation cases, and, in some instances, rely upon misstatements of the contents of the Declaration and its accompanying report.

    I.    <u>This issue of whether a plaintiff's disabilities are substantially limiting is a question of fact for the jury.</u>

The defendant argues to the Court on summary judgment that Mr. Houston could not provide evidence that he suffered a disability under the law, and that it did not perceive Mr. Houston as having a disability. (Doc. 18 p. 21, ¶ 2) Mr. Houston proffered substantial references to material in his response to this motion demonstrating he was disabled under statutory and case law. In addition, he proffered the evaluation of Mr. Vinson to show that his disabilities barred him from a broad class of jobs that were available to him prior to his termination by the defendant and that he was substantially

1

limited in the major life activity of working. It is well established in this circuit that working is a major life activity. *Cash v. Smith*, 231 F.3d 1301, 1306 n.7 (11th Cir. 2000); *Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000).[1] In determining whether a physical or mental impairment substantially limits a major life activity, "the regulations instruct [courts] to consider (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." *Sutton v. Lader*, 185 F.3d 1203, 1208-09 (11th Cir. 1999) (citing 20 C.F.R. § 1630.2(j)(2)).

In order for a plaintiff to establish that an employer regarded him or her as substantially limited in the major life activity of working, he or she must prove that the employer considered him or her as "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities." 29 C.F.R. § 1630.2(j)(3)(i); *see also Cash*, 231 F.3d at 1306; *Standard v. A.B.E.L. Services., Inc.*, 161 F.3d 1318, 1327 (11th Cir.1998). "A 'class of jobs' is the job from which a claimant was disqualified, as well as all other jobs utilizing similar training, knowledge, and skills within 'the geographical area to which the [claimant] has reasonable access.' 29 C.F.R. § 1630.2(j)(3)(ii)(A)-(B). A 'broad range of jobs in various classes,' in contrast, is the job from which a claimant was disqualified, as well as all other jobs not utilizing similar training, knowledge, and skills within 'the geographical area to which the [claimant] has

---

[1] This brief cites cases under both the ADA and the Rehabilitation Act, though this case is brought solely under the ADA. The standards are the same. *Holbrook v. City of Alpharetta, Georgia*, 112 F.3d 1522, 1526 n.2 (11th Cir. 1997). Thus, "cases decided under the Rehabilitation Act are precedent for cases under the ADA, and *vice versa*." *Cash*, 231 F.3d at 1305 n.2.

2

reasonable access.' 29 C.F.R. § 1630.2(j)(3)(ii)(A), (C)." *EEOC v. Rockwell Int'l Co.*, 243 F.3d 1012, 1017 (7th Cir. 2001).

"As with real impairments, courts have held that a perceived impairment must be substantially limiting and significant. In this context a significant impairment is one that is viewed by the employer as generally foreclosing the type of employment involved, not just a narrow range of tasks." *Gordon v. E.L. Hamm & Assoc.*, 100 F.3d 907, 913 (11th Cir. 1996). Thus, for example, when an employer perceives an employee as being generally foreclosed from the field of maintenance work, the employer perceives the employee as being precluded from a class of jobs and substantially limited in the major life activity of working. *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 303 (4th Cir. 1998); *see also EEOC v. Automatic Systems Co.*, 169 F. Supp. 2d 1001, 1007 (D. Minn. 2001) (defendant who "believed [the plaintiff's] heart condition rendered him unable to work in any job with supervisory or managerial duties" perceived plaintiff as being disabled from the supervisory class of jobs); *Zakaras v. United Airlines, Inc.*, 121 F. Supp. 2d 1196, 1216-17 (N.D. Ill. 2000) (defendant employer who demoted employee from supervisory position because of belief that plaintiff's alcoholism prevented him from being able to supervise employees perceived plaintiff as disabled from a broad class of supervisory jobs).

