IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| SAMUEL HOUSTON     Plaintiff | ) )  ) | |
| v. | ) ) | CASE NUMBER 1:06-cv-243-MEF |
| ARMY FLEET SERVICES, L.L.C.,     Defendant | ) ) ) | (JURY DEMAND) |

**PLAINTIFF'S SUR-REPLY TO DEFENDANT'S
REPLY BRIEF ON THE MOTION FOR SUMMARY JUDGMENT**

The defendant has demonstrated to the Court in its 22 page Reply Brief that there are a number of substantial disputed material facts and credibility determinations to be made by the finder-of-fact in this case, and that summary judgment is inappropriate. (Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether ruling on a motion for summary judgment or for a directed verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986))*.* The defendant has also supplemented its motion in the reply with additional argument and exhibits. The plaintiff will address these below.

   **I.   The defendant's claim of defense under the Supreme Court's holding
        in *Cleveland v. Policy Management Systems Corp*. is not supportable.**

The defendant misstates the fundamental holding by the U. S. Supreme Court in *Cleveland v. Policy Management Services*, 575 U. S. 795 (1999) that a statement regarding the inability to work in an application for and receipt of SSDI benefits **does not** estop a recipient from pursuing an ADA claim, nor erect a strong presumption against the recipient's success under the ADA. In *Cleveland*, the Court reversed the district and

1

circuit courts' holding that the plaintiff's previous statement to the Social Security Administration that she was totally disabled from working barred her from bringing a later claim under the ADA that she could perform the essential functions of her job, with or without accommodations. Among the reasons given by the Court for reversing the lower courts was the differing requirements of the two laws for determination of disability; specifically, determination of eligibility under SSDI does not take into account whether the applicant could perform his or her job with any accommodations.

The defendant has not met its burden to establish an estoppel defense under *Cleveland* in this case by presenting any evidence at all that the requirements for determination of disability under the ADA and for the VA are so similar as to estop a claimant from qualifying under each law. In its Reply brief, the defendant introduces Mr. Houston's application to the Veteran's Administration for "Increased Compensation Based On Unemployability" dated March 15, 2005 (*See* Doc. 45: Dft. Supplementary Exhibit A), but fails entirely to demonstrate that the requirements for disability under the VA's regulations for individual employability preclude a finding that he was able to return to work at AFS, with or without accommodations, as required under the ADA. The defendant's failure to meet its duty under the ADA to reasonably engage in an interactive process with Houston to determine whether his restrictions could be accommodated, or to permit him access to any of the available accommodations which would have allowed him to remain in the workforce, is at the heart of his accommodation claim.

The facts of this case are exactly on point with the Court's rationale for reversal in *Cleveland* because the SSDI regulations did not take accommodation into account. The

regulations governing "total unemployability" for the VA make no reference or inquiry into accommodations that could mitigate the effects of the medical conditions undergirding the applicant's claim for benefits due to service-connected disabilities. *See 28 C.F.R. 4.1 et. Seq.* The VA's regulations permit an applicant to be rated as "totally unemployable" with a minimum of a 60% disability rating; or, if there is more than one qualifying condition, a rating of at least 40% for one condition with a combined rating of at least 70% disability for all qualifying disabilities. *28 C.F.R. 4.16.A.* The VA's final determination of Houston's unemployability was based upon his preexisting "service connected lumbar disc degenerative disease; status L-4-L-5 disectomy with surgical scar; his left shoulder arthroscopic subacromial decompression and open rotator cuff repair; and, pain disorder." *See* Doc. 45: Dft. Supplementary Ex. A: VA Rating Decision, December 6, 2005, p. 3, ¶ 3. (Bates # 4137-8)

**II. Houston has established that there are disputed issues of material fact for resolution by the jury on his disability, his record of disability, and AFS's perception of him as disabled.**

The defendant argued in its initial brief only that Houston could not present evidence that his restrictions substantially limit a major life activity because he was still "physically active". *See* Doc. 18: p. 21-3. Houston responded to this argument by pointing to a number of cases in which his various restrictions had been found to be disabilities. (Doc. 40 at pp. 14-16) and by offering the testimony of a vocational expert that his physical restrictions limited him from 92% of the jobs in the labor market that were normally available to a person with his education, training and work experiences. (Doc. 40: PX 32: Vinson Declaration and Report)

The defendant offers a number of citations to cases in its Reply Brief that purport

3

to stand for the proposition that Mr. Houston did not have a disability under the ADA when it refused to allow him any accommodation for his disability. *See* Doc. 44: FN 4, p. 5. The cases cited, however, are primarily either unpublished opinions without binding authority, or inapposite, as in the first case cited by the defendant for "affirming summary judgment against a welder with a 'heavy lifting' restriction", *Dutcher v. Ingalls Shipbuilding,* 53 F.3d 723, 726 (5th Cir. 1995) which actually does not involve a "lifting" restriction at all, but a "climbing" restriction which the defendant was not able to accommodate.

