IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

SAMUEL HOUSTON, )
)
PLAINTIFF, )
)
v. ) CASE NO.: 1:06-cv-243-MEF-CSC
)
ARMY FLEET SERVICES, L.L.C., ) (WO-Not Recommended for Publication)
)
DEFENDANT. )

**MEMORANDUM OPINION AND ORDER**

This is an employment discrimination action. Plaintiff Samuel Houston ("Houston") brings suit against the company for which he lasted worked, Army Fleet Services, L.L.C. ("AFS"). Houston brings claims pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.* ("ADA") for alleged discrimination on the basis of disability or perception of disability and for alleged retaliation.[1] This cause is before the Court on Defendant Army Fleet Support, LLC's Motion for Summary Judgment (Doc. # 17), which Houston opposes. For the reasons set forth below, the Court finds that the motion is due to be GRANTED in part and DENIED in part.

**JURISDICTION AND VENUE**

The Court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights). The parties do not contest

[1] While Houston's Complaint originally included claims pursuant to the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.*, those claims have since been dismissed. *See* Doc. # 53.

personal jurisdiction and venue, and the Court finds adequate allegations in support of personal jurisdiction and venue.

**STANDARD OF REVIEW**

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party. An issue is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments,* 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255. After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c).

**FACTS**

The Court has carefully considered all deposition excerpts and documents submitted in support of and in opposition to the motion. The submissions of the parties, viewed in the light most favorable to the non-moving party, establish the following relevant facts[2]:

After many years of service in the United States Air Force, Houston began work as an Aircraft Mechanic for Dyncorp, the predecessor to AFS, in February of 2002. AFS hired

---

[2] Facts relating to the administrative prerequisites to suit are set forth in summary fashion in this section and in greater detail in the Discussion section of this Memorandum Opinion and Order.

Houston on December 1, 2003. Houston's employment and position were subject to a collective bargaining agreement between AFS and the International Association of Machinists and Aerospace Workers, AFL-CIO, Local Lodge No. 2003 ("the union").

On August 11, 2004, Houston suffered a new injury to his back.[3] This injury occurred at home and Houston does not contend that it was a work-related injury. In early September, Houston began a short-term disability leave from his employment. At this time, Houston expected to return to work at AFS sometime in March of 2005. Houston had surgery on his back in November of 2004.

On October 15, 2004, an AFS Human Resources Representative sent Houston a letter that indicated that AFS records indicated he was on a "medical leave of absence effective 09/03/04" and therefore he was being transferred to the inactive department for the period that he was receiving short-term disability benefits. The letter informed Houston that he could not return to work until he had a written release from his doctor specifying any restrictions on his ability to work.

On December 17, 2004, Dr. Timothy J. Kosmatka ("Dr. Kosmatka")[4] wrote a letter in which he indicated that Houston "should have a change of position at work to something other than aircraft mechanic due to [his chronic back problems], as this position seems to exacerbate the pain." On January 13, 2005, Dr. Thomas J. Manski, ("Dr. Manski"), a

---

[3] Houston had previously suffered back problems and had back surgery in January of 2000.

[4] Dr. Kosmatka was Houston's primary care physician.

neurosurgeon treating Houston wrote a long letter addressing Houston's medical history, treatment, and current condition. In this letter, Dr. Manski stated that he recommended that Houston not return to doing heavy mechanical aircraft work as he was likely to injure himself and that Houston be "retrained for a position that would allow him a more sedentary job so as to avoid any additional stresses and strains that might re-injure his lower back or cause further injury to other degenerated disc levels." Houston testified that he showed these letters to someone in Human Resources for AFS, but he could not say when that occurred.

By a letter dated February 8, 2005, AFS advised Houston that his status would be changed from "medical leave" to "administrative termination" on March 14, 2005, unless he returned to work by that date.[5] In response to this letter, Houston brought a medical clearance letter from Dr. Manski to the AFS Human Resources Office on March 7, 2004. AFS would not accept this return to work memo because it did not have a date designated for Houston to return to work.

