**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **SAMUEL HOUSTON** | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **CASE NUMBER 1:06-cv-243-MEF** |
| | ) | |
| **ARMY FLEET SERVICES, L.L.C.,** | ) | **(JURY DEMAND)** |
| **Defendant** | ) | |

**Pre-Trial Order**

A pretrial hearing was held in this case on June 15, 2007, wherein the following

proceedings were held and actions taken:

    **1)**    **PARTIES AND TRIAL COUNSEL:**

        Plaintiff:  Samuel P. Houston

        Counsel:   Jimmy Jacobs, Esq.

        Defendant: Army Fleet Support, L.L.C.

        Counsel:    M. Jefferson Starling, III Esq.;  Monica Graveline, Esq.

        Counsel:  COUNSEL APPEARING AT PRETRIAL HEARING:

        For the Plaintiff:  Jimmy Jacobs, Esq.

        For the Defendant: Monica Graveline, Esq.

    **2)**    **JURISDICTION AND VENUE:**

The jurisdiction of this Court arises under the laws of the United States; The

Americans with Disabilities Act, 42 U.S.C. §§ 12117(a); 2000e-5(f); 28 U.S.C. §§

1331, 1343(a) (4).

    **3)**    **PLEADINGS**: The following pleadings and amendments were allowed:

        a )    Complaint

b)    Answer

4)    **CONTENTIONS OF THE PARTIES:**

a)    **Plaintiff's Contentions.**

Sam Houston began work as an aircraft mechanic at Fort Rucker, Alabama on February 25, 2002 for Dyncorp, the predecessor to the defendant in this case, Army Fleet Support, LLC (hereafter "AFS") as a civilian defense contractor for the Army Aviation Training and Command at Fort Rucker. He planned to use his 24 years of Air Force experience in the service of his country to continue supporting the defense efforts in the civilian sector for the next twenty years. Mr. Houston worked successfully as a mechanic at Fort Rucker until he injured his back in August of 2004.

Mr. Houston suffered a nonwork-related injury to his back in August of 2004 and began short-term disability on September 7, 2004. On October 15th, he was notified by the defendant that he was being placed on 'inactive" status while he was on disability leave. He had surgery on his back on November 10 of that year. Mr. Houston continued his recuperation from surgery on short-term disability leave throughout late 2004 and early 2005. On December 17, 2004 and January 13, 2005, his physicians recommended that Mr. Houston be placed in a more sedentary job than aircraft mechanic so as to avoid re-injuring his back in the future.

On February 8, 2005, AFS advised Mr. Houston that his employment status would change from "medical leave" to "administrative termination" on March 14, 2005, unless he returned to work by that date. Mr. Houston brought a medical clearance form from Dr. Thomas Manski to the AFS human resources office in early March which listed his physical restrictions as: (1) No lifting more than 25 pounds; (2) No climbing; (3) No

2

standing for more than 1 ½ hours; (4) No prolonged sitting for more than 1 ½ hours; and, (5) No bending at the waist to lift, pull, twist or push.

Although AFS refused to accept this return to work memo because it did not have a date designated for Houston to return, the company's human resource representative acknowledged that Dr. Manski recommended that Mr. Houston should not return to work as an aircraft mechanic to avoid future re-injury to his back and discussed with him the option of reclassifying to a position as an aircraft scheduler. Mr. Houston contends that his physical restrictions could be accommodated in the scheduler position, and he would be able to continue his employment with AFS. Mr. Houston was advised that the scheduler position required him to be able to type 30 words per minute and he should brush up on his typing skills before bringing his dated return-to-work form back to human resources.

Mr. Houston returned home; obtained an appointment with Dr. Manski to get a new return-to-work form; and, began to brush up on his typing skills at the Jobs Plus center in Crestview. Jobs Plus is Florida's state employment agency. Mr. Houston obtained a medical clearance to return-to-work dated for March 14, 2005 by which time he had improved his typing skills to 30 words per minute.

Mr. Houston returned to the AFS human resources office on March 14th with his medical clearance form to process back to work. AFS human resources employees telephoned each of the air field directors, all of whom stated that Mr. Houston could not return to work as a mechanic with his physical restrictions. In one of the conversations the AFS employee could not complete the list of restrictions before the director

responded Mr. Houston could not accommodated, giving the impression he had previously been informed of what to say.