In addition to the facts and case law cited by Houston on the issue of his actual disability in his response to the defendant's motion for summary judgment, he also offers the evaluation of Mr. Vinson to assist the jury in its deliberation on the matter of whether AFS "regarded" him as disabled when they failed to consider any reasonable accommodation to allow him to return to work as a mechanic or to permit him to transfer

3

to more sedentary jobs as either an aircraft scheduler or a clerical job which he was able to perform with accommodation. *See Doc 40* Pltf. Response pp. 13-16; PX 1: p. 172; PX 14, 16, & 20. The defendant's argument to strike Vinson's Declaration and attached report because it "…will not assist the trier of fact" is erroneous.

      II.    <u>Reports by vocational evaluators are admissible to assist the trier of fact in ADA and Rehabilitation cases.</u>

The defendant argues that Vinson's testimony in this case can not meet the requirements of Federal Rule of Civil Procedure 702 for reliability and/or materiality.[2] (Motion at pp.1-2). Courts in this circuit, as well as others, have long permitted testimony from vocational and rehabilitation specialists on the issues of disability and employability of plaintiffs in ADA and rehabilitation act cases. Within just a few years of the passage of the ADA in 1990, in a case remarkably on point with the facts here, the trial court admitted the vocational expert's conclusion that, in light of the plaintiff's job expectations and training, she would be precluded from performing a wide range of jobs if her ability to perform physical tasks was limited in the manner described by her doctor, even though the doctor stated that the impairments would not necessarily prevent her from performing other jobs with the Postal Service. *Scharff v. Frank*, 791 F. Supp. 182 (S.D.Ohio 1991) Just a few years later, in the Eleventh Circuit, the trial court in *Haysman v. Food Lion*, 893 F. Supp. 1092 (S.D.Ga.1995) found testimony admissible by a vocational specialist that, because sedentary jobs consist of approximately 10% of all jobs in the national economy, plaintiff was precluded from engaging in 90% of the jobs in

---

[2] Defendant complains that Vinson's CV is not attached to his report. Defendant was served on March 19, 2007, with both Vinson's CV and his report in accord with FRCP 26(a)(2) and the Court's Rule 16 Scheduling Order, § 8. (See Attachment A) Defendant is well aware that Vinson has 30 years experience in the field and that he has provided expert testimony for more than a decade.

the work force and that this was enough to create a factual dispute as to whether plaintiff was excluded from a broad range of jobs so as to be considered substantially limited in the major life activity of working under the ADA. Again, the facts in *Haysman* are on point with the facts in this case. Since then a number of courts and circuits have recognized the reliability and materiality of vocational expert testimony on the issues of disability and employability. *See Deppe v. United Airlines*, 217 F.3d 1262, 1266 (9th Cir. 2000) (finding a vocational expert's report is relevant to the issue whether the employer regarded plaintiff as substantially limited in working.); *Mondzelewski v. Pathmark Stores, Inc.*, 162 F.3d 778, 785-786 (3d Cir. 1998) (finding the report of plaintiff's vocational expert sufficient to show that plaintiff was significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.) *See also: Smith v. Quikrete Companies, Inc.*, 204 F.Supp.2d 1003 (W.D.Ky. 2002); *Duty v. Norton-Alcoa Proppants*, 293 F.3d 481 (8th Cir. 2002); *Maziarka v. Mills Fleet Farm, Inc.*, 245 F.3d 675 (8th Cir. 2001)

The expert opinion of Mr. Vinson is not "speculative" or "conclusory" as alleged by the defendant but instead presents material evidence that will assist the trier of fact in making its determination of whether Mr. Houston had a disability, or whether the defendant perceived that he had a disability, under the law when AFS failed to offer, or even consider, any reasonable accommodation that would permit him to remain in the workforce.

It is also appropriate for a plaintiff to prove a perceived disability in the activity of working by using a vocational expert to testify concerning the vocational impact of the

5

restrictions the employer perceived the employee as having. *See Deane v. Pocono Medical Center*, 142 F.3d 138, 145 (3d Cir. 1998) (en banc); *see also Deppe v. United Airlines*, 217 F.3d 1262, 1266 (9th Cir. 2000) (district court abused discretion in refusing to consider vocational report). An employer's perceiving an employee as disqualified from over 50% of jobs previously available to him is sufficient to raise a fact issue regarding a perceived disability in the major life activity of working. *See Burns v. Coca-Cola Enterprises, Inc.*, 222 F.3d 247, 255-56 (6th Cir. 2000) ("the district court did not err in concluding that Burns was disabled because his back injury precluded him from performing at least 50% of the jobs previously available to him").