The defendant also raises, for the first time in its Reply (at p. 1, ¶ 1), the argument that Houston should have proffered evidence in his response that his "restrictions" limited his abilities to a greater degree than the "average" person, even though AFS has previously established this proof with the admission that Houston's lifting, climbing, standing and sitting restrictions were so severe as to prevent him from performing these tasks to the same degree as an average person in the workforce. (*See* Doc. 18: p. 6, ¶ 1; Exs. 12, 13, & 14 to Exhibit B.) Houston also proffered evidence that the defendant admitted his "sitting" restriction was so severe as to prevent him from achieving it to the same level of performance as an average person employed in a clerical position. (*See* Doc. 40: PX 20 Employer's Statement to DIR, 3/31/05)

In any event, Houston has met his burden[1] of proffering substantial evidence that he met the ADA requirement of disability in the major life activity of "working". (*See*

---

[1] As with the comparator evidence required in the context of demonstrating a substantial limitation in the major life activity of working, the burden we place on plaintiffs is "not intended to require an onerous evidentiary showing." 29 C.F.R. pt. 1630, App. 1630.2(j). *Maynard v. Pneumatic Products Corp.,* 223 F.2d 1344, 1348 (11th Cir. 2000), vacated on other grounds, 256 F.3d 1259 (11th Cir. 2001). FN 13.

4

Doc. 40: PX 32 Vocational Expert Report.) Houston's physical restrictions, regardless of whether any one or more of them may have met the ADA requirements for "disability", prevented him from working in 92% of the jobs in the labor market which were available to persons with his level of education, work experience, and training.

**III. There are disputed issues of fact on the defendant's stated reasons for refusing to accommodate Houston's disabilities and its termination of his employment.**

The defendant submits new exhibits with its Reply brief in an effort to explain away its contradictory statements that Houston's disabilities could not be accommodated in the aircraft mechanic position; that he could not be permitted to request reclassification to another position because he could not return to his position as an aircraft mechanic; that he could have requested reclassification but simply refused to do so despite the defendant's efforts to assist him; that he does not offer evidence of any person with restrictions similar to his that was treated more favorably by the defendant; and/or that he was not really "terminated" from his employment even though he was removed from the payroll and AFS reported to the Department of Industrial Relations that he had "quit" his job.

Responding to the defendant's varying and contradictory justifications for its treatment of Mr. Houston is somewhat akin to trying to nail Jell-O to a wall. Mr. Houston specifically sought an accommodation from AFS that would have permitted him to seek reclassification to the more sedentary position of an aircraft scheduler. He does not argue that he could have performed the aircraft mechanic job permanently without accommodations; only that AFS could have accommodated him so as to allow him to submit the paperwork for reclassification. This opportunity was refused to him. The

5

defendant, of course, also argues that Houston never submitted the forms to request reclassification as an aircraft scheduler, even though he was repeatedly refused by the company's human resources personnel when he asked to be allowed to reclassify. *See* Doc. 40: PX 1 p. 172:17-173:15; PX 2: p. 46:09-19; PX 14 p. 1

The defendant offers the amended affidavit of Penny Westrick as a supplement to its Reply Brief in an apparent attempt to explain away its differing treatment of Ms. D. and Mr. Houston when they returned to work with medical restrictions. The affidavit verifies that Ms. D was provided with accommodations as an aircraft mechanic when she had restrictions that were remarkably similar to those given to Houston. *See* Doc. 45: Supplementary Exhibit B: Exhibits 1, 2 & 3. The defendant admits in its Reply Brief that those restrictions were accommodated for Ms. D in July 2004, again from January until March of 2005, and, once again, from January to April of 2006[2] (Doc. 44: p. 12, ¶ 1; Ex. 1, 2, & 3), but claims they are not comparable because Ms. D's restrictions were "temporary" and Mr. Houston's were permanent. (Doc. 44: p. 12, ¶ 1) The defendant also claims in brief that these differences are not comparable because the supervisors who made the decisions were not the same for Ms. D and Mr. Houston. (Doc. 44: p. 12, ¶ 2) Both claims point to a difference that makes no difference. The uncontradicted evidence is that the essential functions of the aircraft mechanic position **could be** accommodated for the restrictions that Ms. D and Mr. Houston presented with, and AFS refused to accommodate Houston so as to allow him to seek transfer to a position that would accommodate his restrictions as recommended by his doctors.