During Houston's visit to the AFS Human Resources Office on March 7, 2005, he contends that he and an AFS Human Resources Representative discussed that with his medical restrictions he would probably not be able to go back into the Aircraft Mechanic job. They discussed the possibility that Houston reclassify into a position as an Aircraft

---

[5] It appears undisputed that Houston had only twenty-six weeks of short-term disability leave available to him.

Scheduler.[6] Houston was not given an opportunity to apply for that position on March 7, 2005, but he was told to brush up on his typing skills because he would have to be able to type 30 words per minute to qualify for the position.

After this meeting, Houston obtained a new return-to-work form signed by Dr. Manski which had a return to work date.[7] This return-to-work form indicated that he could return to work as of March 14, 2005. Houston also went to a local employment agency to work on his typing skills. Houston contends that he successfully improved his typing to the point where he could type 30 words per minute.

On March 14, 2005, Houston returned to the AFS Human Resources Department with a return-to-work form signed by Dr. Manski. This form indicated that Houston had the following permanent restrictions on his ability to work:

(1) No lifting more than 25 pounds;
(2) No climbing;
(3) No standing for more than 1 ½ hours;
(4) No prolonged sitting for more than 1 ½ hours; and
(5) No bending at the waist to lift, pull, twist or push.

According to Houston, AFS explained to him on March 14, 2005 that it could not accommodate his restrictions in the Aircraft Mechanic position. He agreed that it would not be in his best interest to be an Aircraft Mechanic anymore and asked to be allowed to

---

[6] This is a sedentary primarily clerical position that coordinates schedules of aircraft maintenance and aircraft training time.

[7] This return-to-work form is dated March 10, 2005. Houston apparently stopped by the AFS Human Resources Office on March 11, 2005 and was told that he need not worry about bringing in the form with the correct date until March 14, 2005.

reclassify into the Aircraft Scheduler position. AFS did not provide him with the paperwork necessary for him to seek reclassification into that position. Instead, AFS told Houston that in order to be eligible to reclassify into an Aircraft Scheduler position he would first have to be able to return to his position as an Aircraft Mechanic.[8] Because he was not medically able to do so even for one day, he was not allowed to return to his position as an Aircraft Mechanic in order to reclassify into the Aircraft Scheduler position. According to Houston he was then told that he was administratively terminated by one person and then told by another that he was involuntarily terminated. When he saw that one of his out-processing forms indicated that he was being involuntarily terminated, he said out loud "I'm being involuntarily terminated. That means I'm fired." A Human Resources Representative heard this comment and said "No, you have recall rights." Houston became upset during the completion of his paperwork and left. He returned the next day with his wife to complete the paperwork. On March 15, 2005, he again asked to be allowed to reclassify into the Aircraft Scheduler position and was again told that he could not do so.

At some point after March 15, 2005, Houston applied for unemployment compensation from the Alabama Department of Industrial Relations. AFS opposed Houston's attempts to obtain unemployment compensation and ultimately defeated Houston's

---

[8] Although its representatives have not consistently maintained this position, at some points, AFS argues in its Motion for Summary Judgment that this is a requirement imposed on it by its collective bargaining agreement with the union. The Court finds that the terms of the collective bargaining agreement do not unambiguously support this contention and that the language in the collective bargaining agreement is capable of varying interpretations.

claim. In addition to seeking unemployment compensation, Houston applied for disability benefits from the Veteran's Administration. He has also sought disability benefits from the Social Security Administration.

Since leaving active employment with AFS, Houston has made a number of complaints to a variety of agencies and entities about how AFS treated him. He wrote to the media, to elected officials, to government agencies, to the military, and the National Labor Relations Board. He processed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Eventually he filed this lawsuit in which he alleged violations of the ADA in the form of both discrimination and retaliation.