Mr. Houston contends that the physical restrictions placed upon him by his doctors significantly limit his ability to function in the major life areas of performing manual tasks that require moderate-to-heavy lifting, climbing, bending at the waist, and prolonged standing or sitting. A licensed vocational rehabilitation counselor certifies that these restrictions also limit him by making him unable to perform 92% of the jobs in the state and national market labor that are available to the average person in the work force with his level of education, training and work experience.

Mr. Houston contends that the defendant AFS, by virtue of their conclusion that his physical restrictions prohibited him from performing the aircraft mechanic job that he had previously held, also perceived him as being unable to perform all jobs which would require these abilities, as well as the broad class of non-sedentary jobs that the average person with his education and training could otherwise perform. In addition, Mr. Houston contends that AFS regarded him as being incapable of performing any type of clerical work because of his physical disabilities.

Mr. Houston contends, too, that AFS was aware, at the time of his hiring, that he had a service-connected disability rating from the Veteran's Administration due to problems with his back. AFS was aware of his continuing record of debilitating problems with his back, including a previous stint of short-term disability which prevented him from working that occurred about a year before the six-month period of disability that preceded his termination.

After AFS informed Mr. Houston of the airfield directors' conclusion that his disabilities could not be accommodated in the aircraft mechanic position, he  asked to be accommodated by transferring to an aircraft scheduler position and explained he had improved his typing skills as suggested earlier.  He was informed that he could not be given this accommodation because he could not request reclassification into the scheduler job since he was an "inactive" employee; i.e., he would have to be able to return to his old job and become an "active" employee before he could submit paperwork to request a transfer to a different position.  Mr. Houston protested AFS's refusal to accommodate his disability by permitting him to apply for the aircraft scheduler position and requested to be returned to his aircraft mechanic position for long enough to submit the paperwork.  AFS refused him this opportunity, informing him that the field directors stated that his restrictions could not be accommodated in the position, although during the same general time period another aircraft mechanic who had restrictions remarkably similar to Mr. Houston, was accommodated three times.  AFS gave Mr. Houston paperwork to process out of his employment which stated that he was being "involuntarily terminated".  Mr. Houston started the process, but was so upset at what had been done to him that he went home without completing the termination process.

Mr. Houston returned to Fort Rucker on the next day with his wife in order to complete his out-processing paperwork.  Mr. Houston once again asked to be given the opportunity to reclassify into the aircraft scheduler position, but was refused.  Mr. Houston protested AFS's refusal to accommodate his disability by permitting him to apply for the aircraft scheduler position, beginning on the date of the initial refusal upon his return to work on March 14, 2005; again, upon his return to complete out-processing

from his job on the next day; and, continuing until the filing of this lawsuit.    Mr. Houston visited the EEO office at Eglin AFB, Florida on March 17, 2005 to seek assistance regarding AFS's discrimination against him and was advised to contact the EEO office at Fort Rucker.    Houston visited the Judge Advocate's Office at Fort Rucker on April 6, 2005 to get information to support his position that he was being treated wrongfully by AFS, and was told that he should take his request to the offices at AFS. He made this request to Mr. Ed Brown at the AFS human resources office on April 7, 2005, requesting documentation of his work and personnel records.    Mr. Brown refused his request, claiming that the information was proprietary.    Brown also told Houston during this meeting that he did not deserve to receive unemployment benefits because he had quit his job.    Mr. Houston also sent a letter dated April 4, 2005 stating his complaint about disability discrimination to a number of official and unofficial offices, including the Equal Employment Office offices at Eglin AFB and Fort Rucker; to the Equal Employment Opportunity Commission; to the Office of Federal Contract Compliance Programs; to the Department of Labor; to the Veteran's Administration; to Ken Manne at AFS's parent company, L-3 Communications; and, to Governor Bob Riley.

Mr. Houston contends that AFS, by and through its employees, deliberately and willfully harmed him by refusing to engage in a meaningful and honest attempt to consider available accommodations which could have allowed him to remain in the work force.    He also contends that AFS violated the law by denying him the opportunity to seek reclassification into more sedentary positions such as aircraft scheduler which were available and in which he could have performed the essential functions of the job(s). Mr. Houston also contends that AFS discriminated against him on account of his