Here, plaintiff has offered vocational testimony to the effect that defendant perceived Mr. Houston as being substantially limited in the major life activity of working. Specifically, as perceived by defendant, Mr. Houston is precluded from performing 92% of the jobs otherwise available to him, including jobs in a broad range in various classes, as compared to the average person with comparable skills and abilities.

*Burns* is directly on point. There, the trial court relied on vocational testimony that converted the employee's 23-pound lifting restriction into a 50% vocational disability. *Id.* The Sixth Circuit affirmed, recognizing first that a court "may consider the manner in which a claimant's personal education and prior work experience limits his ability to pursue employment in other sectors of the economy," *Id.* at 254, and, second, that a 50% vocational loss is a substantial limitation on the major life activity of working, *Id.* at 255-56.

Mr. Vinson's evaluation will assist the jury in finding the defendant's argument unreasonable (Doc. 40 at 23-25) that because it considered Mr. Houston unable to

6

perform only one job, i.e., aircraft mechanic, he cannot show a disability or perception of a disability.[3] The question is the impact of the restrictions the employer perceives, or misperceives, the employee or applicant as having. *Taylor v. Pathmark Stores, Inc.*, 177 F.3d180 (3d Cir. 1999) (stating that "if an impairment at a certain level of severity would constitute a disability, then it follows that an employer who perceives an employee as having such an impairment perceives the employee as disabled"); *see also Burns*, 222 F.3d at 255-56.

## CONCLUSION

The defendant's argument that Vinson's declaration and attached report is insufficient as a matter of law, or that it will not assist the trier of fact in this case is unfounded, and the motion is due to be denied.

Respectfully submitted this 25th day of May 2007.

/S/ JIMMY JACOBS
JIMMY JACOBS (JAC051)
Attorney for Plaintiff
4137 Carmichael Rd, Ste 100
Montgomery, Alabama 36106
(334) 215-1788

---

[3] Defendant also complains that "Vinson offers no explanation or rationale for concluding that Houston's restrictions prevent him from performing the position of cashier ...a position Social Security Administration concluded that Houston could currently perform." (Motion at p. 4, ¶ 1) Not only did Vinson not offer this conclusion in his report, information related to Houston's social security application is not material to the events of March 2005. The report attached by Defendant as an exhibit to its motion was not generated until March 2007, well after the date of these events, and was not produced to the plaintiff prior to Vinson's report. Defendant's complaint is especially surprising in light of Legeiza's admission on 3/31/05 that AFS's compliance officer, Whitney, refused Houston an opportunity to qualify for a clerical job due to his "sitting" limitation. (*See* Doc. 40 Pltf's Response PX: 20)

7

## CERTIFICATE OF SERVICE

    I hereby certify that I electronically filed the foregoing with the Clerk of the Court using CM/ECF system and service will be perfected upon counsel of record following this the 25th day of May, 2007.

                                                /s/JIMMY JACOBS
                                                Jimmy Jacobs (JAC051)
                                                4137 Carmichael Road, Ste 100
                                                Montgomery, Alabama 36106
                                                (334)215-1788

COUNSEL OF RECORD:

M. Jefferson Starling (STA062)
Brent T. Cobb (COB020)
Monica G. Graveline (GRA100)
BALCH & BINGHAM LLP
Post Office Box 306
Birmingham, AL 35201-0306

Attachment No. _A_

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SAMUEL HOUSTON<br>Plaintiff | )<br>)<br>) |
| v. | ) CASE NUMBER 1:06-cv-243-MEF<br>) |
| ARMY FLEET SERVICES, L.L.C.,<br>Defendant | ) (JURY DEMAND)<br>) |

**PLAINTIFF'S RULE 26(a)(2) SUBMISSION
OF EXPERT WITNESS AND REPORT**

COMES NOW THE PLAINTIFF, by and through undersigned counsel, and submits the attached curriculum vitae and report of Bill Vinson, who may be offered to present expert testimony on the matters contained therein.