---

[2] Westrick and the Defendant allege that Ms. D was terminated on October 12, 2006 when she was unable to return to work from a short-term disability leave. No evidence is offered as to the reason or nature of this purported leave which led to her termination; specifically we do not know if it was due to the same restrictions as her earlier leaves, or for some other medical problem.

6

**IV. The defendant's argument that its human resource personnel misunderstood its policies is not credible; and, even if it were true, does not excuse the inconsistent and contradictory claims made regarding the plaintiff's opportunity for accommodation.**

The defendant has proffered an affidavit from Ken Demarko as supplementary evidence in an apparent attempt to justify its plainly contradictory and inconsistent statements to the OFCCP. EEOC, VA, and Alabama DIR about Houston's employment status and opportunities for accommodation by reclassification. (Doc. 45: Ex. C)  Mr. Demarko makes an absolutely unsupported claim in his affidavit of a "misunderstanding" by AFS's human resources staff regarding the effect of disability leave on "active" employment status. (at p. 1, ¶3) This "misunderstanding" is plainly not supported by the evidence in this case. Houston was notified by AFS human resources on October 15, 2004 that he was being placed on "inactive" status because he had been on a medical leave of absence since 9/3/04. (Doc. 40: PX 3)  AFS confirmed in its 30(b)(6) deposition that Houston was not an "active" employee while on disability leave:

```
19  Q.  Was he an active employee while he was on
20      short-term disability?
21  A.  Not after 30 days.
22  Q.  All right.  So he processed from being an
23      inactive employee to being an inactive
                            30
 1      employee?
 2  A.  Yes, sir.  Under a different provision of the
 3      CBA.
```
                                    (Doc. 40: PX 2: pp. 29-30)

The argument that the staff charged with carrying out AFS's human resources policies did not know what the policy was is not only immaterial to the issue of the inconsistent and contradictory statements made regarding Mr. Houston's opportunity for

7

accommodation; it is not even supported by the evidence in the record.

There are substantial factual disputes on the issue of whether the defendant refused to permit Mr. Houston reasonable accommodations that were available and then lied to the OFCCP, Department of Labor, the Veteran's Administration, and the Alabama Department of Industrial Relations about their actions. *See* Doc. 40: PXs 8, 9, 14, 20, 26, 27, 28, 29, & 30. Demarko's affidavit offers nothing to resolve those inconsistencies and contradictions.

## CONCLUSION

The plaintiff has demonstrated that there are substantial material issues of fact for resolution by the jury in this case. Even when the facts are not in dispute, summary judgment should be denied if competing inferences can be drawn from the undisputed facts on material issues. *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999) (holding that where reasonable inferences from undisputed facts can be drawn in favor of either party, it is error for the district court to resolve the disputed fact of motivation at the summary judgment stage). The Supreme Court's recent decision in *United States v. Arizu*, 534 U.S. 266 (2002), is a further cautionary note regarding summary judgment in employment cases. The typical summary judgment strategy of defense counsel in an employment case is to isolate and individually attack each piece of evidence and to ignore the cumulative effect of the evidence despite clear case law requiring an analysis of the totality of the circumstances. In *Arizu*, the Court made clear that such an approach is inherently flawed. *Arizu* presented a Fourth Amendment *Terry*-stop reasonable suspicion issue. In concluding there was no reasonable suspicion the court below had analyzed each factor separately. In reversing, the Court rejected this approach, stating

8

that "[t]he court's evaluation and rejection of . . . factors in isolation from each other does not take into account the 'totality of the circumstances.'" *Id.* at 274.

The defendant's motion for summary judgment is due to be denied.

Respectfully submitted this 31st day of May 2007.

/S/ **JIMMY JACOBS**
JIMMY JACOBS (JAC051)
Attorney for Plaintiff
4137 Carmichael Rd, Ste 100
Montgomery, Alabama 36106
(334) 215-1788

### CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using CM/ECF system and service will be perfected upon counsel of record following this the 31st day of May, 2007.

/s/JIMMY JACOBS
Jimmy Jacobs (JAC051)
4137 Carmichael Road, Ste 100
Montgomery, Alabama 36106
(334)215-1788

COUNSEL OF RECORD:

M. Jefferson Starling (STA062)
Brent T. Cobb (COB020)
Monica G. Graveline (GRA100)
BALCH & BINGHAM LLP
Post Office Box 306
Birmingham, AL 35201-0306