## DISCUSSION

### A. Administrative Prerequisites To Filing Suit Pursuant to the ADA

AFS contends that it is entitled to summary judgment because Houston's claims are procedurally barred by his failure to satisfy the administrative prerequisites to suit. Specifically, AFS contends that Houston failed to file a properly signed and verified charge with the EEOC, and it further contends that his retaliation claim is outside of the scope of the administrative charge Houston filed. Houston fails to respond in any way to AFS's contention that he failed to file a properly signed and verified charge with the EEOC. This failure is particularly troubling because an employment discrimination plaintiff bears the burden of establishing that he has satisfied the administrative prerequisites to suit. Thus, when faced with an argument in a motion for summary judgment that he has failed to do so,

a plaintiff carries the burden of bringing forth some evidence from which it can be found that he has satisfied the administrative prerequisites to suit. Nevertheless, the Court cannot say as a matter of law that the evidentiary record that AFS submitted to the Court supports its contention that it is entitled to prevail on this basis. Houston does address the second of the arguments AFS makes about administrative exhaustion by arguing that he has satisfied the file-charging requirement because his retaliation claim should have been covered by a reasonable investigation of his charge and therefore is viable under the law of this circuit.

**1. Filing A Charge Is Required**

As an administrative prerequisite to filing suit under Title VII, an employee must file a timely charge of discrimination with the EEOC. *See, e.g., Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393 (1982)[9]; *Morrow v. Auburn Univ. Montgomery,* 973 F. Supp. 1392, 1400 (M.D. Ala. 1997); 42 U.S.C. § 2000e-5(e)(1). Likewise, to assert a claim under the ADA, an employee "must comply with the same procedural requirements to sue under Title VII," and thus, a timely EEOC charge is required under the ADA as well. *See, e.g., Fry v. Muscogee County Sch. Dist.*, 150 Fed. Appx. 980, 981-982, 2005 WL 2596880 *1 (11th Cir.

[9] Prior to *Zipes*, some courts viewed the timely filing of an EEOC charge as relating to the issue of whether a court had subject matter jurisdiction over the action. *See, e.g., Gupta v. East Tex. State Univ.,* 654 F.2d 411, 413 (5th Cir. Unit A Aug. 28, 1981) ("the filing of an administrative complaint is a jurisdictional prerequisite to bringing suit under Title VII."). The Supreme Court has rejected this view. In *Zipes,* it held that the timely filing requirement was a procedural prerequisite to suit akin to a statute of limitations and *not* a prerequisite to subject matter jurisdiction. 455 U.S. at 393. Nevertheless, it appears that some courts still occasionally refer to the filing of an EEOC charge as a "jurisdictional prerequisite." *Chanda v. Engelhard/ICC,* 234 F.3d 1219, 1225 (11th Cir. 2000).

2005); *Zillyette v. Capital One Fin. Corp.,* 179 F.3d 1337, 1339 (11th Cir. 1999); *Wagner v. Texas A & M Univ.,* 939 F. Supp. 1297, 1308 (S.D. Tex. 1996); *Harbuck v. Kelley Foods of Ala., Inc.,* 2006 WL 827109 at *2 (M.D. Ala. 2006); 42 U.S.C. § 12117(a) (applying remedies and procedures of Title VII to ADA).

The requirement that an employee file a charge with the EEOC serves an important purpose. It triggers the investigatory and conciliatory procedures of the EEOC. *Sanchez,* 431 F.2d at 466. Thus, the charge must enable the EEOC to serve its administrative enforcement role by conducting a full investigation while also providing the employer with advance notice of the claim and an opportunity to resolve the dispute. *See, e.g., Gregory,* 355 F.3d at 1279-8 (collecting cases discussing the purpose of the administrative exhaustion requirement). Another important purpose of the charge requirement is that is serves to notify the employer of the allegations made against it. *See Wilkerson v. Grinnell Corp.,* 270 F.3d 1314, 1319 (11th Cir. 2001).