disability, his record of disability, or its perception of his disability by falsely reporting to the Alabama Department of Industrial Relations that he had voluntarily quit his job, thereby preventing him from receiving unemployment benefits for which he has paid contributions and was entitled to receive.  Mr. Houston made his initial call to the Alabama Department of Industrial Relations (DIR) to apply for unemployment on March 16, 2005, and informed them that AFS had refused to accommodate his disability when he sought to return to work on the 14th.  This application was questioned when AFS informed DIR that Mr. Houston had "quit" his job due to "Physical Disability".  AFS replied on March 31st to DIR's inquiry about Mr. Houston's termination status that they "could not accommodate" Mr. Houston's restrictions, and that he asked to reclassify to another position, even clerical, but they couldn't do that because of his "sitting" restriction.  Mr. Houston was informed that AFS contested his eligibility because he had "voluntary quit due to health conditions".  When Mr. Houston was successful in obtaining the unemployment benefits he had paid taxes for, AFS changed their story and claimed that he could have come back to work but that he just refused to submit the proper paperwork.  Mr. Houston contends that these actions by AFS were willfully and/or wantonly undertaken with knowledge that their assertions were false and were a continuation of their discrimination against him on account of his disability.

Mr Houston contends that AFS knowingly and deliberately engaged in a campaign to damage his reputation and good name, and to deny his right for legal redress of their discriminatory treatment of him by submitting false, misleading and contradictory statements to the Alabama Department of Industrial Relations; the

Department of Labor; the Office of Federal Contract Compliance; the Equal Employment Opportunity Commission, and the Veteran's Administration.

As a consequence of these wrongful acts, Mr. Houston has been denied his rights under the law; has suffered and continues to suffer the loss of income and benefits which he would have otherwise earned; and, has endured and suffered great emotional, mental and physical distress. He contends that he is due to be awarded back pay, front pay, compensatory damages, injunctive and equitable relief and attorney fees and other costs that have been necessitated by the defendant's denial of his rights. Mr. Houston also contends that these actions by the Defendant were willful and that the jury should award punitive damages against the Defendant to deter it and similarly situated defendants from committing such acts in the future.

**b) Defendant's Contentions:**

**Defendant's Contentions for Pretrial Order**

AFS denies it discriminated and/or retaliated against Houston in violation of the Americans with Disabilities Act.

### I.    SUMMARY OF KEY FACTS

Starting on December 1, 2003, Houston worked for AFS as an Aircraft Mechanic. In order to carry out the duties of an Aircraft Mechanic position, an individual must be able to climb, lift more than twenty-five pounds, sit and stand for prolonged periods, and bend at the waist. Houston injured his back in August 2004 in a non-work related accident. He subsequently received short-term disability ("STD") benefits during his period of recovery. Pursuant to the interpretation of the CBA by AFS's human resources personnel, Houston had until March 14, 2005 to return to the Aircraft Mechanic position

or submit a request and demonstrate qualification for reclassification to a new position.
If Houston failed to seek reclassification and demonstrate his qualifications for a new
position by March 14, 2005, effective that date, he could only be reclassified if he was
able to first be reinstated to his Aircraft Mechanic position. If Houston failed to do
either, he would be placed on administrative leave. Houston was advised of this by letter
dated February 8, 2005.

On March 7, 2005, Houston visited AFS's personnel office and presented a
return-to-work slip from his physician, Dr. Thomas Manski. Dr. Manski's note did not
indicate the specific date that Houston was authorized to return to work. As a result,
Houston was advised that his return to work could not be processed until he submitted a
dated authorization from his doctor. On March 14, 2005, Houston returned to the
personnel office with a new note from his doctor, with a return-to-work date of March
14, 2005, subject to certain permanent restrictions. Specifically, Houston was
permanently restricted from lifting more than 25 pounds, climbing, standing or sitting for
more than 1 ½ hours, and bending at the waist to lift, pull, twist or push. In response to
Dr. Manski's letters, a human resources representative called Houston's field manager to
determine if Houston could, consistent with his medical restrictions, continue to perform
the essential functions of the Aircraft Mechanic position. The field manager, who has
extensive knowledge of the essential functions of the Aircraft Mechanic position, advised
that Houston would not be able to perform the essential functions of the position within
his restrictions. Three other field managers were contacted and agreed. Houston did not
suggest or request an accommodation for his medical restrictions that would allow him to
perform the essential functions of the Aircraft Mechanic position. Houston has

acknowledged that he cannot perform the essential functions of the Aircraft Mechanic position, with or without accommodation.

After it became clear that Houston would not be able to return to the Aircraft Mechanic position, several human resources representatives discussed a job reclassification with Houston, including reclassification into an Aircraft Scheduler position. Houston was advised that under the CBA, in order to reclassify, he must be on active payroll, submit a status change request form, be qualified for the desired position, and have seniority over any other bidders. Houston was told that he would need to supplement his personnel file with written certification of his ability to type thirty words per minute, which is an essential function of the Aircraft Scheduler position.