Respectfully submitted this 19th day of March 2007.

/S/ JIMMY JACOBS
JIMMY JACOBS (JAC051)
Attorney for Plaintiff
4137 Carmichael Rd, Ste 100
Montgomery, Alabama 36106
(334) 215-1788

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using CM/ECF system and service will be perfected upon counsel of record following this the 19th day of March, 2007.

/s/JIMMY JACOBS
Jimmy Jacobs (JAC051)

COUNSEL OF RECORD:

M. Jefferson Starling (STA062)
Brent T. Cobb (COB020)
Monica G. Graveline (GRA100)
BALCH & BINGHAM LLP
Post Office Box 306
Birmingham, AL 35201-0306

**BILL VINSON, M. Ed.**
Licensed Professional Counselor
Vocational Consultant

6125 Appaloosa Dr.
Mobile, AL 36693

(251) 666-1224

# CURRICULUM VITAE

## EDUCATION

M.Ed., Texas Tech University, Lubbock, Texas
B.A., Florida State University, Tallahassee, Florida

## CERTIFICATIONS/LICENSES

Licensed Professional Counselor: State of Alabama, Board of Examiners in Counseling, Certification # 352
Certified Rehabilitation Counselor: U.S. Department of Labor Number 06985

## PROFESSIONAL MEMBERSHIP

Alabama Counseling Association

## POST GRADUATE

Social and Psychological Aspects of Disability, 1993
Tests, Measurement and Evaluation, 1993
Medical Aspects of Rehabilitation, 1995
Individual and Group Testing Lab, 1997
Directions in Rehabilitation Counseling, Volume I (1999)
Understanding the Americans With Disabilities Act, (1999)
Directions in Rehabilitation Counseling, Volume IV (2001)
Career Exploration, Development and Guidance (2001)
Ethical Issues in Professional Counseling (2003)
Directions in Rehabilitation Counseling, Volume XI (2003)
Directions in Marriage and Family Therapy (2003)
Directions in Rehabilitation Counseling, Volume 15 (2005)
Directions in Rehabilitation Counseling, Volume 16 (2005)

Vita
Re: Bill Vinson
Page 2

## EMPLOYMENT HISTORY

**Self Employed**                                                                 1990 to Present
    Provides a full range of vocational rehabilitation services including:
    vocational evaluation, job placement, job analysis, disability ratings
    and expert witness testimony.

**Crawford and Company, Mobile, Alabama**                         1990 to Present
    *Vocational Consultant-Licensed Professional Counselor*-on a contractual basis
    Provides counseling for Employment Assistance Program.
    Vocational evaluations and labor market surveys.

**Carlisle and Associates, Mobile, Alabama**                         1989 to 1990
    *Vocational Rehabilitation Counselor –*
    Provided rehabilitation counseling, vocational evaluation,
    vocational testing, medical management and job placement services
    for disabled individuals. Provided personal and career counseling
    for the non-injured person. Served as vocational consultant for
    business and industrial managers.

**Ergometrics, Inc., Mobile, Alabama**                                    1987 to 1989
    *Vocational Rehabilitation Counselor –*
    Counseling, vocational evaluations, monitoring clients' daily
    activities in a work hardening program and job placement help.
    Assisted industrially injured persons in returning to gainful
    employment.

**Constitution Rehabilitation Company, Mobile, Alabama**   1983 to 1987
    *Vocational Consultant –*
    Evaluated vocational capabilities and/or medical aspect of a
    claimant's disability, provided vocational and/or medical care
    coordination services to enable productive return to work,
    provided job development and placement services for disabled
    clients and acted as an expert witness in testifying in legal
    procedures concerning vocational rehabilitation.

**NATLSCO Rehabilitation Management, Mobile, Alabama**   1982 to 1983
    *Vocational Consultant –*
    Performed vocational testing, counseling, potential assessments,
    labor market surveys, direct job placement, medical management
    services, expert witness testimony and developed appropriate
    training for claimants.