**2. Charges Must Be Timely Filed**

To be timely within a non-deferral state, such as Alabama, the charge must be filed within 180 days of the last discriminatory act. 42 U.S.C. § 2000e-5(e)(1); *Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 421 F.3d 1169, 1178 (11th Cir. 2005) (explaining that Alabama is a non-deferral state). Because the 180 day filing requirement is not a jurisdictional requirement, it may be subject to equitable tolling in certain circumstances. *Sturniolo v. Shaeffer, Eaton, Inc.,* 15 F.3d 1023, 1025 (11th Cir. 1994). Equitable tolling

"may be appropriate if (1) the defendant has actively misled the plaintiff, (2) if the plaintiff has 'in some extraordinary way' been prevented from asserting his rights, or (3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum." *Freeman v. CSX Transp. Co.,* 730 F. Supp. 1084, 1086-87 (M.D. Ala.1989) (citations omitted). Neither the timeliness of the charge of discrimination, nor equitable tolling, however, are at issue in this case.

**3. Charges Must Be Properly Executed**

In addition to being timely filed, a charge of discrimination must be properly executed. EEOC regulations require an EEOC charge to be signed and verified. *See* 42 U.S.C. § 2000e-5(b) ("Charges shall be in writing under oath or affirmation and shall contain such information and be in such form as the [EEOC] requires."); 29 C.F.R. § 1601.9 ("A charge shall be in writing and signed and shall be verified."). The verification requirement is mandatory, and failure to properly verify an EEOC charge may bar a plaintiff from litigating her claim pursuant to Title VII. *See Vason v. City of Montgomery*, 240 F.3d 905, 907 (11th Cir.2001) (affirming summary judgment in employer's favor where plaintiff failed to make her charge of discrimination under oath or affirmation).

AFS contends that Houston failed to submit to the EEOC a charge that was properly signed and verified. This seems at first blush like an issue that should be relatively clear. Unfortunately, in this case, it is more difficult than it ought to be because of a lack of

testimony from Houston about the issue[10] and because of an apparent gap in the EEOC's own records.

Because Houston has offered no testimony on this point, the primary evidence before the Court on this issue is the copy of the EEOC investigation file produced to AFS after the litigation was initiated.[11] The EEOC investigation file, as produced to AFS in response to its request, includes only a copy of Houston's charge that is not signed by Houston and is not verified by a notary. This fact is the basis for AFS's motion. The absence of this document could be explained by Houston's failure to file a signed and verified charge or by a filing or copying error at the EEOC. As set forth below, the other evidence before this Court, when viewed in the light most favorable to Houston, makes the latter explanation more plausible.

AFS admit that during the pendency of this action, Houston produced to counsel for AFS a copy of his EEOC charge that *did* bear his signature and that was notarized. The copy of the charge produced by Houston in discovery, which does bear his signature and is notarized, bears a stamp indicating that it was received by the EEOC in Birmingham on June 16, 2005. (Doc. # 19 at Def. Ex. B-32).[12] Moreover, the EEOC investigation file includes

---

[10] Houston was not asked at his deposition about the issue. While Houston could quite easily have submitted an affidavit stating that he had delivered the signed and verified version of his charge to the EEOC, he has not done so.

[11] During discovery in this case, AFS sent a request to the EEOC for a copy of its investigation file on Houston's charge.

[12] After the EEOC received the charge, it would have sent a copy of the charge to AFS along with a Notice of Charge of Discrimination form. AFS does not indicate whether the copy of the charge sent to it along with the June 22, 2005 Notice of Charge of

a case activity log which indicates that on June 16, 2005, the same date as the "Received" stamp, a charge was docketed by the district office in Birmingham. (Doc. # 19 at Def. Ex. L). Viewed in the light most favorable to Houston, these two facts taken together create an inference that the version of the charge of discrimination bearing Houston's signature and a notary's signature was indeed filed with the EEOC on June 16, 2005. For this reason, the Court cannot find that the facts and reasonable inferences to be drawn from the facts, viewed in the light most favorable to Houston, establish that he failed to file a properly verified charge. Accordingly, the Court cannot grant AFS summary judgment on the basis of Houston's administrative charge being unsigned and unverified.