Bob Whitney, AFS's Compliance Manager also discussed reclassification with Houston. Whitney advised Houston that he would not able to reclassify after his short-term disability leave expired because Houston would become an inactive employee at that point. Recognizing that Houston's active employment status would expire that day, March 14, 2005, Whitney agreed to allow Houston until the end of the week, March 19, 2005, to submit reclassification paperwork and verification of his qualifications, if he was interested. Houston did not express interest in an alternative position and again demanded that he be returned to the Aircraft Mechanic position. On the following day, Houston returned to the personnel office with his wife to process out of his STD leave. At no time did Houston submit a reclassification form or verification of his ability to type 30 words per minute.

When Houston processed out of his STD leave, he received documents that listed his status as an "administrative termination" and "involuntary termination." This is the

terminology AFS used at the time to indicate an extended leave of absence that did not result in complete separation from the company. Employees on administrative termination status retain recall rights, continue to accrue seniority and have an absolute right to reinstatement in their last classification so long as they are capable of performing the job for the lesser of five years or the length of seniority. Houston was advised that the terminology simply meant he was on as extended medical leave of absence, not fired.

On March 15, 2005, Houston applied for individual unemployability benefits from the Veterans Administration based on his back injury. He subsequently applied for disability benefits from the Social Security Administration. Houston unequivocally represented to the VA and SSA that he was unable to work "in any job" and "should be removed from the work force," that his condition "impairs all functions of [his] body," makes it "impossible" for him "to follow a substantially gainful occupation," and that he is "permanently disabled and [has] no plans to ever go back to work." In connection with his application for benefits, Houston specifically asked his doctors to certify that he should be removed from the workforce and advised the VA that he was last able to work in September 2004. In December 2005, the VA granted Houston's application for benefits, deeming him 100% totally and permanently disabled based on individual unemployability, effective October 2004. Houston continues to receive VA benefits monthly.

## II.     LEGAL CONTENTIONS

### A.     <u>Houston's Disability Discrimination Claims Fails Because He Has Not Sufficiently Explained His Conflicting Statements About His Ability to Work</u>

In December 2005, the VA deemed Houston entitled to 100 % disability benefits based upon the determination that he was individually unemployable.  Plaintiff has failed to offer a sufficient explanation of the seemingly conflicting positions wherein he claimed to the VA and SSA in support of his benefits applications that he could not work and should be removed from the workforce and his claims in this lawsuit that during the same relevant time period he could work.

### B.     <u>Alternatively, Houston's ADA Discrimination Claim Fails on the Merits</u>

#### 1.     Houston is Not Disabled

Houston cannot establish actual disability because he has no physical or mental impairment that substantially limits a major life activity.  Houston agrees that at the relevant time, his restrictions (as to lifting, climbing, bending, sitting or standing for prolonged periods) were the only limitations he had as a result of his back condition.  Houston also continues to be a physically active person, who enjoys activities such as target shooting and deep-sea fishing.  Houston has failed to come forward with evidence of how his back condition substantially limits any major life activity.  He also has not demonstrated what he cannot do compared to the average person.  Houston's attempt to show he is substantially limited in the major life activity of working by submitting a report and assessment from a vocational specialist fails.  Specifically, the expert's analysis is fundamentally flawed for purposes of an ADA case because, *inter alia*, the specialist did not consider any accommodations that would render Houston able to

perform the jobs listed in the expert report. As Houston was not substantially limited in any major life activity, including working, in March 2005, he is not disabled and cannot claim protection under the ADA.

### 2.    Houston Was Not "Regarded As" Disabled

Houston's claim that AFS perceived him as substantially limited in the major life activity of working also fails. AFS did not believe Houston was unable to perform a broad class of jobs, or even other AFS jobs other than the Aircraft Mechanic position. In fact, at the time Houston tried to return to work in March 2005, several human resources personnel suggested that he should submit a reclassification request form for an open Aircraft Scheduler position and supplement his personnel file to verify he had the requisite typing skills. This suggestion of an alternative position shows AFS did not perceive Houston as disabled and, in fact, believed he could perform jobs other than the Aircraft Mechanic position. AFS's placement of Houston on administrative leave because of his inability to perform his job also does not prove that AFS regarded him as disabled because AFS's decision was made in reliance on the letters from Houston's doctor. Moreover, the "expert" report Houston submits to allegedly prove AFS perceived him as disabled is purely speculative.