Vita
Re: Bill Vinson
Page 3

**Crawford Rehabilitation Services, Inc.**, New Orleans, Louisiana     1979 to 1982
*Vocational Rehabilitation Counselor –*
Evaluated, assessed and identified the vocational knowledge,
skills and abilities of seriously injured workers who needed
assistance in developing a realistic vocational plan. Provided
motivational counseling, job placement services and training
to claimants who were employable and placeable; assisted
claimants in developing confidence in their saleable skills so
that they could re-enter the labor market; obtained pertinent
social, medical and legal information in order to implement
each claimant's individual rehabilitation plan.

**Southwest Alabama Mental Health Center**, Monroeville, Alabama     1977 to 1979
*Coordinator of Drug Abuse Services –*
Planned, developed, coordinated, evaluated and supervised the
drug abuse service's programmatic activities as well as provided
therapy to clients in a five county area. Provided expert witness
testimony to the courts; acted as speaker to publicize the program
in the schools and in the community; and wrote grants for the
continuation of the program.

**Patrick Henry Junior College**, Monroeville, Alabama and     1977 to 1979
**George Wallace Junior College**, Brewton, Alabama
*Part Time Instructor –*
(Psychology/Sociology)
Taught classes in prison as well as classrooms.

**Cahaba Center Outpatient Drug Abuse Programs**, Selma, Alabama     1975 to 1977
*Primary Therapist –*
Aided in staff development, training and had responsibility to
the Alternatives to Incarceration Program developed with the
cooperation of our court system.

**64th Judicial District of Texas**, Plainview, Texas     1974 to 1975
*Adult Felony Probation Officer –*
Worked closely with the District Attorney's office and law
enforcement officials in a three county area while being
responsible to the District Judge. Supervised a large caseload
of felony offenders; provided pre-sentence investigations
to the judge; testified at revocation hearings; assisted probationers
in areas of employment, school and vocational training.

**BILL VINSON, M. Ed.**
Licensed Professional Counselor
Vocational Consultant

6125 Appaloosa Dr.
Mobile, AL 36693

(251) 666-1224

Jimmy Jacobs
Attorney at Law
4137 Carmichael Road, Suite 100
Montgomery, Alabama 36106

March 7, 2007

RE: Claimant          Samuel P. Houston
    Employer          Army Fleet Support
    Date of Accident  08/11/04

**VOCATIONAL ASSESSMENT**

### INTRODUCTION

Mr. Houston is a fifty-two-year-old Aircraft Mechanic. He states that he was later terminated by his employer because his physical limitations prevented him from returning to work at his old job. At that time, he felt that he could perform the work of an Aircraft Scheduler for the same employer. However, Mr. Houston states that he was not allowed to reclassify for that job because he could not do his former job.

Mr. Houston was referred by his attorney for a vocational assessment. I have interviewed the claimant, administered academic testing, reviewed records provided by the claimant's attorney and performed vocational research and analysis in order to arrive at the conclusions and opinions expressed in this report.

The documents reviewed prior to rendering this report included:

- Medical records from Dr. Thomas J. Manski
- Medical statement provided by Timothy J. Kosmatka, M. D. – Major, USAF, MC
- Job descriptions for the positions of Aircraft Mechanic and Aircraft Scheduler from Army Fleet Support LLC – Fort Rucker, Alabama

Vocational research was performed using the Dictionary of Occupational Titles, the Classification of Jobs 2000, the Vocational Expert Handbook, The Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles and labor market data from the United States Department of Labor and the Census Bureau for the state of Alabama.

Page 2
Samuel P. Houston

## SOCIAL HISTORY

Mr. Houston was born on 02/28/55 in Hamilton, Bermuda. He stated that his dad was in the military service and he lived in various places including the Philippines, and the east and west coasts of the United States while growing up.

Mr. Houston is married. His wife is a Medical Coder/Office Manager in a doctor's office in Crestview, Florida. The couple has two grown children who are no longer living in the residence with them.

Mr. Houston is a licensed Florida driver. His pre-injury hobbies included deep sea fishing and target shooting. He reported that he has not participated in either activity in over a year. He now spends a lot of his spare time reading for pleasure. Mr. Houston has not had any prior legal difficulties.