**4. The Content of the Charge And The Scope of the EEOC Investigation Limit The Scope Of Later Litigation**

For nearly forty years, the Eleventh Circuit Court of Appeals and other courts have addressed questions about what content must be included in EEOC charges in order to preserve a plaintiff's right to later litigate specific claims.[13] *See, e.g., Sanchez v. Standard*

---

Discrimination form (*see* Doc. # 19 at Def.'s Ex. L) was properly executed and verified.

[13] Neither the employment discrimination statutes, nor the implementing regulations provide much specific guidance on the issue of what content is required to be included in a charge of discrimination, but what guidance there is focuses on the factual content of the charge. In addition to requiring a charge of discrimination to identify the name and address of the charging party and the person against whom the charge is made, the applicable regulation simply states that each charge should contain "[a] clear concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices." 29 C.F.R. § 1601.12(a)(1)-(3). Not surprisingly then, the EEOC form used for charges of discrimination, EEOC Form 5, is a rather simple form.

*Brands, Inc.,* 431 F.2d 455, 466 (5th Cir. 1970).[14]

> [A] judicial complaint filed pursuant to Title VII may encompass any kind of discrimination like or related to allegations contained in the charge and growing out of such allegation during the pendency of the case before the [EEOC]. In other words, the scope of the judicial complaint is limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.

*Sanchez,* 431 F.2d at 466. *Accord, Gregory v. Ga. Dep't of Human Res.,* 355 F.3d 1277, 1280 (11th Cir. 2004) ("[A] plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."). Thus, it is clear that there exists a filing requirement for cases such as this one. Nevertheless, it is worth noting that courts are to be "extremely reluctant to allow procedural technicalities to bar claims" brought under Title VII or the ADA and should not strictly interpret the scope of an EEOC charge. *Gregory,* 355 F.3d at 1280 (citing *Sanchez*, 431 F.2d at 460-61, 465). This is especially true because charging parties often prepare EEOC charges by workers who lack education or sophistication without the assistance of counsel. *See Gregory*, 355 F.3d at 1280; *Sanchez*, 431 F.2d at 463.

"The starting point for determining the permissible scope of the judicial complaint is the EEOC charge and investigation." *Evans v. U.S. Pipe & Foundry, Co.,* 696 F.2d 925, 929 (11th Cir. 1983). The "crucial element of a charge of discrimination is the factual statement

---

[14] In *Bonner v. City of Prichard*, *Ala.*, 661 F.2d 1206, 1209 (11th Cir. Nov. 3, 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

contained therein." *Id.* at 462. Consequently, a charging party's failure to check the appropriate box on the EEOC charge of discrimination form indicating what he believes to be the basis for the discrimination (i.e. race, color, sex, disability, retaliation, national origin, age, or religion) does not bar the plaintiff from litigating a claim so long as the factual allegations in the EEOC charge are sufficient. *Sanchez,* 431 F.2d at 462-63 ("we decline to hold that the failure to place a check mark in the correct box is a fatal error"). "The selection of the type of discrimination alleged, i.e., the selection of which box to check, is in reality nothing more than the attachment of a legal conclusion to the facts alleged." *Id.* at 462. Indeed, checking the correct box alone is not sufficient to satisfy the filing requirement when no factual particulars relating to the claim are disclosed to the EEOC. *See, e.g., Chanda v. Engelhard/ICC,* 234 F.3d 1219, 1225 (11th Cir. 2000) (affirming summary judgment granted to employer on retaliation claim because nothing in employee's EEOC filing mentions *facts* relating to retaliation claim based on complaints of national origin discrimination even though employee checked the retaliation box on the form).