### 3.    No "Record Of" Disability

#### a.    <u>The claim was not pled in his complaint</u>

Houston did not plead his claim that he has a record of impairment in his complaint. Therefore, Houston's allegations are limited to the actual and/or perceived prongs of the ADA's definition of disability.

**b.** **Houston did not have a record of impairment**

Houston claims he has a record of impairment because (1) he identified himself as a disabled veteran, (2) he was placed on short-term disability leave by AFS once in the past, and (3) his doctors recommended that he be retrained for sedentary work. His claim is without merit.

First, there is no evidence that Houston's 70 % VA disability rating during his time of active employment was based on an impairment that substantially limited any of his major life activities. Because Houston has not even identified the condition or conditions that supported his 70% VA rating, he has not presented any evidence establishing that the unknown impairment or impairments substantially limited any of his major life activities.

Houston's prior stint on short-term disability leave also does not establish a record of impairment. Houston does not state what the impairment was that necessitated STD leave, nor does he establish it was an impairment that substantially limited a major life activity. Moreover, Houston obviously returned to full duty after the previous STD leave. Therefore, the impairment was temporary. Temporary impairments do not constitute protected disabilities under the ADA.

AFS's knowledge of Houston's physicians' restrictions and recommendation that he refrain from heavy mechanical aircraft work does not establish a record of disability. An employer is not deemed to have regarded an employee as disabled or considered an employee to have a record of disability simply by relying on the employee's own physician's communications regarding the employee's work restrictions.

Finally, there is no connection between Houston's VA disability rating and/or prior stint on STD leave and any alleged discriminatory conduct by AFS.

14

4.      **Houston Was Not Qualified for the Aircraft Mechanic Position**

Even assuming, *arguendo*, that Houston is deemed to be disabled, he cannot prevail on his ADA claim because he was not qualified for the Aircraft Mechanic position, with or without a reasonable accommodation.  Houston does not dispute that the essential functions of the Aircraft Mechanic position required performance of the activities he was permanently restricted from doing.  Houston also does not allege that AFS could have accommodated the essential functions of the Aircraft Mechanic position in a manner that would have enabled him to perform them.  Undisputedly, the ability to lift, climb, sit, stand and bend is indispensable criteria for the job.  Plaintiff has conceded the legitimacy of the reason AFS did not reinstate him to the Aircraft Mechanic position. Moreover, Houston has failed to identify any similarly situated comparator outside the protected class that was treated better. The one individual he points to is not comparable because she had temporary restrictions accommodated by different decision makers. Therefore, Houston's discriminatory "termination" claim fails.

5.      **No Reasonable Accommodation Was Available**

a.      **Houston never requested an accommodation**

Houston never requested any type of accommodation, and therefore, AFS could not have been obligated to provide him with a reasonable accommodation.

b.      **Reclassification was an unreasonable accommodation**

Houston's failure to comply with the reclassification requirements of the CBA renders the transfer to an Aircraft Scheduler position unreasonable.  The governing CBA provides that in ordered to reclassify an employee must:  (1) be active; (2)  be qualified for the desired position, as evidenced by the personnel file; (3) be the most senior bidder; and (4) have a valid reclassification request form on file.  Houston could not be

15

reclassified to the Aircraft Scheduler position because he did not satisfy these CBA directives. Specifically, he did not submit a status change request form nor did he submit verification of his typing ability. AFS had no duty to reclassify Houston to a position he did not request and did not demonstrate he was qualified to perform. Further, once Houston's status changed to inactive employment, he could not be reclassified without first returning to active employment by returning to his last classification as an Aircraft Mechanic.

C.      **Response to Houston's New Discrimination Allegations (formerly the allegations of retaliation; dismissed by the Court on summary judgment)**

In an attempt to present at trial allegations that were dismissed by this Court on summary judgment, Houston now attempts to transform his former retaliation claim into a "continuation of discrimination" claim. AFS strenuously objects to this blatant disregard of this Court's narrowing of the issues for trial through the summary dismissal of the retaliation claim. Specifically, the allegations in Houston's contentions on page 6 and 7 herein regarding his attempt to receive unemployment compensation benefits and AFS's response to that attempt were originally pled as a retaliation claim. This Court has already determined in its June 18, 2007 opinion granting partial summary judgment that these facts were outside the scope of Houston's underlying administrative charge and, therefore, due to be dismissed. Regardless of how the allegations are characterized, they still remain outside the scope of the administrative charge. AFS should not be required to respond to these allegations. Nevertheless, out an abundance of caution, AFS responds that it did not respond to Houston's application for unemployment compensation because of his alleged disability.