## EDUCATION AND TRAINING

Mr. Houston is a high school graduate. He later attended Okaloosa-Walton Community College and states that he has earned approximately sixty-three credits but does not have an Associates of Arts Degree. His special training has been in the area of Aircraft Maintenance, which he learned while a member of the United States Air Force.

## GENERAL EDUCATIONAL DEVELOPMENT

At the time of our interview, the *Wide Range Achievement Test-3* was administered to Mr. Houston in order to help determine his current level of academic performance. His test scores were as follows:

|            | RAW SCORE | STANDARD SCORE | PERCENTILE | GRADE SCORE |
|------------|-----------|----------------|------------|-------------|
| READING    | 45        | 92             | 30         | 10          |
| SPELLING   | 35        | 83             | 13         | 7           |
| ARITHMETIC | 32        | 75             | 5          | 5           |

As can be seen from these score results, Mr. Houston did not achieve the level of academic performance one would expect from someone with his stated level of education. I did not see any indication during testing that this claimant did not do his best. However, these scores would not be predictive of success in any future anticipated technical or vocational training without remediation.

## MEDICAL SUMMARY

The claimant reported a height of 6'5½" and a current weight of approximately 265 pounds. He is right hand dominant. Mr. Houston was observed to walk with an obvious limp and favored his right lower extremity. He also was noted to stand up several times during our interview in order to change positions to get more comfortable.

When asked about his past medical history, Mr. Houston replied that he has had a surgical procedure due to having a rather serious acid reflux problem. He also indicated that he had had a previous back surgery while on active duty in the Air Force at Keesler Air Force Base around January of 2000. This surgery is believed to have been an L4-5 discectomy for right-sided sciatica and a foot-drop.

A review of Dr. Manski's records indicates that Mr. Houston had a past medical history that was significant for a long history of low back and right leg pain dating back to approximately 1977.

Mr. Houston reported that he has had three prior left rotator cuff surgeries and has sleep apnea and Type II diabetes.

Following his injury in August of 2004 Mr. Houston had a new onset of left low back pain with left lower extremity paresthesias and weakness. The records reflect that an MRI of the lumbosacral spine from September 7, 2004 showed a disc bulge/protrusion and disc osteophyte complexes from L2-3 down through L5-S1. At level L4-5 there was a broad-based disc bulge/protrusion with bone spurs and facet hypertrophy, resulting in significant spinal stenosis and significant lateral recess stenosis. The patient also had scar tissue and adhesions from previous surgery at L4-5.

Under Dr. Manski's treatment, Mr. Houston underwent microscopic decompressive laminectomies, medial facetectomies, and foraminotomies at L3, L4, L5 and S1 to decompress the nerve roots and thecal sac, along with a re-do left L4-5 microdiscectomy to decompress the left L4 and L5 nerve roots with neurolysis of scar tissue and adhesions from previous spinal surgery on November 10, 2004.

In his correspondence dated January 13, 2005 Dr. Manski noted that Mr. Houston still continues to have muscle spasms and aching in his lower back particularly when he has been up on his feet for any significant period of time. He also continues to have intermittent paresthesias radiating into his right upper extremity and also some intermittent shock-like sensations radiating from his neck down into his spine.

In his letter Dr. Manski recommended that Mr. Houston not return to doing heavy mechanical aircraft work as his surgeries and medical condition would cause him to be at increased risk for

Page 4
Samuel P. Houston

recurrent disc herniations if he were to perform strenuous, heavy physical activities that might strain or injure his lower back.

Dr. Manski recommended that Mr. Houston be retrained for a Sedentary job so as to avoid any additional stresses and strains that might re-injure his lower back or cause further injury to other degraded disc levels.

On 03/10/05 Dr. Manski released Mr. Houston to return to work as of March 14, 2005 with the following permanent restrictions:

- No lifting more than twenty-five pounds.
- No climbing.
- No standing or sitting for more than one and a half hours at a time.
- No bending at the waist to lift, pull, twist or push.

In his correspondence dated 12/17/04 Dr. Timothy J. Kosmatka noted that Mr. Houston was being followed at their clinic for chronic back problems. He stated that Mr. Houston should have a change of position at work to something other than Aircraft Mechanic due to his condition, which seemed to exacerbate the pain.