Additionally, this Court must consider that in certain circumstances binding precedent from the Eleventh Circuit dictates that a plaintiff need not have filed a charge with the EEOC to preserve his ability to later litigate a retaliation claim. For example, when a retaliation claim is based on adverse actions taken against the employee *after* the initial EEOC charge is filed, it can be said that the retaliation claim grows out of a properly filed employment discrimination charge, and it is not necessary for a plaintiff to file a second charge

specifically alleging retaliation. *See, e.g., Baker v. Buckeye Cellulose Corp.,* 856 F.2d 167, 169 (11th Cir. 1988); *Gupta,* 654 F.2d at 414. If, however, the alleged retaliatory action occurs *before* the initial EEOC charge is filed, a plaintiff must exhaust his administrative remedies as to that claim by including factual information in the charge that discloses the factual basis for the retaliation claim. *See, e.g., Gregory,* 355 F.3d 1277 (where alleged basis for plaintiff's retaliation claim was termination of employment prior to the filing of EEOC charge, plaintiff had to allege facts in her EEOC charge that could reasonably have been extended to encompass her claim for retaliation)[15]; *Miller v. Southwester Bell Tel. Co.,* No.

---

[15] In *Gregory*, the plaintiff, an African-American female, filed an EEOC charge after the termination of her employment. 355 F.3d 1277. In that charge, she complained that her employment had been terminated "without legitimate reason" and indicated that she believed she had been discriminated against on the basis of her race and sex. 355 F.3d at 1278-79. She did so both by describing this belief in the factual predicate for her charge in the factual narrative section of the charge form and by checking the boxes indicating that she was complaining of discrimination on the basis of race and her sex. *Id.* She complained that white and male doctors were given preferential treatment. She did not check the box indicating a complaint about retaliation. *Id.* at 1279. She did not specifically state that she believed that her employment had been terminated in retaliation against her, nor did she allege in her EEOC charge that she had engaged in any form of protected conduct prior to her termination. 355 F.3d at 1279. The plaintiff's EEOC charge was filed without the assistance of counsel. 355 F.3d at 1280. The district court denied the defendant employer's motion for summary judgment on plaintiff's retaliation claim in which defendant had argued that plaintiff's retaliation claim was administratively barred because it was not specifically articulated in plaintiff's EEOC charge. *Id.* at 1278. The Eleventh Circuit affirmed the denial of the summary judgment and the jury's verdict in favor of the plaintiff. *Id.* In reaching this result, the Eleventh Circuit reasoned that the "ultimate act that she complained about [in the EEOC charge] was that she was terminated" and that consequently the EEOC's investigation of the charge would presumably include an investigation of the possible reasons for the termination which could include retaliation for the plaintiff's having complained about race and sex discrimination. 355 F.3d at 1280. Some cases following *Gregory* seem to have applied the standard articulated in *Gregory* a bit differently than *Gregory* itself. *See, e.g.,*

01-21318, 2002 WL 31415083 at *6-*8 (5th Cir. Oct. 7, 2002) (precluding plaintiff's retaliation claims under the ADA because he failed to check the correct box on the EEOC charge form and failed to otherwise disclose his retaliation claim and thereby exhaust his administrative remedies); *Ang v. Procter & Gamble Co.*, 932 F.2d 540, 547 (6th Cir. 1991) (holding that alleged retaliatory conduct occurred prior to the filing of the EEOC charge and should have been alleged in the EEOC charge); *Steffen v. Meridian Life Ins. Co.,* 859 F.2d 534, 544-45 & n.2 (7th Cir. 1988) (holding that the fact that the retaliation claims did not fall within the scope of the charge presented to the EEOC barred the plaintiff from litigating retaliation claims where the alleged retaliation occurred before the EEOC charge was filed), *cert. denied,* 491 U.S. 907 (1989).[16] "To hold otherwise would effectively exempt all retaliation claims from Title VII's requirements regarding exhaustion of administrative