III.    **DAMAGES**

Should judgment be rendered against AFS, which AFS steadfastly denies would be appropriate, Plaintiff's recovery against AFS, if any, should be limited as follows:

A.    <u>**No Right to Back Pay and Front Pay**</u>

As to Houston's claim to back pay and front pay, Houston certified to the Veterans Administration that he was unable to work as of September 2004. Accordingly, Plaintiff is not owed any back pay or front pay because he could not work, by his own admission, after that date.

Moreover, Houston is not entitled to back pay and front pay because he failed to mitigate his damages. Specifically, he failed to seek reclassification into another position at AFS and/or to seek work with another employer.

To the extent Houston is deemed entitled to back pay and/or front pay, which AFS denies, any amount awarded should be mitigated by interim earnings, including compensation received for disability benefits.

B.    <u>**No Right to Puntive Damages**</u>

As to Houston's claim for punitive damages, that claim should be denied because AFS did not act recklessly or with indifference to Houston's federally protected rights. Additionally, the alleged decision makers were not employed in an upper-level managerial capacity such that their actions can be imputed to the company for the purpose of a punitive damages award. Further, an award of punitive damages would violate the United States and Alabama constitutional protections from, including with limitation, excessive fines, cruel and unusual punishment, denial of due process, and denial of equal protection of the law. Finally, any recovery of compensatory and punitive

damages is limited to the statutory amount set forth in 42 U.S.C. § 1981a(b)(3).

      **C.**      **No Right to Reinstatement**

Should Houston prevail in his suit, the Court should not compel AFS to re-employ Houston. Houston testified that he is content drawing disability benefits and would not accept an employment offer from AFS because it would require him to forfeit those benefits.

      **D.**      **No Right to Mental Anguish Damages**

Houston is not entitled to recover for mental anguish damages. Houston cannot establish he suffered mental anguish. Even if, *arguendo*, Houston can establish he suffered from mental anguish, he cannot establish such mental anguish was a result of any discriminatory conduct on the part of AFS or that AFS intended to cause mental anguish with its actions.

**5)**      **STIPULATIONS BY AND BETWEEN PARTIES:**

      a)      The Defendant Army Fleet Support, L.L.C. was, and is, an employer subject to the requirements of the Americans with Disabilities Act, the laws and regulations pertaining to the Office of Federal Contract Compliance Programs, the Department of Labor, the Veteran's Administration, and the Alabama Department of Industrial Relations.

      b)      The Plaintiff was an employee, or a former employee, of the Defendant at all times relevant to the issues in this action.

      c)      The jurisdiction of this case properly lies in the United States District Court for the Middle District of Alabama, Southern Division.

      d)      Houston began short term disability leave on September 7, 2004.

e)      The Plaintiff had surgery on his back in November 2004.

f)      Houston's short term disability leave expired on March 14, 2005.

g)      As a consequence of his back surgery, the Plaintiff incurred these physical restrictions (1) No lifting of more than 25 pounds; (2) No climbing; (3) No standing for more than 1 ½ hours; (4) No prolonged sitting for more than 1 ½ hours; and, (5) No bending at the waist to lift, pull, twist or push.

**It is ORDERED that:**

(1)     The jury selection and trial of this cause, which is to last five (5) days, are set for July 30, 2007, at 10:00 a.m. at the United States Courthouse in Dothan, Alabama;

(2)      A trial docket will be mailed to counsel for each party approximately three weeks prior to the start of the trial term;

(3)     The parties are to file their pre-trial briefs, if any, by July 23, 2007;

(4)     Each party shall have available at the time of trial, for use by the court (the judge, the courtroom deputy clerk, and the law clerk), three copies of the exhibit list and a sufficient number of copies of each photostatically reproducible exhibit for opposing counsel, the courtroom deputy clerk, the law clerk, and the judge to each have a set of the exhibits;

(5)     All deadlines not otherwise effected by this order will remain as set forth in the Uniform Scheduling Order (Doc. #7) entered by the court on May 3, 2006;

(6)     All understandings, agreements, deadlines, and stipulations contained in this Pretrial Order shall be binding on all parties unless this Order be hereafter modified by Order of the Court.

DONE this the 10th day of July, 2007.

                              /s/ Mark E. Fuller
                    _____
                    CHIEF UNITED STATES DISTRICT JUDGE