It is clear from Dr. Manski's release of this patient to return to work within restrictions that, as of the date of that release, he did feel he was capable of performing lighter work.

Mr. Houston has a list of some thirteen medications that he takes daily as well as three pain medications that he takes as needed and five other medications for various problems. His narcotic pain medications are prescribed by his primary care physician, Captain Kris Kensley, M.D. These include Lortab 7.5 mg, Vicodin 500 mg, and Oxycontin. He takes other medications for high blood pressure, scalp infection, diabetes, high cholesterol and to help with his insomnia caused by discomfort. His psychologist has also prescribed medication for his anxiety and depression.

## WORK HISTORY AND ANALYSIS

Mr. Houston joined the United States Air Force on 03/13/77 and served until 06/01/01. He was an Aircraft Maintenance Crew Chief and Mechanic and underwent continuing training the entire time he was in the Air Force. He obtained the level of Master Sergeant or E-7.

Upon leaving the military service he worked as a Counterman/Cashier for a short period of time at Discount Auto Parts in Fort Walton Beach earning $8.40 an hour. He left that job to accept one with Army Fleet Support as an Aircraft Mechanic. He started that position on 02/25/02. He

left that job on 03/10/05 as he was medically unable to perform the work. The claimant reports that he was earning $19.48 an hour in that position. He was a member of International Aerospace Machinists Union Local 2003.

Mr. Houston reported that his job at Army Fleet Support required prolonged standing and walking, lifting over one hundred pounds on an occasional basis and generally performing all of the physical demands required in very heavy work. In that position he was a civilian working for a military contractor.

Mr. Houston's training and work experience has been as an Aircraft Mechanic. The <u>Dictionary of Occupational Titles</u> assigns code number 621.281-014 to this job. The specific vocational preparation time or the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in this job is rated as over two years up to and including four years. That would be classified as a Skilled occupation by the United States Department of Labor.

<u>The Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles</u> assigns code number 05.05.09 to the occupation of Aircraft Mechanic. This occupation is in the Craft Technology Group, Mechanical Work. Occupations in this group are concerned with performing highly skilled hand and/or machine operations, utilizing special techniques, training, and experience. Skills and abilities required include: knowledge of tools, machines, materials, and methods used in trade or craft specialty; reading scale drawings or blueprints to visualize objects; using shop math to calculate object dimensions, material amounts needed, and material costs; coordinating eyes, hands, and fingers to use hand tools or machines in constructing, making, or repairing objects; and adhering to object specifications or standards.

The Aircraft Scheduler position that was available at Army Fleet Support at the time Mr. Houston wanted to reclassify to try to obtain that job, is classified by the <u>Dictionary of Occupational Titles</u> as requiring Sedentary Physical Demands. It is classified as a Semi-Skilled job by specific vocational preparation time requiring over three months up to and including six months as the time required for the average worker to gain an ability to do average performance in this specific job.

## ANALYSIS AND CONCLUSIONS

Mr. Houston has a high school diploma and some community college work, which has not yet led to any type of Associate of Arts Degree. The career for which he was trained and which he engaged in for all of his working life was that of Aircraft Mechanic. Following his back injury of August 11, 2004 Mr. Houston underwent surgery and was given permanent physical restrictions by a board certified neurosurgeon which would not allow the performance of his former occupation of Aircraft Mechanic. However, at that time, he would have been able to

Page 6
Samuel P. Houston

perform the work of Aircraft Scheduler, based on his residual functional capacities and his past work experience. Physically, that job is classified as requiring Sedentary Physical Demands.

If we compare Mr. Houston's pre-injury demonstrated physical capacities to perform a job requiring Heavy Work for an individual with a high school diploma, with his post-injury residual capacity to perform only Sedentary Work with a high school diploma, we see that his occupational loss or loss of labor market access is 92%.

Thank you very much for the opportunity to provide a vocational assessment of your client. If you have any questions or comments regarding my report, please feel free to contact me.

Sincerely yours,

*Bill Vinson*

Bill Vinson, M.Ed, LPC
Vocational Consultant

BV/sb