---

*Ramon v. AT&T Broadband,* No. 05-15143, 2006 WL 2519981 at *1 (11th Cir. Aug. 31, 2006); *Hillemann v. Univ. Of Central Fla.,* No. 04-15153, 2006 WL 122430 at *1 (Jan. 18, 2006); *Chanda,* 234 F.3d 1219; *Dowlatpanah v. Wellstar Health Sys., Inc.,* No. 1:05-cv-2752-WSD-RGV, 2007 WL 639875 (N.D. Ga. Feb. 26, 2007); *Bridges v. Standard Pacific of Tampa GP, Inc.,* No. 8:06-cv-1937-T-23TGW, 2007 177688 at *1 (M.D. Fla. Jan. 19, 2007). This Court need not attempt to resolve the conflict between these cases, however, because *Gregory* is factually distinguishable from Houston's case. Unlike the plaintiff in *Gregory*, Houston bases his retaliation claim on actions that are wholly separate from the factual predicate for his disability discrimination claim. Because the factual predicate is not the same, the factual allegations in Houston's charge do not preserve Houston's retaliation claim.

[16] *Accord, Thrasher v. Vertex Aerospace, LLC,* No. 3:03CV437/RV, 2005 WL 2044943 at *4-*5 (N.D. Fla. Aug. 23, 2005); *Blanchet v. Chevron/Texaco Corp.,* 368 F. Supp. 2d 589, 601-03 (E.D. Tex. 2004); *Williamson v. Int'l Paper Co.,* 85 F. Supp. 2d 1184, 1196-98 (S.D. Ala. 1999); *McCray v. DPC Indus, Inc.,* 942 F. Supp. 288, 294 (E.D. Tex. 1996); *Clark v. City of Macon, Ga.*, 860 F. Supp. 1545, 1551 (M.D. Ga. 1994); *Hull v. Case Corp.,* No. 93-1209-CIV, 1993 WL 603554 at *6 (S.D. Fla. Dec. 13, 1993).

remedies." *McCray,* 942 F. Supp. at 295.

With these principles in mind, the Court will address whether Houston has exhausted his administrative remedies with respect to his retaliation claim by examining the content of his EEOC charge and the scope of the EEOC's investigation that could reasonably be expected to flow from the factual allegations in the EEOC charge.

As previously noted, Houston believed that his employment with AFS had been terminated on March 14, 2005. In early April of 2005, Houston wrote a letter complaining that his employment with AFS had been wrongfully terminated due to his permanent physical disability. He sent this letter to a wide variety of governmental officials and governmental entities, including the EEOC, to media outlets, and to civilian organizations. By May of 2005, the Birmingham District Office of the EEOC had received a copy of Houston's letter from one or more sources. The Birmingham District Office classified the letter as an inquiry and assigned an investigator to the matter. On May 12, 2005, the Birmingham District Director wrote to Houston to notify him of the inquiry number and the name of the investigator who should be contacting him within thirty days. On June 10, 2005, the assigned investigator, Linda J. Birdsong ("Birdsong") sent Houston a letter regarding his inquiry. Birdsong's letter indicates that she viewed his complaint as being an allegation of the Americans with Disabilities Act. Based on a review of the information Houston had provided to the EEOC prior to June 10, 2005, Birdsong prepared a draft charge using EEOC Form 5. Birdsong enclosed this draft charge in the letter and instructed Houston to review

the draft, sign and date it, and return it to her in an envelope she had provided. She encouraged him to call her at the phone number indicated in the letter if he had any questions. Viewed in the light most favorable to Houston, the documents before this Court create an inference that Houston signed the draft charge that Birdsong had prepared without making any changes to it and returned it to the EEOC on June 16, 2005.

As is normal for a EEOC charge form, this charge has a place for the charging party to indicate the nature of his claim of discrimination by checking one or more boxes. Houston's charge form has only the box next to the word "disability" checked. The box next to the word "retaliation" is unchecked. The form also asked for the date or dates on which the discrimination took place. Houston's charge form indicates that the earliest date on which discrimination took place was March 14, 2005 and that the latest date on which discrimination took place was March 14, 2005. No mention is made of any discriminatory or retaliatory conduct *on any other date*. The factual particulars of the charge are as follows:

> I was hired by the employer named above as an aircraft mechanic on February 25, 2002. On March 14, 2005, I was denied the reasonable accommodation of reclassification in order to be placed in the vacant position of an aircraft maintenance scheduler. On March 14, 2005, I was discharged due to the denial of the reclassification. I believe that I was discriminated against in violation of the Americans With Disabilities Act of 1990, as amended because of my disability.

Doc. # 19 at Def. Ex. B-32. Importantly, the charge makes no mention of any retaliation by AFS. It includes no mention whatsoever of Houston's attempts to receive unemployment compensation after March 14, 2005 or AFS's efforts to prevent Houston from receiving

unemployment compensation by appealing the award of unemployment benefits to Houston in May of 2005.

Houston has failed to offer any evidence pertaining to the scope of the EEOC's investigation. AFS has provided the Court with a copy the EEOC's records relating to Houston's charge. These records do give some indication of the nature and scope of the EEOC's investigation of the charge. It appears from the EEOC's investigation file that Houston submitted various documents relating to his disability discrimination claim. There is no evidence in the EEOC's investigation file that Houston or anyone else ever mentioned anything about retaliation or problems relating to his unemployment compensation benefits due to actions by AFS. Not surprisingly, the EEOC does not appear to have investigated any alleged retaliation against Houston, including any alleged retaliation concerning AFS's conduct with regard to Houston's attempts to obtain unemployment benefits.

Based on the evidentiary record in this case, the Court is compelled to find that Houston failed to exhaust his administrative remedies with respect to his retaliation claim. The sole factual basis for the retaliation claim is that AFS allegedly retaliated against Houston for his complaints of disability discrimination by seeking to deny him unemployment benefits. According to Houston, this retaliatory conduct occurred in May of 2005. Because the allegedly retaliatory conduct occurred prior to the date on which Houston filed his EEOC charge and arose out of a set of facts wholly distinct from the facts on which his charge of disability discrimination was based, he was required to include facts in his

EEOC charge about the retaliation claim if he wished to later be able to litigate such a claim. Even the most generous reading of the EEOC charge and investigatory file cannot support a finding that Houston in any way hinted at the existence of his retaliation claim. The facts alleged in the EEOC charge could not have been reasonably extended to encompass a claim for retaliation in these circumstances, nor can the Court find that the EEOC investigation of the charge could reasonably have encompassed the retaliation claim he now wishes to urge in this lawsuit. Houston's retaliation claim is barred by his failure to establish that he complied with the administrative prerequisites to a suit pursuant to the ADA. Accordingly, the Court finds that AFS is entitled to summary judgment on Houston's retaliation claim.

**B. Analysis of Houston's ADA Discrimination Claim**

AFS advances a number of arguments in support of its motion for summary judgment on the merits of Houston's disability discrimination claim. The Court has carefully considered each of these arguments. The Court finds that with respect to many of the arguments the existence of genuine issues of material fact make summary judgment inappropriate. Furthermore, in the few instances in which there are no genuine issues of material fact, the Court cannot say that viewing the facts and inferences in the light most favorable to Houston, who is the non-moving party, the applicable law requires judgment in favor of AFS. Accordingly, the Motion for Summary Judgment is due to be DENIED on this Houston's claims pursuant to the ADA that he was subjected to discrimination.

## CONCLUSION

In light of the foregoing, it is hereby ORDERED that Defendant Army Fleet Support, LLC's Motion for Summary Judgment (Doc. # 17) is GRANTED with respect to Houston's retaliation claims and DENIED with respect to Houston's discrimination claims.

DONE this the 18th day of June, 2007.

/s/ Mark E. Fuller
CHIEF UNITED STATES DISTRICT JUDGE